## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ———————————————— ) | |
| CITIZENS FOR RESPONSIBILITY AND ) | |
| ETHICS IN WASHINGTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 07-0048 (RBW) |
| ) | |
| NATIONAL ARCHIVES AND RECORDS ) | |
| ADMINISTRATION ) | |
| ) | |
| Defendant. ) | |
| ———————————————— ) | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant National Archives and Records Administration ("NARA") respectfully moves for summary judgment pursuant to Fed. R. Civ. P. 56 on the claims of plaintiff Citizens for Responsibility and Ethics In Washington ("CREW"). As set forth herein, there is no genuine issue of material fact in dispute, and defendant is entitled to judgment as a matter of law. In support of this Motion, defendant respectfully refers the Court to the accompanying Memorandum of Points and Authorities, declaration of Gary M. Stern, General Counsel of the National Archives and Records Administration, and *Vaughn* Index. A proposed order is also attached.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

CARL J. NICHOLS
Deputy Assistant Attorney General

JEFFERY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Branch Director
D.C. Bar No. 418925

**OF COUNSEL**:
JASON R. BARON
D.C. Bar. No. 366663
Director of Litigation
Office of the General Counsel
National Archives and Records Administration
8601 Adelphi Road, Suite 3110
College Park, MD 20740
Telephone:     (301) 837-1499
Facsimile:     (301) 837-0293
E-mail:          jason.baron@nara.gov

**/s/ Michael P. Abate**
MICHAEL P. ABATE
IL Bar No. 6285597
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch

Mailing Address
P.O. Box 883
Washington, D.C. 20044

Delivery Address
20 Massachusetts Ave., N.W., Room 7302
Washington, D.C. 20001
Telephone:     (202) 616-8209
Facsimile:     (202) 616-8470
E-mail:          Michael.Abate@usdoj.gov

Attorneys for Defendant

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 07-0048 (RBW) |
| NATIONAL ARCHIVES AND RECORDS ADMINISTRATION | ) ) ) | |
| Defendant. | ) ) ) | |

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Local Rule 7.1(h), defendant National Archives and Records Administration submits this statement of material facts as to which there is no genuine issue:

1.    "WAVES" records are records created by the Workers and Visitors Entrance System employed at the White House Complex "when 'information is submitted by an authorized White House pass holder to the Secret Service about workers and visitors who need access to the White House [Complex].'"  *Washington Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61, 64 (D.D.C. 2006) (quoting declaration of United States Secret Service official); *see also* Declaration of Gary M. Stern, NARA General Counsel ("Stern Decl.") ¶ 14.

2.    "ACR" records are records created by the White House Access Control Records System, which includes "'records generated when a pass holder, worker, or visitor, swipes his or her pass over one of the electronic pass readers located at entrances to and exits from the White House Complex.'" *Washington Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d

61, 64 (D.D.C. 2006) (quoting declaration of United States Secret Service official).

3.    On September 27, 2006, Plaintiff Citizens for Responsibility and Ethics In Washington

("CREW") submitted a FOIA request to defendant National Archives and Records

Administration ("NARA") seeking:

(1)    Any and all documents related to the request made by the National Archives and Records Administration ("NARA"), to the United States Secret Service, that the Secret Service retain its own copies of the Worker and Visitor Entrance System ("WAVES") records that it transferred to the White House.

(2)    Any and all communications both internally and between the National Archives and Records Administration and any other government agency or government entity, referencing the practice of the United States Secret Service to erase copies of WAVES records that it transferred to the White House.

(3)    Any and all documents referring to or relating to a practice by the Secret Service of deleting records from its computer system.

(4)    Any and all documents and records referring or related to <u>Judicial Watch v. United States Secret Service</u>, Civ. Action No. 06-310 (United States District Court for the District of Columbia).

(5)    Any and all documents and records referring or related to <u>Democratic National Committee v. United States Secret Service</u>, Civ. Action No. 06-842 (United States District Court for the District of Columbia).

(6)    Any and all documents and records referring or related to <u>Citizens for Responsibility and Ethics In Washington v. United States Department of Homeland Security</u>, Civ. Action No. 06-883 (United States District Court for the District of Columbia).

*See* Stern Decl. ¶ 4 & Tab A.

4.    CREW also sought expedited processing and a waiver of all fees associated with

processing the FOIA request.  *Id.*

5.    NARA's FOIA Officer conducted a search for responsive documents by contacting key

staff in offices that would have worked on issues related to WAVES records, including

-2-

the Office of the General Counsel, components of the Office of Records

Services–Washington, D.C., and the Office of Presidential Libraries. *Id.* ¶ 5. Individual

staff members reviewed paper and electronic files and forwarded any potentially relevant

records to NARA's FOIA Officer for processing. *Id.*

6.    NARA acknowledged CREW's FOIA request in a letter dated October 20, 2006 from

NARA FOIA Officer Ramona Branch Oliver. *See Id.* Tab B. That letter informed the

plaintiff that NARA agreed to expedite CREW's request, and to waive any processing

fees associated therewith. *Id.*

7.    NARA produced documents in response to CREW's FOIA request October 24, 2006.

*See Id.* ¶ 6. A letter from the NARA FOIA Officer accompanying that document

production notified CREW that NARA identified 336 pages of documents responsive to

CREW's request. *Id.* NARA disclosed 31 of those pages in full and 11 in part. *Id.*

NARA withheld in full an additional 294 pages of material pursuant to Exemption 5 of

the FOIA, 5 U.S.C. § 552(b)(5) (2000), pursuant to the deliberative process and attorney

work product privileges. *Id.*

8.    On October 25, 2006, plaintiff administratively appealed NARA's determination "insofar

as CREW's request was denied." *Id.* ¶ 7.

9.    In a letter dated November 28, 2006, NARA Deputy Archivist Lewis Bellardo responded

to CREW's appeal. *Id.* ¶ 8. That letter informed CREW that NARA identified an

additional 50 pages of responsive materials, of which it was releasing 28 pages in part.

*Id.* That letter also informed CREW that NARA decided to release in full an additional

11 pages of responsive material originally withheld, and to release in part an additional 57

pages of documents originally withheld.  *Id.*  The Deputy Archivist otherwise sustained

the determination that the materials were protected by the deliberative process and/or

attorney work-product privileges.  *See Id.* Tab F.

10.    NARA continues to withhold 77 documents in full or in part pursuant to Exemption 5 of

the FOIA, representing a total of 294 pages.  *See* Stern Decl. ¶ 9 & n.1.  Defendant's

declaration and *Vaughn* Index, submitted along with this Motion, provide detailed

explanations those withholdings.


Dated: <u>May 7, 2007</u>                                      Respectfully submitted,

                                                              PETER D. KEISLER
                                                              Assistant Attorney General

                                                              CARL J. NICHOLS
                                                              Deputy Assistant Attorney General

                                                              JEFFERY A. TAYLOR
                                                              United States Attorney

                                                              ELIZABETH J. SHAPIRO
                                                              Assistant Branch Director
                                                              D.C. Bar No. 418925

OF COUNSEL:                                    **/s/ Michael P. Abate**
JASON R. BARON                                 MICHAEL P. ABATE
D.C. Bar. No. 366663                           IL Bar No. 6285597
Director of Litigation                         Trial Attorney, U.S. Department of Justice
Office of the General Counsel                  Civil Division, Federal Programs Branch
National Archives and Records Administration
8601 Adelphi Road, Suite 3110                  Mailing Address
College Park, MD 20740                          P.O. Box 883
Telephone:      (301) 837-1499                 Washington, D.C. 20044
Facsimile:      (301) 837-0293
E-mail:          jason.baron@nara.gov          Delivery Address
                                               20 Massachusetts Ave., N.W., Room 7302
                                               Washington, D.C. 20001
                                               Telephone:     (202) 616-8209
                                               Facsimile:     (202) 616-8470
                                               E-mail:          Michael.Abate@usdoj.gov

                                               Attorneys for Defendant

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

|  |  |  |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 07-0048 (RBW) |
| NATIONAL ARCHIVES AND RECORDS ADMINISTRATION | ) ) ) | |
| Defendant. | ) ) ) | |

---

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

PETER D. KEISLER
Assistant Attorney General

CARL J. NICHOLS
Deputy Assistant Attorney General

JEFFERY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Branch Director
D.C. Bar No. 418925

OF COUNSEL:
JASON R. BARON
D.C. Bar. No. 366663
Director of Litigation
Office of the General Counsel
National Archives and Records Administration
8601 Adelphi Road, Suite 3110
College Park, MD 20740

MICHAEL P. ABATE
IL Bar No. 6285597
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W., Room 7302
Washington, D.C. 20001

Attorneys for Defendant

## TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    I.       Standards for Summary Judgment in FOIA Cases . . . . . . . . . . . . . . . . . . . . . 5

    II.     NARA Properly Withheld Documents Under
          Exemption 5 of the FOIA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

          A.     Privileges Protected by Exemption 5 . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

                1.     Deliberative Process Privilege . . . . . . . . . . . . . . . . . . . . . . . . . . 8

                2.     Attorney Work-Product Doctrine . . . . . . . . . . . . . . . . . . . . . . . . 10

                3.     Attorney-Client Privilege . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

          B.     Government Deliberations on Disposition of
                WAVES Records . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

                1.     Deliberations on Proposed WAVES Records
                     Schedules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

                2.     Deliberations on 2001 WAVES Record Retention
                     Memorandum . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

                 3.     Deliberations on 2004 WAVES Record Retention
                     Memorandum . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

                4.     2005 E-mail Between Associate Counsel to the
                     President and NARA General Counsel . . . . . . . . . . . . . . . . . . . . 21

                5.     USSS Presentation to NARA Counsel and Counsel's
                     Notes of That Meeting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

          C.     Deliberations Related to The Pending *Judicial Watch*
                Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

D.    Deliberations on Status and Disposition of WAVES
      Records Contemporaneous With Ongoing Litigation . . . . . . . . . . . . . . . 26

      1.    Draft Memorandum of Understanding Between
            USSS and White House Office of Records
            Management . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

      2.    Nonpublic OLC Advice Memorandum . . . . . . . . . . . . . . . . . . . . 28

      3.    Inter- and Intra-Agency Communications About
            Drafts of the MOU and OLC Advice Memorandum . . . . . . . . 31

      4.    Inter- and Intra-Agency Deliberations About the
            Transfer and Retention of WAVES and ACR Records
            in Light of One or More Pending Lawsuits . . . . . . . . . . . . . . . . 33

E.    Communications Between DOJ's Federal Programs Branch
      and NARA Counsel Concerning Draft District Court Filings
      in Related *CREW* Litigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

III.    NARA Conducted an Adequate Search for Responsive Records . . . . . . . . . . . 35

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

## TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

Alyeska Pipeline Serv. Co. v. EPA, 856 F.2d 309 (D.C. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . 6

* Armstrong v. Bush, 924 F.2d 282 (D.C. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 29

Armstrong v. Executive Office of the President,
     90 F.3d 553 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Brinton v. Department of State, 636 F.2d 600 (D.C. Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . 29

Carey-Canada, Inc. v. California Union Ins. Co.,
     118 F.R.D. 242 (D.D.C. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Chemical Mfrs. Ass'n v. Consumer Prod. Safety Comm'n,
     600 F. Supp. 114 (D.D.C. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

City of Virginia Beach v. U.S. Dep't. of Commerce,
     995 F.2d 1247 (4th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

* Coastal States Gas Corp. v. Dep't of Energy,
     617 F.2d 854 (D.C. Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Dipietro v. Executive Office for U.S. Attorneys, 357 F. Supp. 2d 177
     (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Dow Jones & Co. v. DOJ, 917 F.2d 571 (D.C. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Dudman Communications Corp. v. Dep't of the Air Force,
     815 F.2d 1565 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 32

Edmonds Institute v. U.S. Dep't of Interior, 460 F. Supp. 2d 63
     (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

First Eastern Corp. v. Mainwaring, 21 F.3d 465 (D.C. Cir. 1994) . . . . . . . . . . . . . . . . . . . . 26

Ground Saucer Watch v. CIA, 692 F. 2d 770 (D.C. Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . 36

Hamilton Securities Group v. HUD, 106 F. Supp. 2d 23
     (D.D.C. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 28

Heartwood, Inc. v. U.S. Forest Service, 431 F. Supp. 2d 28
(D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20

Hemenway v. Hughes, 601 F. Supp. 1002 (D.D.C. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . 6

* Hertzberg v. Veneman, 273 F. Supp. 2d 67 (D.D.C. 2003) . . . . . . . . . . . . . . . . . . . . . . passim

* Hickman v. Taylor, 329 U.S. 495 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Hornbostel v. U.S. Dep't of Interior, 305 F. Supp. 2d 21
(D.D.C. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Int'l Paper Co. v. Fed. Power Comm'n, 438 F.2d 1349 (2d Cir. 1971) . . . . . . . . . . . . . . . . . . 29

Johnson v. Executive Office for U.S. Attorneys, 310 F.3d 771
(D.C. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Jordan v. United States Dep't of Justice, 591 F.2d 753 (D.C. Cir. 1978) . . . . . . . . . . . . . . . 8, 15

Judicial Watch, Inc. v. Clinton, 880 F. Supp. 1 (D.D.C. 1995) . . . . . . . . . . . . . . . . . . . . . 15, 27

Judicial Watch, Inc. v. Dep't of Justice, 432  F.3d 366 (D.C. Cir. 2005) . . . . . . . . . . . . . . 10, 24

Judicial Watch, Inc. v. Export-Import Bank, 108 F. Supp. 2d 19
(D.D.C. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Judicial Watch, Inc. v. U.S. Dep't of Justice, 306 F. Supp. 2d 58
(D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11

Judicial Watch of Florida, Inc. v. Dep't of Justice, 102 F. Supp. 2d 6
(D.D.C. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 23

Mapother v. Dep't of Justice, 3 F.3d 1533 (D.C. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . 8

McCutchen v. United States Dep't of Health & Human Servs.,
30 F.3d 183 (D.C. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Military Audit Project v. Casey, 656 F.2d 724 (D.C. Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . 6

Miller v. Casey, 730 F.2d 773 (D.C. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Miscavige v. IRS, 2 F.3d 366 (11th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Montrose Chemical Corp. v. Train, 491 F.2d 63 (D.C. Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . .  9

Murphy v. Tenn. Valley Auth., 571 F.Supp. 502 (D.D.C. 1983) . . . . . . . . . . . . . . . . . . . . . . . .  7

NLRB v. Sears, Roebuck & Co., 421 U.S. 132 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . .  7, 8, 25

* National Council of La Raza v. U.S. Dep't of Justice,
        339 F. Supp. 2d 572 (S.D.N.Y.2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29

Oglesby v. Dep't of the Army, 920 F.2d 57 (D.C. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . .  36

Perry v. Block, 684 F.2d 121 (D.C. Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  36

* Russell v. Dep't of the Air Force, 682 F.2d 1045
        (D.C. Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  passim

Ryan v. Dept. of Justice, 617 F.2d 781 (D.C. Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

In re Sealed Case, 146 F.3d 881 (D.C.Cir.1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10, 26

Simmons, Inc. v. Bombardier, Inc., 221 F.R.D. 4 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . . . . .  26

Skull Valley Band of Goshute Indians v. Kempthorne, No. 04-399
        (D.D.C. Mar. 26, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

Southam News v. INS, 674 F.Supp. 881 (D.D.C. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  29

Texas Independent Producers Legal Action Ass'n v. IRS,
        605 F. Supp. 538 (D.D.C. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  36

United States Dep't of Justice v. Reporters' Comm. for Freedom
        of the Press, 489 U.S. 749 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

United We Stand Am., Inc. v. IRS, 359 F.3d 595 (D.C. Cir. 2004) . . . . . . . . . . . . . . . . . . . .  17

Vaughn v. Rosen, 523 F.2d 1136 (D.C. Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Washington Post v. Dep't of Homeland Sec., 459 F. Supp. 2d 61
        (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Washington Post v. Dep't of Homeland Sec., (No. 06-1737 ) (voluntarily
        dismissed by plaintiff) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 27

Weisberg v. Dep't of Justice, 745 F.2d 1476 (D.C. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . .   36, 37

Wolfe v. HHS, 839 F.2d 768 (D.C. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8, 9, 33

## **STATUTES**

Fed. R. Civ. P. 26(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   33

Fed. R. Civ. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

5 U.S.C. § 552(a)(4)(B) (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

5 U.S.C. § 552(a)(4)(A)(iii) (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

5 U.S.C. § 552(b)(5) (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2, 7, 10

44 U.S.C. § 2203(a) (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

44 U.S.C. § 2204 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

44 U.S.C. § 3303a (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

**INTRODUCTION**

This Freedom of Information Act ("FOIA") action is set against the backdrop of ongoing

litigation in the U.S. District Court of the District of Columbia in which several plaintiffs

(including the plaintiff in this case) have attempted to obtain, *inter alia*, copies of certain

"WAVES" and "ACR" records from the United States Secret Service ("USSS").  "WAVES"

records are the data generated by the Worker and Visitor Entrance System employed at the White

House Complex.  *See* Declaration of Gary M. Stern, NARA General Counsel ("Stern Decl.") ¶ 5.

These records are created "when 'information is submitted by an authorized White House pass

holder to the Secret Service about workers and visitors who need access to the White House.'"

*Washington Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61, 64 (D.D.C. 2006) (hereinafter

"*Washington Post*") (quoting declaration of USSS official).  "ACR" records refer to data

contained in the Access Control Records System, which includes "'records generated when a

pass holder, worker, or visitor, swipes his or her pass over one of the electronic pass readers

located at entrances to and exits from the White House Complex.'"  *Id.* at 64-65 (quoting

declaration of USSS official).

Although such WAVES and ACR records have been the subject of litigation[1] over

whether these records are agency records within the meaning of FOIA, or, instead, are

---

[1] Cases in which plaintiffs have sought or are seeking access to, *inter alia*, WAVES
records include (current status of that litigation as of date of this filing noted in parentheses):
*Washington Post v. Dep't of Homeland Sec.* (No. 06-1737) (voluntarily dismissed by plaintiff);
*Democratic National Committee v. United States Secret Service* (No. 06-842) (dismissed
pursuant to settlement agreement); *Judicial Watch v. United States Secret Service* (No. 06-310)
("*Judicial Watch*") (motion to dismiss pending); *Citizens for Responsibility and Ethics in
Washington v. Dep't of Homeland Security* (No. 06-883) ("*CREW I*") (motion to dismiss
pending); and *Citizens for Responsibility and Ethics in Washington v. Dep't of Homeland
Security and Allen Weinstein, Archivist of the United States* (No. 06-1912) ("*CREW II*") (motion
for summary judgment yet to be filed).

presidential records subject to the exclusive control of the White House, *see* 44 U.S.C. § 2204 (2000) (presidential records are subject to public access under FOIA only after the President leaves office and the records are transferred to the National Archives), these records are not directly at issue in this case. Instead, this case seeks, *inter alia*, communications between NARA and the USSS concerning these records, as well as documents related to several of the cases noted above.

In response to CREW's FOIA request, NARA identified 336 pages of responsive documents. NARA initially released 31 in full and another 11 pages in part, while withholding 294 pages under the deliberative process and/or attorney work-product privileges. After CREW appealed those withholdings, NARA subsequently released an additional 11 pages in full and 57 pages in part, but affirmed its decision that the remaining documents were properly redacted or withheld pursuant to FOIA exemption 5, which exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5) (2000). Additionally, NARA informed CREW at that time that it had located an additional 50 pages of responsive materials, 28 of which were released in part; the remainder of those new pages were withheld pursuant to FOIA Exemption 5. Along with the filing of this Motion, NARA is making a discretionary disclosure of an additional pages previously withheld in full or in part. This brings the total number of pages withheld in total or in part to 294. *See* Stern Decl ¶ 9 & n.1.

This case presents only two questions: (1) whether NARA properly invoked exemption 5 to withhold materials under the work-product doctrine and the deliberative process and attorney-client privileges; and (2) whether NARA's search for records was adequate. As demonstrated by

the declaration and *Vaughn* Index submitted along with this Motion, NARA is entitled to

summary judgment on both of these issues.  NARA conducted a reasonable search for responsive

records, and each of the documents withheld pursuant to Exemption 5 is either (1) a deliberative

communication among NARA staff, or between NARA employees and other representatives of

the Executive Branch, on legal and policy matters, (2) attorney work-product created in

anticipation of litigation over WAVES records, and/or (3) privileged attorney-client

communications.  Disclosure of these documents would materially impair the functioning of the

agency's decisionmaking by chilling communication within NARA and between NARA and

other federal agencies on important matters of law and policy.

## BACKGROUND

On September 27, 2006, CREW submitted a FOIA request to NARA seeking:

1.  Any and all documents related to the request made by the National Archives and Records Administration ("NARA"), to the United States Secret Service ("USSS"), that the Secret Service retain its own copies of the Worker and Visitor Entrance System ("WAVES") records that it transferred to the White House.

2.  Any and all communications both internally and between the National Archives and Records Administration and any other government agency or government entity, referencing the practice of the United States Secret Service to erase copies of WAVES records that it transferred to the White House.

3.  Any and all documents referring to or relating to a practice by the Secret Service of deleting records from its computer system.

4.  Any and all documents and records referring or related to Judicial Watch v. United States Secret Service, Civ. Action No. 06-310 (United States District Court for the District of Columbia).

5.  Any and all documents and records referring or related to Democratic National Committee v. United States Secret Service, Civ. Action No. 06-842 (United States District Court for the District of Columbia).

6.      Any and all documents and records referring or related to <u>Citizens for Responsibility and Ethics In Washington v. United States Department of Homeland Security</u>, Civ. Action No. 06-883 (United States District Court for the District of Columbia).

*See* Stern Decl. ¶ 4 & Tab A.  CREW also sought expedited processing of its request and a fee

waiver under 5 U.S.C. § 552(a)(4)(A)(iii) (2000).  *Id.*  NARA responded to this request on

October 20, 2006 in a letter from NARA FOIA Officer Ramona Branch Oliver.  *See Id.* Tab B.

That letter informed the plaintiff that NARA agreed to expedite CREW's request, and to waive

any processing fees.  *Id.*

Four days later, on October 24, 2006, NARA produced documents in response to

CREW's FOIA request.  *See* Stern Decl. ¶ 6 & Tab B.  In a letter accompanying that document

production, NARA FOIA Officer Ramona Branch Oliver notified CREW that NARA had

identified some 336 pages of documents responsive to CREW's request.  *See Id.*  NARA

disclosed 31 of those pages in full.  *Id.*  NARA also released an additional 11 pages in part,

redacting from those documents material that was protected by the deliberative process privilege.

*Id.*  NARA withheld in full pursuant to Exemption 5 another 294 pages of documents protected

by the deliberative process and/or attorney work-product privilege.  *Id.*

The following day, October 25, 2006, CREW administratively appealed NARA's

determination that portions of these documents are protected by either the deliberative process or

attorney work-product privilege.  *Id.* ¶ 7.  CREW's appeal also challenged the adequacy of the

search conducted for responsive records.  *Id.* Tab C.  NARA Deputy Archivist Lewis Bellardo

responded to CREW's appeal in a letter dated November 28, 2006.  *Id.* ¶ 8 & Tab D.  That letter

assured CREW that NARA had performed an adequate search of all records "created and/or

-4-

maintained by NARA staff while conducting NARA business." *Id.* Tab D.  That letter also noted

that in the period since NARA initially responded to CREW's request, NARA staff in the Office

of General Counsel and the Office of Presidential Libraries identified an additional 50 pages of

responsive materials. *Id.* ¶ 8.  NARA released 28 of those pages in part, and withheld the

remaining pages under the deliberative process and/or attorney work-product privileges. *Id.*

With regard to CREW's challenge to NARA's withholdings, the Deputy Archivist informed

CREW that he decided to release in full 11 pages of responsive material, and to release in part an

additional 57 pages of documents. *Id.*  The Deputy Archivist otherwise sustained the

determination that the materials were protected by the deliberative process and/or attorney work-

product privileges. *Id.* Tab D.  He provided detailed explanations for the basis of those

withholdings, including that the majority of the pages withheld were drafts of briefs sent to

NARA by Department of Justice attorneys representing NARA in litigation over access to certain

WAVES records. *See id.*

On January 12, 2007, CREW served the Complaint in the present action upon the United

States Attorney for the District of Columbia.  Defendant NARA answered that complaint on

February 12, 2007.  The parties jointly moved this Court to enter a briefing schedule for this

summary judgment motion.  This Court granted that request on April 11, 2007.

## ARGUMENT

### I.    STANDARDS FOR SUMMARY JUDGMENT IN FOIA CASES

Summary judgment is the procedural vehicle by which most FOIA actions are resolved.

*See* Fed. R. Civ. P. 56(c); *see also, e.g.*, *Miscavige v. IRS*, 2 F.3d 366, 369 (11th Cir. 1993)

("Generally, FOIA cases should be handled on motions for summary judgment, once the

documents in issue are properly identified."). Summary judgment is to be freely granted where, as here, there are no material facts genuinely at issue, and the agency is entitled to judgment as a matter of law. *See Alyeska Pipeline Serv. Co. v. EPA*, 856 F.2d 309, 314-15 (D.C. Cir. 1988); *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

Under the FOIA, the court conducts a *de novo* review to determine whether the government properly withheld records under any of the FOIA's nine statutory exemptions. *See* 5 U.S.C. § 552(a)(4)(B) (2000). The government bears the burden of justifying non-disclosure. *See Johnson v. Executive Office for U.S. Attorneys*, 310 F.3d 771, 774 (D.C. Cir. 2002); *McCutchen v. United States Dep't of Health & Human Servs.*, 30 F.3d 183, 185 (D.C. Cir. 1994). It may satisfy that burden through submission of an agency declaration that describes the withheld material with reasonable specificity as well as the reasons for non-disclosure, and, if necessary, a *Vaughn* index. *See United States Dep't of Justice v. Reporters' Comm. for Freedom of the Press*, 489 U.S. 749, 753 (1989); *see Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984); *Hemenway v. Hughes*, 601 F. Supp. 1002, 1004 (D.D.C. 1985) (recognizing that in FOIA cases, summary judgment hinges not on the existence of genuine issue of material fact but rather on the sufficiency of agency affidavits). Such affidavits are to be "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Edmonds Institute v. U.S. Dep't of Interior*, 460 F. Supp. 2d 63, 68 (D.D.C. 2006) (citation and quotation marks omitted).

## II.    NARA PROPERLY WITHHELD DOCUMENTS UNDER EXEMPTION 5 OF THE FOIA

### A.    Privileges Protected by Exemption 5

The central issue in this litigation is whether NARA properly withheld documents

pursuant to Exemption 5 of the FOIA.  Section 552(b)(5) of Title 5 of the United States Code

exempts from mandatory disclosure "inter-agency or intra-agency memorandums or letters which

would not be available by law to a party . . . in litigation with the agency."  5 U.S.C. § 552(b)(5)

(2000).  In particular, it "exempts those documents . . . that are normally privileged in the civil

discovery context."  *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975).  Three civil

discovery protections are relevant to NARA's document production in this case: (1) the

deliberative process privilege, the general purpose of which is to "'prevent injury to the quality of

agency decisions,' and to encourage open, frank, uninhibited evaluation of issues by government

employees," *Judicial Watch, Inc. v. Export-Import Bank*, 108 F. Supp. 2d 19, 35 (D.D.C. 2000)

(quoting *Sears, Roebuck & Co.*, 421 U.S. at 151) (internal citation omitted); (2) the attorney

work-product doctrine, which is "intended to preserve a zone of privacy in which lawyers can

prepare and develop legal theories and strategy with an eye toward litigation free from

unnecessary intrusion by an adversary," *Hertzberg v. Veneman*, 273 F. Supp. 2d 67, 75 (D.D.C.

2003) (citing *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947)); and (3), the attorney-client

privilege, which "helps improve the quality of agency decision making by safeguarding the free

flow of information that is a necessary predicate for sound advice."  *Judicial Watch, Inc. v. U.S.

Dept. of Justice*, 306 F. Supp. 2d 58, 74 (D.D.C. 2004) (quoting *Murphy v. Tenn. Valley Auth.*,

571 F.Supp. 502, 506 (D.D.C. 1983)).

   1.    *Deliberative Process Privilege*

   The deliberative process privilege is an "ancient [one] . . . predicated on the recognition

'that the quality of administrative decision-making would be seriously undermined if agencies

were forced to operate in a fishbowl.'"  *Dow Jones & Co. v. DOJ*, 917 F.2d 571, 573 (D.C. Cir.

1990) (quoting *Wolfe v. HHS*, 839 F.2d 768, 773 (D.C. Cir. 1988) (en banc)).  Agencies may invoke the privilege: (1) to encourage open, frank discussions on matters of policy between subordinates and superiors; (2) to protect against premature disclosure of proposed policies before they are finally adopted; and (3) to protect against public confusion that might result from disclosure of reasons and rationales that were not in fact ultimately the grounds for an agency's action.  *See Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982); *Jordan v. United States Dep't of Justice*, 591 F.2d 753, 772-73 (D.C. Cir. 1978) (en banc), *overruled in part on other grounds by*, *Crooker v. Bureau of Alcohol, Tobacco and Firearms*, 670 F.2d 1051 (D.C. Cir. 1981) (en banc).

For a document to be covered by the deliberative process privilege, that document must be both "predecisional" and "deliberative."  *Wolfe*, 839 F.2d at 774 (citing *EPA v. Mink*, 410 U.S. 73, 88 (1973)).  "Pre-decisional" documents are those that are "generated before the adoption of an agency policy."  *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980); *see also NLRB*, 421 U.S. at 151 n.18; *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993).  An agency need not "point to an agency final decision" to invoke the privilege, however; "[t]o establish that the document is pre-decisional," the agency need "merely establish what deliberative process is involved, and the role that the documents at issue played in that process."  *Judicial Watch v. Export-Import Bank*, 108 F. Supp. 2d at 35 (citing *Formaldehyde Inst. v. HHS*, 889 F.2d 1118, 1223 (D.C. Cir. 1989)).  In addition, "[t]here should be considerable deference to the [agency's] judgment as to what constitutes . . . 'part of the agency give-and-take – of the deliberative process – by which the decision itself is made.'"  *Chemical Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 600 F. Supp. 114, 118 (D.D.C. 1984) (quoting *Vaughn v.*

*Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975)).  The agency is best situated "to know what confidentiality is needed 'to prevent injury to the quality of agency decisions . . . .'" *Id.* (quoting *NLRB*, 421 U.S. at 151).

To be "deliberative," a document must be "a direct part of the deliberative process," meaning that the document "makes recommendations or expresses opinions on legal or policy matters." *Vaughn*, 523 F.2d at 1143-44; *see also Wolfe*, 839 F.2d at 773-74; *City of Virginia Beach v. U.S. Dep't of Commerce*, 995 F.2d 1247, 1253 (4th Cir. 1993) (deliberative process "protects 'recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency'") (quoting *Coastal States Gas Corp.*, 617 F.2d at 866).  The privilege also protects facts that reflect the agency's decision-making process.  *See Montrose Chemical Corp. v. Train*, 491 F.2d 63, 71 (D.C. Cir. 1974).  Facts are protected by the privilege if the "'manner of selecting or presenting those facts would reveal the deliberative process, or if the facts are inextricably intertwined with the policymaking process.'"  *Hamilton Securities Group v. HUD*, 106 F. Supp. 2d 23, 33 (D.D.C. 2000) (quoting *Ryan v. Dep't of Justice*, 617 F.2d 781, 790 (D.C. Cir. 1980)); *see also Wolfe*, 839 F.2d at 774-76.[2]

---

[2] 5 U.S.C. § 552(b) does require an agency to disclose "[a]ny reasonably segregable portion" of a document being withheld pursuant to the deliberative process privilege.  As demonstrated in the *Vaughn* Index, NARA has undertaken a segregability analysis with regard to each of the documents withheld and has released all segregable factual information.  *See* Stern Decl. ¶ 12.  NARA has made these disclosures – for example, the header information on e-mail communications – even though many of the documents are also protected by the attorney work-product information, which does not require agencies to segregate factual information.  *See infra* at 10-11.

2.    *Attorney Work-Product Doctrine*

The attorney work-product doctrine "protects from disclosure any materials prepared by or for a party or its attorney or by or for a party's representative in anticipation of litigation." *Hertzberg*, 273 F. Supp. 2d at 75 (citing Fed. R. Civ. P. 26(b)(3)).  While the doctrine applies only to documents "initially prepared in contemplation of litigation, or in the course of preparing for trial," *Coastal States Gas Corp.*, 617 F.2d at 865, litigation need not actually be pending – or even certain – at the time of the document's creation for the protection to attach; so long as an "articulable claim, likely to lead to litigation . . . ha[d] arisen," a document prepared in anticipation of such litigation is shielded.  *Id.*; *see also Hertzberg*, 273 F. Supp. 2d at 78 ("litigation need not be actual or imminent; it need only be 'fairly foreseeable.'" (quoting *Coastal States Gas Corp.*, 617 F.2d at 865)).  "[T]he 'testing question' for the work product privilege . . . is whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *In re Sealed Case*, 146 F.3d 881, 884 (D.C.Cir.1998).  "To meet this standard, a party 'must at least have had a subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable' in the circumstances." *Hertzberg*, 273 F. Supp. 2d at 79 (quoting *In re Sealed Case,* 146 F.3d at 884).  Moreover, where this privilege applies, the entire document in question is exempt from disclosure; an agency need not comply with the segregability requirement of 5 U.S.C. § 552(b).  *See Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 372 (D.C. Cir. 2005) ("[W]e hold that, because the emails at issue in this case are attorney work product, the entire contents of these documents – *i.e.*, facts, law, opinions, and analysis – are exempt from disclosure under FOIA.").

3.      *Attorney-Client Privilege*

The attorney-client privilege is the "oldest of the evidentiary privileges." *Coastal States Gas Corp.*, 617 F.2d at 862. "Its purpose is to assure that a client's confidences to his or her attorney will be protected, and therefore encourage clients to be as open and honest as possible with attorneys." *Id.* That privilege extends not only to a client's communications to an attorney, but also to an attorney's written communication with the client: "While its purpose is to protect a client's disclosures to an attorney, the federal courts extend the privilege also to an attorney's written communications to a client, to ensure against inadvertent disclosure, either directly or by implication, of information which the client  has previously confided to the attorney's trust." *Judicial Watch, Inc. v. U.S. Dept. of Justice*, 306 F. Supp. 2d at 73-74 (citing *Coastal States,* 617 F.2d at 862).

* * * * *

As amply demonstrated by the declaration and *Vaughn* Index submitted in support of this Motion, each document withheld in full or in part by NARA is protected by one or more of these three evidentiary protections.  To assist the Court, these documents have been grouped into four separate categories that explain the deliberative and/or litigation context in which those documents were created: (1) Government deliberations on the disposition of WAVES records; (2) Inter- and intra- agency deliberations regarding the *Judicial Watch* litigation over WAVES records; (3) Deliberations on policies for retaining WAVES records occurring contemporaneously with ongoing litigation seeking access to those records; and (4) Communications between Department of Justice Attorneys and NARA concerning draft legal briefs in pending litigation.  The basis for withholding each of these documents is set out below.

-11-

### B.     Government Deliberations on Disposition of WAVES Records

*1.     Deliberations on Proposed WAVES Records Schedules*

Pursuant to the Federal Records Act, 44 U.S.C. § 3303a (2000) ("FRA"), federal agencies regularly submit to NARA draft "record schedules" concerning the proposed disposition of certain records. *See* Stern Decl. ¶ 14. NARA reviews these proposed schedules to make determinations about the proper disposition of such records, including what format the records must be in and how long they must be kept. *Id.* That review process routinely involves both internal communications among NARA archivists and inter-agency communications with the entity that submitted the proposed schedule. *Id.* If, after these preliminary communications, NARA believes a records schedule is warranted, it publishes a proposed schedule in the *Federal Register* seeking notice and comment from interested persons. *Id.*; *see also* 44 U.S.C. § 3303a(a) (2000).

In the early- to mid-1990s, the United States Secret Service submitted multiple proposed records schedules for its copies of the records generated by the WAVES entry system. *See* Stern Decl. ¶ 14. Proposed schedules submitted in January 1990, February 1993, and March 1996 were released in full to the plaintiff in response to its FOIA request. These proposed schedules – all of which were eventually withdrawn – gave rise to intra- and inter-agency discussions protected under the deliberative process privilege. *Id.*

While the proposed schedules were released in full, the deliberations that resulted from the schedules' submission, *see* Stern Decl. ¶ 15, *Vaughn* Index ## 1 - 11, were redacted in part

(while all of the header information[3] of the e-mails was released, the substance of the

deliberations was withheld). Document 1 and Documents 4 - 11 are e-mail communications

written by NARA lawyers and archivists between 1995 and 2000. These communications, which

contain candid deliberations about the proposed records schedules, are both predecisional – in

that they were part of ongoing deliberations about the proposed WAVES records schedule – and

deliberative – in that they "ma[de] recommendations or expresse[d] opinions on legal or policy

matters" related to the retention of WAVES records, *Vaughn*, 523 F.2d at 1144.[4]

In addition to these e-mails, NARA also identified as responsive two other documents

created as part of the deliberations concerning the proposed WAVES records schedules. First,

NARA identified a single page of notes taken by NARA archivist Richard Marcus. *See* Stern

Decl. ¶ 16; *Vaughn* Index # 2. These notes are deliberative and pre-decisional because they

represent thoughts of an individual NARA employee in connection with meetings held to work

through legal and policy issues related to the record status and retention policies of WAVES

records. *See Judicial Watch of Florida, Inc. v. Dep't of Justice*, 102 F. Supp. 2d 6, 14 (D.D.C.

---

[3] As used throughout this brief, "header information" refers to the data that appears at the top of a printed e-mail communication, including: (1) the name of the sender and recipients of the message; (2) the date of the message; and (3) the "subject line" or title of the message.

[4] The fact that these deliberations occurred over e-mail does not deprive them of protection under the deliberative process privilege; if anything, that medium heightens the need to protect these communications. *See Hornbostel v. U.S. Dept. of Interior*, 305 F. Supp. 2d 21, 31 (D.D.C. 2003) ("[E]mails exchanging thoughts and opinions about various legal and policy decisions . . . . are all part of the group thinking and preliminary actions encompassed by the policy making process in an agency. Disclosure of such documents would risk causing an injury to the quality of this process, which is what Exemption 5 seeks to avoid."). Disclosure of the contents of e-mail messages would impede the day-to-day functioning of NARA because its attorneys and staff would no longer feel free to discuss their ideas and render opinions, recommendations, or advice using this powerful communication tool. *See* Stern Decl. ¶ 11.

-13-

2000) (finding that Attorney General's notes of a meeting were protected by the deliberative

process privilege because they represent "distillations of issues that she believed were important

at the time of their discussion and which she wished to memorialize for later reference") .

Second, NARA identified as responsive to the FOIA request an undated one-page cover

memorandum entitled "U.S. Secret Service White House Division Workers and Visitors Entry

System (WAVES), Job No. N1-87-93-03" from a NARA staffer commenting on (and attaching

two copies of) the proposed records schedule. *See* Stern Decl. ¶ 17 *Vaughn* Index # 3. This

internal memorandum discusses legal and policy positions of both NARA and the White House.

*Id.* In the context of the ongoing discussions about the proposed records schedules, this internal

memorandum is clearly deliberative and pre-decisional. *Id.*

Disclosure of these communications offering candid assessment and advice on the

proposed records schedules would undermine the interests protected through the deliberative

process privilege. *See* Stern Decl. ¶ 11. As noted, that privilege was designed to: (1) encourage

open, frank discussions on matters of policy between subordinates and superiors; (2) protect

against premature disclosure of proposed policies before they are finally adopted; and (3) protect

against public confusion that might result from disclosure of reasons and rationales that were not

in fact ultimately the grounds for an agency's action. *Russell*, 682 F.2d at 1048. Releasing these

e-mails would undermine the first of these goals by discouraging frank communication among

archivists, and between NARA and agencies submitting proposed records schedules, out of fear

that any such communication – no matter how preliminary or informal – might be publicly

disclosed. *See Jordan,* 591 F.2d at 772-73 (the deliberative process privilege "protects creative

debate and candid consideration of alternatives within an agency, and, thereby, improves the

-14-

quality of agency policy decisions. . . . [I]t [also] protects the integrity of the decision-making process itself by confirming that officials should be judged by what they decided[,] not for matters they considered before making up their minds").  Moreover, disclosing these preliminary deliberations concerning draft WAVES records schedules would undermine the third goal of the deliberative process privilege by risking public confusion about the legal status of the records. As these records were never scheduled under the Federal Records Act – because they have in fact been determined to be Presidential Records not subject to the FRA, *see* Defendant's Answer ¶ 17 – releasing preliminary communications about unenacted schedules that proposed to treat WAVES as Federal Records poses a substantial risk of creating public confusion.  *See, e.g.*, *Judicial Watch, Inc. v. Clinton*, 880 F. Supp. 1, 13 (D.D.C. 1995) (deliberative communications about a policy "which the agency ultimately elected not to issue" pose a substantial risk of "creat[ing] public confusion regarding the agency's rationale" (citing *Russell*, 682 F.2d at 1048-49).  That risk of confusion is heightened by the fact that NARA is not the final arbiter under the Presidential Records Act of whether a document qualifies as a presidential record.  *See* Stern Decl. ¶ 31; 44 U.S.C. § 2203(a) (2000); *Armstrong v. Bush*, 924 F.2d 282, 290 (D.C. Cir. 1991).  Thus, the views of NARA counsel and archivists on these proposed records schedules by definition cannot represent the final views of the government with regard to these records' status.

In addition to being protected by the deliberative process privilege, these e-mail communications are protected by the attorney work-product doctrine, which "protects from disclosure any materials prepared by or for a party or its attorney or by or for a party's representative in anticipation of litigation." *Hertzberg*, 273 F. Supp 2d at 75.  Specifically, the e-mails denoted as Documents 5 - 11 were written by NARA attorneys, or penned for NARA

-15-

attorneys by NARA archivists in response to specific questions counsel posed related to the legal status of WAVES records.[5]  *See* Stern Decl. ¶ 23; *Vaughn* Index ## 5-11.  Although no litigation was yet pending on the status of WAVES records at the time NARA employees composed these messages, that fact does not deprive the e-mails of protection under the attorney work-product doctrine.  For that doctrine to apply, litigation need not be "actual or imminent"; "it need only be 'fairly foreseeable.'"  *Hertzberg*, 273 F. Supp. 2d at 78 (quoting *Coastal States Gas Corp.*, 617 F.2d at 865).  "[A] party 'must at least have had a subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable' in the circumstances."  *Id.* at 79 (quoting *In re Sealed Case*, 146 F.3d at 884).  These inter- and intra-agency communications meet that "in anticipation of litigation" standard because NARA employees reasonably believed that the resolution of WAVES' status as either federal or presidential records would give rise to litigation.  *See* Stern Decl. ¶ 23.  NARA believed that many parties might wish to file FOIA requests seeking to obtain records containing information on individuals who visited the White House, and that these requests would in turn implicate the question of whether WAVES are agency records of the USSS (and are therefore subject to FOIA) or are presidential records, and thus not subject to FOIA during the incumbent Administration.  *Id.*  It was entirely reasonable for NARA to believe that the question of whether WAVES are agency records obtainable under FOIA would give rise to litigation – as it has in other instances.  *See, e.g.*, *Armstrong v. Executive Office of the President*, 90 F.3d 553 (D.C. Cir. 1996) (analyzing whether records are agency

---

[5] Unlike these e-mails, the internal memorandum commenting on the proposed records schedule discussed above (*Vaughn* Index # 3) is not protected by the attorney work-product doctrine.  Nothing on the face of that document indicates that it was prepared by or for an attorney.

records); *United We Stand Am., Inc. v. IRS*, 359 F.3d 595 (D.C. Cir. 2004) (same).  Indeed, NARA's belief that litigation was inevitable proved to be not merely reasonable, but correct; the status of WAVES records was or is at the heart of several different pieces of litigation, including *The Washington Post*, *Democratic National Committee, Judicial Watch*, *CREW I*, and *CREW II*.

     2.     *Deliberations on 2001 WAVES Record Retention Memorandum*

NARA identified several pre-decisional deliberative documents related to a policy proposal advanced immediately prior to the close of the Clinton administration concerning the management of WAVES records and the transfer of certain Clinton Administration WAVES records from USSS to the White House.  On January 17, 2001, an Associate Counsel to the President and a representative of the United States Secret Service drafted a memorandum for NARA's General Counsel entitled "Disposition of certain Presidential Records created by the USSS."  *See Vaughn* Index # 13; *see also* Stern Decl. ¶ 18.  This memorandum made policy proposals concerning the management (in terms of their transfer of possession from the USSS to the White House) and disposition of WAVES and ACR records.  *See* Stern Decl. ¶ 18; *Vaughn* Index # 13.  NARA's General Counsel responded two days later with a letter commenting on the proposal submitted by the Associate Counsel to the President and the USSS.  *See* Stern Decl. ¶ 18; *Vaughn* Index # 14.  Also included in this set of deliberative documents are several communications related to this proposal, including: (1) a set of handwritten notes taken by NARA's General Counsel during a conversation with a USSS official prior to the receipt of – and concerning – the proposal forwarded to NARA, *see* Stern Decl. ¶ 18; *Vaughn* Index # 12; (2) two e-mails sent by NARA's General Counsel to NARA personnel shortly after receiving the proposal, in which the NARA attorney discusses the proposal for maintaining and transferring

WAVES and ACR records, s*ee* Stern Decl. ¶ 19; *Vaughn* Index ## 15-16; (3) two pages of notes written by a NARA archivist containing questions and comments on legal and recordkeeping issues raised by the proposal (Document # 13) and the NARA General Counsel's letter and emails in response thereto (Documents # 14-15), *see* Stern Decl ¶ 19; *Vaughn* Index # 15a; and (4) a facsimile in which NARA's General Counsel forwarded to another NARA employee the aforementioned proposal for records retention (document # 13) and the internal NARA e-mail communications concerning that proposal (document # 16), and recounted a conversation between NARA's General Counsel and an Associate Counsel to the President on a legal issue related to WAVES records, *see* Stern Decl. ¶ 19; *Vaughn* Index # 17.

Like the communications concerning the proposed records schedules, each of these documents is protected by both the deliberative process privilege and the attorney work-product doctrine.  The communications were part of an ongoing inter-agency deliberation about the maintenance and disposition of WAVES records.  Such documents, which "reflect[] the give-and-take of the consultative process" that occurs in formulating agency policy – in this instance, policy concerning the maintenance of WAVES records and methods for transferring them from the USSS to the White House – fall squarely within the deliberative process privilege. *Heartwood, Inc. v. U.S. Forest Service*, 431 F. Supp. 2d 28, 37 (D.D.C. 2006).  Making public such policy proposals (or other employees' comments on those proposals) is undoubtedly "likely 'to stifle honest and frank communication within the agency.'" *Id.* (quoting *Coastal States Gas Corp.*, 617 F.2d at 866); *see also* Stern Decl. ¶ 11.

Moreover, as noted above, at the time of these communications NARA attorneys reasonably believed that any determination about the disposition of WAVES records would give

-18-

rise to litigation – which it has. *See* Stern Decl. ¶ 23. Thus, these communications about, *inter alia*, policies for retaining WAVES records, drafted by and for attorneys representing NARA and other agencies, constitute attorney work-product that is exempt from disclosure under FOIA Exemption 5. *Id.*

       3.     *Deliberations on 2004 WAVES Record Retention Memorandum*

In September 2004, an Associate Counsel to the President and a Special Assistant to the Director to the USSS conveyed to NARA an unsigned draft document dated July 29, 2004 and titled "Disposition of Certain Presidential Records Created by the USSS." *See* Stern Decl. ¶ 20; *Vaughn* Index # 18, 18a. This document, and the e-mail that conveyed it, informally advanced a proposal for the disposition of WAVES and ACR records. *See* Stern Decl. ¶ 20; *Vaughn* Index # 18, 18a. The receipt of this informal proposal resulted in three separate e-mail exchanges: (1) a discussion among NARA staff in response to the NARA General Counsel's request for comments on the proposal, *see Vaughn* Index ## 19-25; (2) an exchange between NARA's General Counsel, attorneys at the Department of Justice and Office of Counsel to the President, and officials at the USSS, commenting on the informal proposal and identifying issues to be addressed at subsequent inter-agency meetings, *see Vaughn* Index 27; and (3) e-mails from NARA General Counsel to other NARA staff discussing issues raised by the proposal and summarizing inter-agency deliberations, *see Vaughn* Index # 28-29. The receipt of this proposal also led to the creation of an unsigned internal NARA document discussing the July 2004 proposal. *See* Stern Decl. ¶ 20; *Vaughn* Index # 26. That two-page document is part of the ongoing discussion of the disposition of WAVES records that resulted when the USSS and White House Counsel submitted their 2004 memorandum, and is therefore pre-decisional and

deliberative.  *Id.*

Like the communications regarding the 2001 proposal for the maintenance and

disposition of WAVES and ACR records, these 2004 documents are part of intra- and inter-

agency policy deliberations.  The unsigned draft from the Office of Counsel to the President and

the USSS is clearly deliberative because it was part of (indeed, the catalyst for) discussions about

procedures for the disposition of WAVES and ACR records.  Disclosing this unsigned,

preliminary draft policy proposal risks confusing the public about the agencies' views on the

appropriate procedures for the maintenance and disposition of WAVES and ACR records.  *See*

*Skull Valley Band of Goshute Indians v. Kempthorne*, No. 04-399, slip op. at 14 (D.D.C. Mar. 26,

2007) ("[D]isclosure of draft documents 'could lead to confusion of the public' because they

might 'suggest 'as agency position that which is as yet only personal position.'' (quoting *Russell*,

682 F.2d at 1048)).

Similarly, the resulting e-mail communications concerning this proposal among NARA

attorneys and staff, and between attorneys at NARA and other Executive Branch agencies, are

also deliberative.  Disclosing these personal, non-final, intra-agency discussions would seriously

harm the ability of government employees to communicate openly and frankly on policy matters

for fear that even their informal or preliminary comments might one day be publicly available for

scrutiny.  *See* Stern Decl. ¶ 11; *see also Heartwood*, 431 F. Supp. 2d at 37 (Exemption 5 protects

documents that "reflect the personal opinions of the writer rather than the policy of the agency").

Finally, because these communications were authored by attorneys (or in direct response

to inquiries made by attorneys), and because they concern the disposition of WAVES records – a

subject NARA reasonably believed to be the subject of future litigation, *see* Stern Decl. ¶ 23 –

these documents are also protected by the attorney work-product doctrine.[6]

       *4.*     *2005 E-mail Between Associate Counsel to the President and NARA General Counsel*

This category of deliberative documents discussing the disposition of WAVES records also contains a January 2005 e-mail from an Associate Counsel to the President and NARA's General Counsel, forwarding an e-mail discussion with a White House Office of Records Management employee about WAVES record retention issues. *See* Stern Decl. ¶ 20; *Vaughn* Index # 30. Because the e-mail contains policy recommendations on the retention of WAVES records and solicits feedback on that proposal, and because it was sent to (and from) an attorney who expected to be involved in litigation over the legal status of WAVES records, *see* Stern Decl. ¶ 23, this e-mail is covered by both the deliberative process privilege and the attorney work-product doctrine. Failure to shield this communication from disclosure "is likely in the future to stifle honest and frank communication" in agency decisionmaking, thereby harming the public interest. *Coastal States Gas Corp.*, 617 F.2d at 866; *see also* Stern Decl. ¶ 11.

     5.     *USSS Presentation to NARA Counsel and Counsel's Notes of that Meeting*

Finally, this first category of responsive documents also includes a copy of six pages of a presentation given in July 2005 by the USSS to NARA attorneys and staff, attorneys from the Department of Justice and the Office of Counsel to the President, and an employee from the White House Office of Records Management, in connection with ongoing legal and policy deliberations regarding the management and disposition of WAVES and ACR records. *See* Stern

---

[6] NARA does not assert the attorney work-product doctrine with regard to Document 26. Because that document is not addressed to any specific person and its author is unknown, see *Vaughn* Index # 26, NARA cannot represent that it was created by or for an attorney.

Decl. ¶ 21; *Vaughn* Index # 31.  The document also contains marginalia consisting of hand-written annotations made by NARA's general counsel.  *Id.*  This presentation (and the accompanying marginalia), which contains specific policy proposals concerning records management, was part of an ongoing inter-agency deliberation about the appropriate management and disposition of WAVES and ACR records.  As such, it is protected by the deliberative process privilege.  *See* Stern Decl. ¶ 21.  Releasing this presentation would chill inter-agency communication because it will make agencies less likely to seek input from other agencies on draft policy proposals, and in addition it will make any such communication less effective because agencies will become less willing to put any proposals into writing for fear that their preliminary suggestions might ultimately be disclosed.  *See* Stern Decl. ¶ 11.  Chilling this type of communication between NARA and federal agencies on record keeping issues is particularly dangerous because NARA possesses unique expertise within the federal government in working with records statutes such as the FRA and PRA.

This presentation is also protected by the attorney work-product doctrine.  The presentation was created to inform attorneys from NARA, USSS, DOJ, and the Office of Counsel to the President about certain legal and policy matters concerning WAVES records.  As the legal status of WAVES records was something that NARA reasonably believed would give rise to litigation, *see* Stern Decl. ¶ 23, this document constitutes a briefing prepared for an attorney in anticipation of the litigation.  *See Hertzberg*, 273 F. Supp. 2d at 79 (work-product privilege covers documents "prepared in anticipation of foreseeable litigation, even if no specific claim is [yet] contemplated").  Moreover, because this document was prepared for attorneys in anticipation of litigation on the status of WAVES records – and, indeed, contains the attorney's

-22-

handwritten notes on the subject of that presentation – the work-product doctrine applies even if the author of the presentation was not an attorney. *See id.* at 76-77.

Also responsive to CREW's FOIA request are two separate sets of handwritten notes taken in connection with the aforementioned presentation. *See* Stern Decl. ¶ 21; *Vaughn* Index ## 32-33. These notes are protected by the deliberative process privilege because they reflect the NARA archivists' "distillations of issues that [they] believed were important at the time of [the] discussion and which [they] wished to memorialize for later reference." *Judicial Watch of Florida, Inc. v. Dep't of Justice*, 102 F. Supp. 2d 6, 14 (D.D.C. 2000); *see also* Stern Decl. ¶ 21.

**C.    DELIBERATIONS RELATED TO THE PENDING *JUDICIAL WATCH* LITIGATION**

The second category of responsive documents withheld in part contains inter- and intra-agency communications responsive to paragraph 4 of CREW's FOIA request, which seeks "any and all documents and records referring or relating to *Judicial Watch v. United States Secret Service*, Civ. Action No. 06-310 (United States District Court for the District of Columbia)." In that litigation, brought under the FOIA, Judicial Watch attempted to obtain, *inter alia*, WAVES records detailing visits of lobbyist Jack Abramoff to the White House. NARA identified 11 documents (totaling 17 pages) responsive to this request. *See* Stern Decl. ¶ 24; *Vaughn* Index ## 34-44, 53. These documents were redacted in part.[7]

The first three documents that fall into this category are e-mails between NARA's General Counsel and an attorney at the Department of Justice, with copies to other DOJ attorneys as well as an Associate Counsel to the President and an official at the USSS. *See* Stern Decl. ¶

---

[7] Again, the header information for these e-mail communications was released (as well as some content, where noted), but the deliberative material contained in these messages was redacted.

24; *Vaughn* Index ## 34-37.  These e-mails forward an AP news article discussing the filing of

the *Judicial Watch* action and candidly discuss the pending lawsuit and the legal status of

WAVES records.  *See Id.*  NARA has released header information for these e-mails, as well as

the news story.  NARA redacted the substantive discussions between NARA counsel and the

DOJ attorney, however, because those portions of the e-mails are deliberative communications

drafted by attorneys concerning a legal issue relevant to the ongoing litigation.  Because the e-

mails "express[] opinions on legal . . . matters," *Vaughn*, 523 F.2d at 1144, they are protected by

the deliberative process privilege.  Moreover, because they were drafted by Government

attorneys and discuss a matter currently in litigation, these e-mails are undoubtedly shielded by

the attorney work-product doctrine as well.  *See, e.g.*, *Judicial Watch, Inc. v. Department of

Justice*, 432 F.3d 366, 367 (D.C. Cir. 2005) (holding that e-mails among Department of Justice

attorneys discussing whether to file an amicus brief in a pending case and what position to take in

that litigation are protected in their entirety by the work-product doctrine and need not be

disclosed).

Also included in this category of documents are e-mails between NARA lawyers and

other NARA staffers regarding issues related to the *Judicial Watch* litigation.  These e-mails

candidly discuss legal issues involving the status of WAVES records in light of an AP story

detailing the USSS's decision to release certain records in response to the *Judicial Watch*

litigation.  *See* Stern Decl. ¶ 24; *Vaughn* Index ## 38-44.  The header information from these e-

mails, as well as the AP story, has been released in response to CREW's FOIA request.  The

remaining, redacted material in all of these e-mails is protected by the deliberative process

privilege because these types of candid, informal discussions of legal issues related to the

-24-

pending litigation are "deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB v. Sears, Roebuck, & Co.*, 421 U.S. 132, 150 (1975); *see also* Stern Decl. ¶ 11.  Moreover, these internal NARA e-mails – with the exception of Documents 38 and 39[8] – are also protected by the attorney work-product doctrine because they represent the views of NARA's counsel, or contain responses to questions posed by NARA counsel to other NARA staff, on issues related to the pending *Judicial Watch* litigation.  *See* Stern Decl. ¶ 25; *see also Hertzberg*, 273 F. Supp 2d at 75 (work-product privilege protects materials "prepared *by or for* a party or its attorney . . . in anticipation of litigation" (emphasis added)).

Finally, this category contains an additional e-mail authored by NARA's General Counsel and sent to several NARA employees.  *See* Stern Decl. ¶ 24; *Vaughn* Index # 53.  The majority of this document has been released, although NARA has withheld two lines of text containing the NARA General Counsel's characterization of a legal filing in the *Judicial Watch* litigation.  That portion of the e-mail is protected not only by the deliberative process privilege – because it "expresses opinions on legal . . . matters," *Vaughn*, 523 F.2d at 1143 – but also by the work-product doctrine, because it contains "[m]aterial[] relating to mental impressions, opinions and legal theories of attorneys" on a matter in litigation.  *Simmons, Inc. v. Bombardier, Inc.*, 221 F.R.D. 4, 7 (D.D.C. 2004).

Disclosing any of these communications about the pending *Judicial Watch* litigation or

---

[8] Unlike Documents 34-36, 39-43, and 52, these two messages from NARA archivists did not represent the legal opinions of NARA lawyers or responses to questions posed by lawyers bearing on a legal issue in that pending litigation; these messages represented the individual views of non-lawyers.  Nevertheless, for the reasons noted above, these messages are still protected by the deliberative process privilege.

the USSS's decision to release certain documents as part of that litigation would have a detrimental impact on the agency decision-making process. Releasing e-mails that constitute collaborative legal and policy discussions is likely to chill the candor of agency employees who feel that their every move is subject to scrutiny. *See* Stern Decl. ¶ 11. "[T]he [deliberative process] privilege rests most fundamentally on the belief that were agencies forced to operate in a fishbowl . . . the frank exchange of ideas and opinions would cease and the quality of administrative decisions would consequently suffer." *First Eastern Corp. v. Mainwaring*, 21 F.3d 465, 468 (D.C. Cir. 1994).

Moreover, such a disclosure would also harm the adversarial process. These communications candidly discuss pending litigation. Disclosure of the personal thoughts of government attorneys analyzing a question in light of ongoing litigation (or their agents performing such an analysis at their behest) would discourage that kind of preparation and contemplation in future cases, thereby harming the effectiveness of that attorney's representation of its client. *See, e.g.*, *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998) ("Without a strong work-product privilege, lawyers would keep their thoughts to themselves, avoid communicating with other lawyers, and hesitate to take notes."); *see also Hickman*, 329 U.S. at 510-11. Accordingly, this material was properly withheld under Exemption 5.

### D. DELIBERATIONS ON STATUS AND DISPOSITION OF WAVES RECORDS CONTEMPORANEOUS WITH ONGOING LITIGATION

Also responsive to CREW's FOIA requests is a series of communications between NARA, the Department of Justice, the USSS, and the Office of Counsel to the President regarding the legal status and disposition of WAVES records. These communications – which

occurred against the backdrop of pending litigation seeking access to WAVES records – were

withheld in full or in part under Exemption 5.  For the reasons explained below, each of those

withholdings was appropriate, as this material is protected by both the deliberative process

privilege and/or the attorney work-product doctrine, and – in the case of a legal memorandum

from the Department of Justice – the attorney-client privilege as well.

     1.     *Draft Memorandum of Understanding Between USSS and White House Office of Records Management*

On May 17, 2006, the White House Office of Records Management ("WHORM") and the

USSS executed a Memorandum of Understanding ("MOU") that both documented past practice

regarding WAVES and ACR records and formalized the legal status of those records and

WHORM's management and custody of the WAVES and ACR records.  The USSS made the

final version of that MOU public in a filing in a related case seeking access to certain WAVES

records.[9]

Included among the documents withheld under Exemption 5 in this litigation is a draft of

that MOU submitted to NARA for its review prior to the document's execution.  *See* Stern Decl.

¶ 26; *Vaughn* Index # 45.  Drafts of final policy documents may be validly withheld under the

deliberative process privilege, because these preliminary, unexecuted documents are necessarily

pre-decisional.  *See Hamilton Securities Group*, 106 F. Supp. 2d at 31-33 (citing *Coastal States

Gas Corp.*, 617 F.2d at 866).  Revealing the process by which such a draft proposal becomes

final would intrude into the deliberative process.  "[T]he disclosure of editorial judgments – for

---

[9] The USSS publicly filed a copy of that MOU as an attachment to the supplemental declaration of Paul S. Morrissey, Deputy Assistant Director of the USSS, in *The Washington Post v. US Dep't of Homeland Security*, No. 06-1737 (D.D.C) (*see* Docket Entry # 10-2).

example, decisions to insert or delete material or to change a draft's focus or emphasis – would stifle the creative thinking and candid exchange of ideas necessary to produce good historical work." *Dudman Communications Corp. v. Dep't of the Air Force*, 815 F.2d 1565, 1569 (D.C. Cir. 1987); *Russell*, 682 F.2d at 1048 (holding that draft agency report is protected from disclosure by the deliberative process privilege). Therefore, this draft of the Memorandum of Understanding was properly withheld under Exemption 5.

        2.      *Nonpublic OLC Advice Memorandum*

      Also included among the documents withheld in full pursuant to Exemption 5 is a nonpublic advice memorandum authored by the Department of Justice's Office of Legal Counsel ("OLC"). This OLC advice memorandum contains legal discussion regarding WAVES records and was issued in connection with OLC's advisory function of providing legal advice to the Executive Branch. *See* Stern Decl. ¶ 28; *Vaughn* Index # 55. This advice memorandum and its drafts (*see Vaughn* Index ## 45, 50) address an issue at the heart of several pieces of litigation: the legal status of WAVES and ACR records. As noted, NARA counsel believed that litigation would result over a determination of WAVES' status as either Presidential or Federal Records. *See* Stern Decl. ¶ 23. That belief was ultimately proved true with the filing of several FOIA requests seeking access to WAVES records, and the litigation resulting therefrom – including *Judicial Watch*, *Democratic National Committee, Washington Post*, *CREW I*, and *CREW II*. Because this legal advice memorandum represents the most sensitive kind of deliberative analysis conducted by government attorneys, it is shielded from disclosure by multiple exemption 5 privileges.

First, the nonpublic OLC advice memorandum is shielded by the deliberative process privilege because it contains legal discussion regarding WAVES records. This document, which has been closely held and not circulated outside the Executive Branch, *see* Stern Decl. ¶ 28, arises out of OLC's advisory function of providing confidential legal advice to the Executive Branch. Courts have repeatedly found that this type of nonpublic, advisory OLC memorandum is exempt from disclosure under FOIA pursuant to the deliberative process privilege. *See National Council of La Raza v. U.S. Dep't of Justice*, 339 F. Supp. 2d 572, 581-82 (S.D.N.Y.2004) (holding that nonpublic OLC advice memorandum like the one at issue here was both predecisional and deliberative, and therefore exempt from disclosure under Exemption 5); *Southam News v. INS*, 674 F.Supp. 881, 886 (D.D.C. 1987) (holding OLC opinion letter "discuss[ing] legal questions regarding the criteria used to evaluate visa applications made by a certain class of individuals" was protected by the deliberative process privilege (quotation marks omitted)); *see also Brinton v. Department of State*, 636 F.2d 600, 604 (D.C. Cir. 1980) (holding that legal advice memorandum from the Department of State Legal Adviser "fits exactly within the deliberative process rationale for Exemption 5"); *Int'l Paper Co. v. Fed. Power Comm'n*, 438 F.2d 1349, 1358-59 & n. 3 (2d Cir. 1971) (holding that legal advice memorandum from Federal Power Commission's General Counsel was shielded by the deliberative process privilege).[10]

Second, this nonpublic OLC advice memorandum is also protected by the attorney-client

_____

[10]The fact that the PRA vests in the President the responsibility to determine whether a document is covered by that Act, *see* Stern Decl. ¶ 31; *Armstrong*, 924 F.2d at 290, only underscores the deliberative nature of this nonpublic OLC advice memorandum. *See, e.g., National Counsel of La Raza,* 339 F. Supp. 2d at 581 (noting the OLC advice memorandum was predecisional, in part, because OLC did not have the authority to formulate final agency policy on the question involved).

privilege.  That privilege is "the oldest of the evidentiary privileges," whose purpose "is to assure that a client's confidences to his or her attorney will be protected, and therefore encourage clients to be as open and honest as possible with attorneys."  *Coastal States Gas Corp.*, 617 F.2d at 862. The privilege applies not only to a client's communication with its lawyers but "extend[s] . . . also to an attorney's written communications to a client, to ensure against inadvertent disclosure, either directly or by implication, of information which the client has previously confided to the attorney's trust."  *Id.*  This nonpublic OLC advice memorandum, which has been closely held and not shared with anyone outside the Executive Branch, *see* Stern Decl. ¶ 28, must be protected in order to shield this important attorney-client relationship between the DOJ and other Executive Branch agencies.

Finally, the nonpublic OLC advice memorandum is also protected by the attorney work-product doctrine.  That doctrine was designed to provide attorneys with "a 'zone of privacy' within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories."  *Coastal States Gas Corp.*, 617 F.2d at 864.  As the Supreme Court has recognized, that zone of privacy is essential to the functioning of the adversary system; without it, attorneys will shy away from conducting the kind of analysis that is necessary to aggressively evaluate a client's position and recommend the best course of action:

> Proper preparation of a client's case demands that [an attorney] assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. . . .  Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be

poorly served.

*Hickman*, 329 U.S. at 511.  Disclosure of this advice memorandum containing legal discussion

would significantly impair the Department's ability to offer nonpublic legal advice to the

Executive Branch about issues in or likely to lead to litigation, because it will create the specter

that any advice committed to paper might be obtained by submitting a FOIA request to a client

agency that received a copy of that legal analysis.  *See* Stern Decl. ¶ 28.

3.    *Inter- and Intra-Agency Communications About Drafts of the MOU and OLC Advice Memorandum*

The category of deliberative documents contemporaneous with ongoing litigation

includes a series of communications between the Department of Justice, NARA, the USSS, and

Office of Counsel to the President concerning the legal issues addressed by the drafts of the

aforementioned drafts of the MOU and the DOJ memorandum.  As noted, these draft documents

were circulated to the relevant federal agencies by an Associate Counsel to the President on May

9, 2006.  *See* Stern Decl. ¶ 26; *Vaughn* Index # 45.  Thereafter, NARA's General Counsel, the

Associate Counsel to the President, DOJ attorneys, and representatives from the USSS

exchanged communications candidly discussing legal issues regarding WAVES records that were

relevant to the draft documents.  *See* Stern Decl. ¶ 26; *Vaughn* Index ## 46-52.  The header

information from all of these e-mail messages has been released, but the substance of the e-mails

– which contains deliberative communications of government attorneys discussing the

government's position on legal questions currently in litigation – was withheld.

Document 54 also relates to the draft MOU and DOJ memorandum circulated on May 9,

2006.  That e-mail, from NARA General Counsel to NARA staff, discusses a FOIA request for

-31-

WAVES records submitted by the Washington Post.  While the portion of the e-mail containing

that FOIA request was released, NARA has redacted a portion of that message discussing issues

surrounding WAVES recordkeeping that related to the draft MOU and DOJ memorandum.  *See*

Stern Decl. ¶ 27; *Vaughn* Index # 54.

The substance of these e-mails, which is protected by both the deliberative process

privilege and attorney work-product doctrine, was validly withheld.  These communications are

protected by the deliberative process privilege because they reflect individual attorneys'

comments on legal and policy matters related to the status of WAVES records and because they

contain suggestions for revisions to draft documents.  As such, these documents "reflect[] the

give-and-take of the consultative process" and fall squarely within the deliberative process

exemption, which "covers recommendations, draft documents, proposals, suggestions, and other

subjective documents which reflect the personal opinions of the writer rather than the policy of

the agency."  *Coastal States Gas Corp.*, 617 F.2d at 866.  Moreover, as noted above, the

deliberative process privilege is especially protective of the process by which draft agency

policies become finalized.  *See Dudman Communications Corp.*, 815 F.2d at 1569 ("[T]he

disclosure of editorial judgments – for example, decisions to insert or delete material or to

change a draft's focus or emphasis – would stifle the creative thinking and candid exchange of

ideas necessary to produce good historical work.").

These e-mail communications are also protected by the attorney work-product privilege

because they contain candid impressions of lawyers (and other officials) from the DOJ, USSS,

NARA, and the Office of Counsel to the President on legal questions at issue in ongoing

litigation against the Government.  *See* Stern Decl. ¶ 26.  These mental impressions of

government attorneys may be "properly withheld as attorney work product" because "they contain the 'mental impressions, conclusions, opinions or legal theories of an attorney'" on legal questions that were then the subject of ongoing litigation. *Dipietro v. Executive Office for U.S. Attorneys*, 357 F. Supp. 2d 177, 184 (D.D.C. 2004) (quoting Fed. R. Civ. P. 26(b)(3)).

> 4.    *Inter- and Intra-Agency Deliberations About the Transfer and Retention of WAVES and ACR Records in Light of One or More Pending Lawsuits*

Finally, this category of documents contains communications between the Office of Counsel to the President, NARA, DOJ, and the USSS concerning the transfer and retention of WAVES and ACR records in light of pending litigation over their legal status. *See* Stern decl. ¶ 29; *Vaughn* Index ## 56-60. These deliberations resulted from an inquiry by an Associate Counsel to the President into the logistics of maintaining and transferring WAVES and ACR records in light of pending litigation. *See Vaughn* Index # 56 (describing e-mail sent to attorneys at NARA, DOJ, and the USSS). NARA's General Counsel and attorneys from the USSS also participated in deliberations over the maintenance of WAVES and ACR records during the pendency of litigation. Because these e-mails represent the informal give-and-take of inter-agency collaboration by which agency decisions are made, the substance of these e-mails is protected by the deliberative process privilege. *See Vaughn*, 523 F.2d at 1143-44; *Wolfe*, 839 F.2d at 773-74. Moreover, because these communications represented the opinions of lawyers on the need to maintain WAVES and ACR records during the pendency of ongoing litigation in which they were involved, these communications also represent attorney work-product. *See Hertzberg*, 273 F. Supp 2d at 75 (attorney work-product privilege protects a "zone of privacy" around legal theories and strategies prepared in anticipation of litigation). Failure to protect these

deliberative pieces of attorney work-product will chill future inter-agency collaboration and

negatively impact the ability of government lawyers to represent their agencies.  *See* Stern Decl. ¶

11, 23.

        **E.**    **COMMUNICATIONS BETWEEN DOJ'S FEDERAL PROGRAMS BRANCH AND
              NARA COUNSEL CONCERNING DRAFT DISTRICT COURT FILINGS IN RELATED
              *CREW* LITIGATION**

The final – and largest – category of documents withheld pursuant to Exemption 5 of the

FOIA contains drafts of legal briefs prepared by Justice Department attorneys representing the

Government in *CREW I* – the litigation in which plaintiff seeks to obtain copies of certain

WAVES records from the USSS.  *See* Stern Decl. ¶ 30; *Vaughn* Index ## 61-75.  These

documents are responsive to paragraph 6 of plainitff's FOIA request, which sought "[a]ny and all

documents and records referring or related to *Citizens for Responsibility and Ethics In

Washington v. United States Department of Homeland Security*, Civ. Action No. 06-883 (United

States District Court for the District of Columbia)."  *See* Stern Decl. ¶ 4.

These communications are clearly exempt from disclosure under both the deliberative

process privilege and attorney work-product doctrine.  Several of these communications forward

copies of draft pleadings that DOJ proposed to file in the *CREW I* litigation.  *See Vaughn* Index

## 68,71, 75.  Those drafts represent core work-product which CREW – the opposing party in

that litigation – is not entitled to obtain.  *See Hickman*, 329 U.S. at 511 (listing "briefs" among

the core types of work product protected by the privilege); *Cf. Carey-Canada, Inc. v. California

Union Ins. Co.*, 118 F.R.D. 242, 246 (D.D.C. 1986) ("Surely defendants would not argue that

prior drafts of the pleadings it has submitted to this court and filed in the public record are not

protected from disclosure by the work-product privilege.").  Disclosure of those draft briefs,

which would reveal important aspects of the government's litigation strategy, would clearly undermine the adversary process. *See Hickman*, 329 U.S. at 511.

Additionally, this category of documents contains e-mail communications between DOJ and NARA attorneys (as well as NARA staff responding to the inquiries of NARA attorneys concerning the matter in litigation). *See* Stern Decl. ¶ 30; *Vaughn* Index ## 61-75. These e-mails contain impressions of the DOJ draft briefs and the pleadings filed by the opposing counsel in that litigation. These communications are protected by both the deliberative process privilege – as they are part of the deliberative process of articulating the United States' legal position in the case – and the work-product privilege, because they constitute the mental impressions of attorneys involved in ongoing litigation over WAVES records. Disclosure of these e-mail communications would chill the effective functioning of the agency by discouraging frank and open communication among federal employees, and would harm the United States by disclosing its litigation strategy. *See* Stern Decl. ¶ 11, 29. Accordingly, this material was properly withheld under Exemption 5.

## III.    NARA CONDUCTED AN ADEQUATE SEARCH FOR RESPONSIVE RECORDS

Finally, CREW cursorily asserts that NARA failed to conduct an adequate search for responsive records. *See* Compl. ¶ 32. NARA is entitled to summary judgment on this claim as well, because its search was reasonably calculated to uncover documents responsive to Plaintiff's FOIA request.

An agency can show that it has discharged its obligations under the FOIA and is entitled to summary judgment by "demonstrat[ing] that it has conducted a 'search reasonably calculated to uncover all relevant documents.'" *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C.

Cir. 1984); *see also Oglesby v. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) ("In order to obtain summary judgment the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.").  The agency is not required to search every record system, but need only search those systems in which it believes responsive records are likely to be located.  *Id.* Failure to uncover a responsive document does not mean the search was inadequate: "[T]he issue to be resolved is not whether there might exist any . . . documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg*, 745 F.2d at 1485 (internal citations omitted).

Agency affidavits are the appropriate supporting materials to show that an adequate search has been conducted.  Affidavits should be "sufficiently detailed"; "[t]he standard, however, is not 'meticulous documentation [of] the details of an epic search.'" *Texas Independent Producers Legal Action Ass'n v. IRS*, 605 F. Supp. 538, 547 (D.D.C. 1984) (quoting *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982)).  "Rather, the agency need only provide affidavits explaining in 'reasonable detail' the scope and method of the search, in absence of countervailing evidence." *Texas Independent Producers*, 605 F. Supp. at 547 (quoting *Perry*). Moreover, any such agency affidavits "enjoy a presumption of good faith, which will withstand purely speculative claims about the existence and discoverability of other documents." *Ground Saucer Watch v. CIA*, 692 F. 2d 770, 771 (D.C. Cir. 1981).

The affidavit submitted by NARA's General Counsel demonstrates that NARA's search for responsive records easily meets this standard.  Upon receiving CREW's request, NARA contacted staff in various component offices that would have worked on issues related to

WAVES records, including the Office of the General Counsel, the Office of Records

Services–Washington, D.C., and the Office of Presidential Libraries.  *See* Stern Decl. ¶ 5.  Staff

in these offices searched both paper and electronic records (including e-mails, and word

processing files) for any documents responsive to CREW's request.  All files identified as

responsive to the request were forwarded to NARA's FOIA Officer for processing.  *Id.*  Because

the details of this search demonstrate that NARA "has conducted a search reasonably calculated

to uncover all relevant documents," *Weisberg*, 745 F.2d at 1485 (internal quotations omitted),

NARA is entitled to summary judgment on CREW's unsubstantiated allegation that the search

was insufficient.

## CONCLUSION

In light of the foregoing, NARA is entitled to summary judgment in this action.

<u>May 7, 2007</u>                                        Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

CARL J. NICHOLS
Deputy Assistant Attorney General

JEFFERY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Branch Director
D.C. Bar No. 418925

**OF COUNSEL**:
JASON R. BARON
D.C. Bar. No. 366663
Director of Litigation
Office of the General Counsel
National Archives and Records Administration
8601 Adelphi Road, Suite 3110
College Park, MD 20740
Telephone:      (301) 837-1499
Facsimile:      (301) 837-0293
E-mail:           jason.baron@nara.gov

**/s/ Michael P. Abate**
MICHAEL P. ABATE
IL Bar No. 6285597
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch

Mailing Address
P.O. Box 883
Washington, D.C. 20044

Delivery Address
20 Massachusetts Ave., N.W., Room 7302
Washington, D.C. 20001
Telephone:      (202) 616-8209
Facsimile:      (202) 616-8470
E-mail:           Michael.Abate@usdoj.gov

Attorneys for Defendant

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 7th day of May 2007, I caused the foregoing Defendant's

Answer to be served on plaintiff's counsel of record electronically by means of the Court's ECF

system.


/s/ Michael P. Abate

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civ. Action No. 07-0048 (RBW) |
| NATIONAL ARCHIVES AND RECORDS ADMINISTRATION, | ) ) ) | |
| Defendant. | ) ) | |

## DECLARATION OF GARY M. STERN

I, Gary M. Stern, hereby declare:

1. I am the General Counsel of the National Archives and Records Administration ("NARA"), a career appointment in the Senior Executive Service that I have held continuously since September 1998. In 2006, Archivist of the United States Allen Weinstein appointed me as the Chief Freedom of Information Act (FOIA) Officer for NARA, pursuant to our Agency's implementation of Executive Order 13392. Both in my capacity as General Counsel and Chief FOIA Officer, I provide oversight and guidance on matters related to the FOIA, including to NARA's designated FOIA staff. In my position as General Counsel, I am called upon on a daily basis to provide legal guidance to NARA and to the government at large on recordkeeping issues, including under the Federal Records Act and the Presidential Records Act.

2.   Prior to my appointment as General Counsel, between 1995 and 1998 I served at the Department of Energy in various capacities, including as Special Assistant to the General Counsel, Assistant General Counsel for contractor litigation, and Deputy Assistant General Counsel for information law.  Between 1994 and 1995, I served as a senior policy and research analyst for the U.S. Federal Advisory Committee on Human Radiation Experiments, where I provided legal advice on secrecy and classification issues.  In 1994, I served as legal consultant to the National Academy of Science's Committee on Declassification of Information for the Environmental Remediation and Related Programs of the Department of Energy.  Prior to my time with the federal government, I served as staff attorney for seven years at the Center of National Security Studies of the American Civil Liberties Union, where, among other matters, I worked on drafting the John F. Kennedy Assassination Records Collection Act and the Electronic Freedom of Information Act.  I graduated from Yale Law School in 1987, where I was editor-in-chief of the *Yale Journal of International Law.*  I am a member of the Bars of New York and the District of Columbia.

3.   I am familiar with the allegations in the present lawsuit, and make this declaration on the basis of personal knowledge and on information I have received in the performance of my official duties.  If called upon to do so I could testify competently as to the contents of this declaration.

### *NARA's Processing of CREW's FOIA Request*

4. On September 27, 2006, NARA received a FOIA request from counsel for plaintiff requesting documents and records in six categories of records:

(1) Any and all documents related to the request made by NARA to the United States Secret Service (USSS), that the Secret Service retain its own copies of the Worker and Visitor Entrance System (WAVES) records that it transferred to the White House;

(2) Any and all communications both internally and between NARA and any other government agency or government entity, referencing the practice of the USSS to erase copies of WAVES records that it transferred to the White House;

(3) Any and all documents referring or relating to a practice by the Secret Service of deleting records from its computer system;

(4) Any and all documents and records referring or relating to *Judicial Watch v. United States Secret Service,* Civ. Action No. 06-310 (D.D.C.);

(5) Any and all documents and records referring or relating to *Democratic National Committee v. United States Secret Service*, Civ. Action No. 06-842 (D.D.C.); and

(6) Any and all documents and records referring to *CREW v. United States Dep't of Homeland Security*, Civ. Action No. 06-883 (D.D.C.).

The request asked for expedited processing and a waiver of fees associated with the request. A copy of plaintiff's request is attached at Tab A.

5. In response to plaintiff's FOIA request, NARA's FOIA Officer carried out a search for responsive documents by contacting key staff in offices that would have worked on issues

3

relating to Secret Service WAVES records, including of myself and staff in the Office of General

Counsel, in components of the Office of Records Services—Washington, D.C., located at NARA

headquarters in College Park, Maryland, and in the Office of Presidential Libraries, in

Washington, D.C.  Individual NARA staff members were tasked with reviewing both their paper

files as well as any potentially relevant records in electronic form (including electronic mail and

word processing documents) that may have been stored in any account on desktop PCs or other

media.  The staff forwarded to NARA's FOIA Officer any and all documents identified.

6.   NARA granted plaintiff's request for expedition, as well as plaintiff's separate request

for fee waiver, in correspondence from Ramona Oliver, NARA's FOIA Officer in the Office of

General Counsel, dated October 20, 2006.  (A copy of this document is attached at Tab B.)   Four

days later, NARA substantively responded to plaintiff's FOIA request, in correspondence from

Ms. Oliver dated October 24, 2006, stating that a search of NARA's operational records located

336 pages of records responsive to plaintiff's request, excluding publicly available court filings.

(A copy of this document is attached at Tab C.)  NARA determined to release 31 pages in full

and 11 in part.  The 11 pages withheld in part and the remaining 294 pages withheld in full were

determined to be appropriate for withholding under FOIA Exemption 5, 5 U.S.C. 552(b)(5),

which allows for the withholding of information covered by privileges available in civil

litigation, including the deliberative process privilege and attorney work product privilege.

7.  By letter dated October 25, 2006, plaintiff appealed NARA's FOIA determinations

"insofar as CREW's request was denied."  The appeal was sent to the Deputy Archivist of the

United States, consistent with NARA regulations at 36 C.F.R. 1250.72.  A copy of plaintiff's

appeal letter is attached at Tab D.  Plaintiff also asked for expedition of NARA's response to the

FOIA appeal, which NARA separately granted in correspondence dated October 30, 2006, from

Matthew Olsen, FOIA Specialist.  (A copy of this document is attached at Tab E.)

8.   In correspondence dated November 28, 2006, Deputy Archivist Lewis Bellardo

responded to plaintiff's appeal on behalf of NARA, further granting the request in part and

denying it in part.  NARA informed plaintiff that an additional 50 pages of responsive records

had been located, of which 28 pages were being released in part.  With respect to the original set

of withholdings, NARA released an additional 11 pages in whole and 57 pages in part under

FOIA Exemption 5.  A copy of the Deputy Archivist's response to plaintiff's appeal is attached

at Tab F.

9.   Each document that NARA continues to withhold, of which there are 77 in total, is listed

in summary form in the *Vaughn* Index attached hereto at Tab G.  The documents will be referred

to in this Declaration by their corresponding number, appearing in the left-most column of the

*Vaughn* Index.  The 77 documents represent a total of 294 pages that continue to be withheld in

whole or in part.  All of these documents (and pages) were located as part of the searches

conducted initially and later, as set out above (¶¶ 5-8).[1]

---

[1]   The original count of 386 pages found to be responsive (336 found initially with an additional 50 found later),
actually represented 422 pages due to counting errors.  With the additional releases NARA is making with this
filing, the number of pages currently being withheld in whole or in part, as represented in the Vaughn index, totals
294

### *NARA's Justification for Continued Withholding of Documents Under FOIA Exemption 5*

10.  FOIA exemption 5, 5 U.S.C. 552(b)(5), protects against the disclosure of privileged

documents that are not ordinarily available to a party in litigation.  Principally, there are three

types of privileged documents or communications protected by this exemption:  attorney work

product, attorney-client, and the deliberative process privilege applicable to the government.

The exemption 5 privilege is intended to protect the decision-making processes of government

agencies from public scrutiny in order to enhance the quality of agency decisions.  In the present

case, the overwhelming majority of withheld documents are exempt from disclosure on two

grounds:  first, because they represent pre-decisional evaluations, opinions, and

recommendations on one or more matters related to the legal status of WAVES records under the

records laws and procedures for the retention and disposition of such records; and second,

because they represent communications either among government attorneys, or are the work

product of attorneys and those in-house staff from whom attorneys were seeking information,

either in connection with the current CREW litigation, or in anticipation of litigation about

WAVES records.  In all such instances, the documents comprise an exchange of ideas and

suggestions, recommendations and opinions, which have accompanied various decisions made

about WAVES records, including preliminary assessments by government attorneys and other

staff both inside and out of NARA.

11.  A large number of the documents at issue consist of e-mail, an especially candid

medium used by attorneys and others to communicate.  Disclosure of the contents of these e-mail

6

conversations would severely impede the efficient day to day workings of NARA attorneys and others on current issues, as staff would no longer feel free to discuss their ideas and render opinions, recommendations, or advice using this powerful communication tool. The chilling effect that public disclosure of such information at this time would have on the operations of government is significant: lack of candor will certainly have a negative impact on the ability of civil servants to have honest internal conversations essential to best practices in decision-making. Disclosure of memorialized preliminary evaluations and views would constrict NARA staff in expressing their views and recommendations regarding proposed responses. In my view, the quality of government decision-making is maintained at its highest if NARA and other agency staff are able to completely focus on expressing their views openly and honestly, without simultaneously being distracted out of a concern that those very same views might become publicly available in the near future.

12. *Segregability.* Each document that has been withheld was evaluated to determine if any information could be reasonably segregated and released. In a number of instances, NARA took additional actions to release segregable information, including, for example, the header information contained in otherwise withheld e-mail communications. The remaining documents determined to be withheld in whole or in part contained no further meaningful portions that could not be released without destroying the integrity of the document, or if release of certain facts would reveal the author's analysis and deliberations. Documents representing attorney work product are not, however, subject to the same strict segregability requirement.

13.   In the remainder of this declaration, I explain NARA's and the government's deliberative and attorney processes with respect to the status, maintenance, and disposition of WAVES records, by grouping the documents into four logically distinct categories.  Where applicable, I will also at greater length provide a separate justification regarding why most of the material is additionally covered by the attorney work product privilege.

**Category A:  The Government's Deliberations on the Disposition of WAVES Records**

14.   NARA has always understood WAVES records to be those records generated by the "Worker and Visitor Entrance System" created for the purpose of controlling and monitoring access to the White House Complex.  The U.S. Secret Service formally submitted to NARA's records appraisal division proposed Federal Records Act schedules for WAVES records in its custody in 1990 and 1993.  A revised schedule was resubmitted in 1996 and published in the *Federal Register*.  Under the Federal Records Act, 44 U.S.C. § 3303a, agencies routinely submit to NARA proposed agency records schedules in draft form, which are in turn reviewed by one or more NARA archivists who make the important appraisal recommendations regarding the temporary or permanent nature of the records contained therein (i.e., how long records shall be retained, in what format, etc.).  In the ordinary course of business, NARA expects that there will be many back and forth, deliberative, and pre-decisional communications among NARA archivists and an agency records officer and others at the submitting agency, and in some instances attorneys at NARA and the agency, before a schedule is in sufficiently final form to warrant a notice for public comment in the *Federal Register*, pursuant to 44 U.S.C. 3303a(a).  In this case, the proposed schedules submitted in the 1990s were withdrawn.

15.  With respect to the proposed WAVES records schedules, in the intervening years, and especially after 1995, from time to time NARA staff (including myself) were involved in discussions and meetings with representatives of the U.S. Secret Service, and counsel in one or more components of the Executive Office of the President and the Department of Justice, regarding the pending issues surrounding the legal status of WAVES records, including how USSS proposed to transfer possession of the records to the White House, and how USSS would proceed to manage and dispose of the records (or specific portions thereof) remaining in the custody of USSS. Documents 1 - 11 on the Vaughn index, responsive to either of plaintiff's requests (2) or (3) (*see* ¶ 4, *supra*), were all generated in connection with an ongoing, inter-agency deliberative process connected with reaching a final decision on what was a formerly pending WAVES records schedule at NARA.

16.  In the case of document 2, I am informed that it consists of the handwriting of NARA archivist Richard Marcus.  This document contains the contemporaneous notes of its author taken in connection with meetings held to work through issues concerning the legal status of WAVES records, and thus is both deliberative and pre-decisional in nature.

17.  NARA is making a discretionary release of a segregable factual portion of Document 3, which consists of a one page, undated cover memorandum entitled "U.S. Secret Service White House Division Workers and Visitors Entrance System (WAVES), Job No. N1-87-93-03," as well as an attached records schedule previously released to plaintiff.  Although undated, the document appears to have been drafted sometime shortly after receipt of the underlying revised draft records schedule in 1996.  In the still-withheld portion of the cover memorandum, it goes

on to discuss various legal and recordkeeping issues concerning WAVES records. In light of the

subsequent history of NARA deliberations on the issue of the status and disposition of WAVES

records, the document is clearly deliberative and pre-decisional in nature.

18. Documents 12 - 14 are responsive to plaintiff's categories (2) and/or (3) (*see* ¶ 4, *supra*),

but may be withheld because they are privileged as deliberative communications on matters of

law and policy under the records laws. At the end of the Clinton Administration, an Associate

Counsel to the President and counsel at the Secret Service together penned a Memorandum,

dated January 17, 2001, to myself, as NARA General Counsel, in which recommendations were

made regarding the disposition of what were termed "certain Presidential Records created by the

USSS," including, WAVES records. *See Vaughn* Index, Document 13. The memorandum

analyzes the status of the Clinton Administration WAVES and related records, including a

discussion of how USSS was currently treating and proposed to treat specific fields of data

contained within such records in terms of transfer to the White House and ultimate disposition of

the records. Document 12 consists of handwritten notes that I set down in connection with a

phone conversation held with Tom Dougherty of the U.S. Secret Service on December 8, 2000,

which was held prior to my receipt of Document 13 (dated Jan. 17, 2001), jointly authored by

Mr. Dougherty. As such, I consider my notes to have been both deliberative and pre-decisional

in connection with obtaining further background on the status of WAVES records. I also

consider my notes to be attorney work product, for the reasons stated *infra*, ¶ 23. Document 14

is my response, dated January 19, 2001, to the January 17 memo (Document 13), and reflected

my then understanding of how these records would be treated and how NARA intended to

proceed in working further with USSS. I consider my response to have been deliberative and pre-decisional on the issues discussed, in light of all the surrounding developments.

19. Documents 15, 15a, and 16 on the *Vaughn* Index, responsive to either of plaintiff's requests (2) or (3) (*see* ¶ 4, *supra*), date from March and April 2001, and reflect deliberations on legal and recordkeeping issues concerning the transfer and disposition of WAVES records. Document 15a constitutes written notes of a NARA archivist, created in response to the sequence of documents 13, 14 and 15, in which he expresses his questions, comments, and opinions, and thus is deliberative. Document 17 is a facsimile that I transmitted to another NARA employee forwarding copies of the deliberative communications contained in Documents 13 and 16, and in which I recounted a deliberative communication between myself and an Associate Counsel to the President.

20. On or about September 30, 2004, NARA received an e-mail from an Associate Counsel to the President, attaching a draft document providing informal views on one way to address the disposition of WAVES records, jointly authored by an Associate Counsel to the President and a Special Assistant to the Director of the U.S. Secret Service, dated July 29, 2004, with the title "Disposition of Certain Presidential Records Created by the USSS." *See Vaughn* Index, Documents 18 & 18a. Receipt of the July 29, 2004 memorandum in turn document led to an internal discussion among NARA staff regarding the proposal contained in the document, as well as a more technical discussion of how the U.S. Secret Service was purporting to manage the various fields contained in WAVES records. Documents 19 - 30 primarily consist of a series of e-mail exchanges, mostly internal to NARA counsel and staff, but also involving DOJ and the

Office of Counsel to the President, on various matters related to the retention of WAVES records, that are also responsive to paragraphs (2) or (3) of plaintiff's FOIA request (*see* ¶ 4, *supra*).  Document 26, from an unknown NARA author, contains a date contemporaneous with these e-mail exchanges, and similarly analyzes issues surrounding the transfer and disposition of WAVES records maintained by USSS.  Document 29 is also separately responsive to plaintiff's request (1), to the extent I described in this e-mail my conversation with USSS staff regarding issues related to the retention of WAVES records by USSS, as well as the legal advice I gave at the time with respect to then-current USSS practices.  All of the above-referenced documents in this paragraph are covered by the deliberative process privilege for the reasons noted above.

21.  Document 31 consists of six pages representing excerpts from a powerpoint presentation dated July 2005, with the first page including the wording, "USSS Presidential Protective Division" and "Presentation to the U.S. National Archives and Records Administration."  The document discusses in bullet point presentation format various issues concerning WAVES records and other access control records (ACR), including with respect to transfer and disposition.  The document also contains my handwritten annotations.  This document originated as part of a presentation given by the USSS to attorneys from NARA, the Department of Justice, and the Office of Counsel to the President, as well as an employee of the White House Office of Records Management, in connection with ongoing legal and policy deliberations regarding WAVES and ACR records.  The presentation itself contains an "Objectives" page that summarizes and makes recommendations regarding various policy options.  The document is responsive to plaintiff's requests (2) and (3) (*see* ¶ 4, *supra*).  In context, and especially given its

fragmentary nature, the document is both deliberative and pre-decisional, and otherwise constitutes attorney work product.

22. Documents 32 and 33 consist of handwritten notes of two NARA archivists, both of which reference the disposition and transfer of WAVES records. I am informed by staff that document 32 represents the contemporaneous notes of NARA archivist Maggie Hawkins taken during the powerpoint presentation represented by document 31, and that document 33 represents notes of NARA archivist Stephen Cooper from an undetermined date. These documents are responsive to plaintiff's request (3) (*see* ¶ 4, *supra*). In context, these notes are also deliberative and pre-decisional on the subject of the transfer and disposition of WAVES records.

23. ***Attorney Work Product Doctrine.*** Documents 5 - 25 and document 27 - 31 are separately covered by the attorney work product doctrine, which protects materials prepared by an attorney, or by a non-attorney at an attorney's direction, in reasonable anticipation of litigation or in connection with litigation counseling. Documents 5 - 30, with only the exception of Document 21, all were either authored by me or sent to me in my capacity as NARA General Counsel. (Although I was not cc'd on Document 21, the e-mail comprising the document was penned in direct response to my request – embodied in Document 19 – for views of NARA staff on the initial joint memorandum submitted by the White House and USSS on WAVES records.) At all times since the original submission of the WAVES records schedule for clearance, I believe NARA staff have fairly considered the likelihood of litigation over the record status of WAVES records to be high. This substantial likelihood of litigation over WAVES records arose

from the fact that many parties might wish to file FOIA requests seeking to obtain records

containing information on individuals who visited the White House. Because such FOIA

requests would involve the question of whether these records were "federal" or "presidential,"

and therefore possibly not subject to FOIA during the incumbent Administration, NARA

employees believed that the determination that WAVES records are presidential records would

likely become the subject of litigation. The reasonableness of the belief was confirmed by the

subsequent litigation filed by CREW and other parties, including in connection with the present

lawsuit. Finally, the attorney work product doctrine separately applies to the powerpoint

presentation described *supra*, ¶ 21, for the reasons there described.

### Category B:  Comments Made on Pending *Judicial Watch* Litigation

24.  On or about February 28, 2006, the public interest group Judicial Watch filed a FOIA

lawsuit against the U.S. Secret Service for access to, *inter alia*, WAVES records. As part of its

separate FOIA lawsuit here, plaintiff CREW has requested all records relating to the lawsuit

captioned *Judicial Watch v. U.S. Secret Service,* No. 06-310 (D.D.C.) (*see* category (4), *supra*

¶ 4). Documents 34 - 44, and 53, on the *Vaughn* Index were found to be responsive to plaintiff's

request, but have been withheld in part. The withheld portions of each of these documents

consist of candid discussions between myself and Justice Department attorneys regarding the

effect, if any, of the *Judicial Watch* lawsuit on the legal status of WAVES records for purposes

of the recordkeeping laws, as well as discussions among NARA staff regarding same. These

types of communications are of the type that would normally occur within an agency and

between agencies on subjects that relate to issues filed in litigation, and are deliberative in context.

25.    With the exception of documents 38 and 39, the remaining documents in Category B (documents 34-37, 40-44, and 53) also consist of attorney work product, either as direct communications between DOJ and NARA on a matter in litigation, or as communications responding to questions I directed to NARA staff again on matters related to the litigation.

### Category C:  Deliberations On WAVES Records Contemporaneous With Ongoing Litigation

26.    On May 9, 2006, Associate Counsel to the President Jennifer Brosnahan sent an e-mail addressed to me and others, requesting NARA's review of a draft nonpublic legal advice memorandum from the Department of Justice's Office of Legal Counsel ("OLC") on WAVES records, along with a draft Memorandum of Understanding ("MOU") between the White House Office of Records Management and the U.S. Secret Service on the status and handling of WAVES and ACR records.  *See Vaughn* Index, Document 45.  Given the sensitivity of the draft documents in question and at least one pending FOIA lawsuit for WAVES records, it was important that the documents be fully vetted by NARA as well as other agencies.  Documents 46 - 52 consist of the e-mail communications that transpired, comprising a series of candid comments by lawyers and other staff representing NARA, the Secret Service, the Office of Counsel to the President, and the Department of Justice on specific matters raised in the draft documents, many of which were shared on an inter-agency basis.  The kinds of deliberations involved in these documents on matters of both substance and particular wording are typical of

what takes place every day at the highest levels of the government. They constitute pre-decisional opinions of attorneys and others. They also consist of exchanges of views on legal issues within the scope of the attorney work product privilege, especially given that the *Judicial Watch* lawsuit already was a matter of public record. All of the documents described in this paragraph are responsive to either of plaintiff's requests (2) and/or (3) (*see* ¶ 4, *supra*),

27. Document 54 is an e-mail that I sent to NARA staff forwarding a FOIA request for WAVES schedules that NARA received from the Washington Post while litigation relating to WAVES records was ongoing. The document is responsive to plaintiff's category (2) and/or (3) (*see* ¶ 4, *supra*). The portions withheld discuss NARA's proposed response to the FOIA request, and also include an e-mail thread between myself and NARA staff commenting on recordkeeping issues surrounding USSS WAVES records as they related to the draft legal opinion and MOU. The FOIA request portion of the document has been disclosed.

28. Document 55 is a copy of a nonpublic legal advice memorandum from the Department of Justice's Office of Legal Counsel, dated May 11, 2006, containing legal discussion regarding WAVES records. That document was issued in connection with OLC's advisory function of providing legal advice to the Executive Branch. Neither this document nor the advice and analysis contained therein have been circulated or revealed outside the Executive Branch. To the contrary, it has been shared only with government officials and staff working on these issues and closely held by them in strict confidence. In order to ensure that legal arguments and theories may be explored candidly, effectively and in writing, it is essential that legal advice of this sort

16

not be inhibited by concerns about public disclosure. Because this document and its drafts (*see Vaughn* Index, documents 45, 50), contain legal analysis authored by Department of Justice attorneys in their capacity as advisers to the Executive Branch, these documents are protected under the deliberative process and attorney-client privileges, as well as by the work product doctrine. Moreover, documents 51 and 52, because they constitute communications between a DOJ attorney and myself concerning this legal advice, are also shielded by the attorney-client privilege.

29. Document 56 consists of a further request for agency recommendations and opinions from an Associate Counsel to the President, in an e-mail dated June 13, 2006, regarding matters related to the logistics of transferring WAVES records from USSS to the White House Complex and to NARA. Document 56 and responses to it embodied in documents 57 - 60 consist of a set of policy options, set out with opinions and recommendations of NARA and USSS staff. These documents, responsive to plaintiff's categories (2) and/or (3) (*see* ¶ 4, *supra*), all consist of pre-decisional deliberations on the logistics of handling WAVES records, especially in light of pending litigation regarding access issues to such records. The authors of the documents were also very much aware of their obligations to preserve records that are subject to pending litigation, and to that extent the documents represent attorney work product in that they purport to discuss the government's evidentiary obligations to one or more courts.

**Category D:  Communications between DOJ Federal Programs Branch and NARA counsel
on the substance of Court filings in related CREW litigation**

30.  Documents 61 - 75 are litigation-related documents responsive to category 6 of

plaintiff's FOIA request (*see* ¶ 4, *supra*).  With the exception of document 63, this category of

documents solely consists of e-mail communications authored either by Justice Department

counsel representing the Department of Homeland Security in a related lawsuit filed by plaintiff

CREW, or by NARA counsel responding to Justice Department requests.  Many of these e-mails

also attach draft briefs for NARA to review and comment upon.  Document 63 is a related e-mail

drafted by a NARA archivist responding to NARA counsel's request for comments on one or

more positions taken by the Justice Department in litigation.  This category of material

represents core attorney work product, containing the opinions and recommendations of counsel

at the Justice Department and at NARA on the drafting of filings with the Court in a related

lawsuit involving issues related to WAVES records.  The matters discussed in these documents

are also covered by the deliberative process privilege, which protects candid exchanges of

opinion – here, regarding what legal arguments the government should make before the Court –

in a context that is clearly pre-decisional.  Release of documents of this type would severely

harm the ability of NARA counsel to work with the Justice Department in being able to provide

their candid views on matters in litigation involving records issues generally.

***Summary***

31.  NARA has been consulted throughout the process that resulted in the determination that

WAVES records are covered under the Presidential Records Act.  It should be stated, however,

that, while NARA has authority to determine how federal records are disposed of through the records schedule and disposition process set out in Chapter 33 of Title 44, and while NARA has considerable expertise in administering to presidential records pursuant to Chapter 22 of Title 44 once presidential records come into the legal custody of this agency, NARA has no formal records management authority under the Presidential Records Act over the presidential records of the incumbent President, and is therefore not the final decision-maker regarding whether any particular set of records is covered within the scope of the Presidential Records Act. *See* 44 U.S.C. 2203(a); *Armstrong v. Bush*, 924 F.2d 282, 290 (D.C. Cir.1991). This legal determination is a matter for the incumbent President to make, in consultation with the Department of Justice and NARA, as deemed appropriate, just as the process played out in this instance. It is my belief that whatever candid discussions took place within and by NARA concerning related issues of management and disposition of WAVES records are properly considered deliberative and pre-decisional. I also believe that institutional harm to NARA and the government would ensue if the staff of this agency acted on the belief that every such conversation memorialized in an e-mail communication or written memorandum would presumptively and contemporaneously be open and available for public scrutiny. This is especially true with respect to complicated matters, such as is the case of the presidential record status of WAVES records.

I declare under penalty of perjury that the foregoing is true and correct.

GARY M. STERN

Date: May 7, 2007

19

# TAB "A"

# Plaintiff's Original FOIA Request

# CREW | citizens for responsibility and ethics in washington

September 27, 2006

FOIA Officer
National Archives and Records Administration
NGC-Room 3110
8601 Adelphi Road
College Park, MD 20740

By FAX to 301 837- 0293

Re: FOIA Request

```
NGC Log No: NGC 06 241
Date Received: 9-27-2006
Date Due: 10- -2006
Assigned to:
```

Dear Sir/Madam:

Citizens for Responsibility and Ethics in Washington ("CREW") makes this request for records, regardless of format, medium, or physical characteristics, and including electronic records and information, audiotapes, videotapes, and photographs, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

Specifically, CREW seeks any and all documents and records from any office within the National Archives and Records Administration, including its Office of General Counsel, its field offices, or regional offices described in the following categories:

1.  Any and all documents related to the request made by the National Archives and Records Administration ("NARA"), to the United States Secret Service, that the Secret Service retain its own copies of the Worker and Visitor Entrance System ("WAVES") records that it transferred to the White House.[1]

2.  Any and all communications both internally and between the National Archives and Records Administration and any other government agency or government entity, referencing the practice of the United States Secret Service to erase copies of WAVES records that it transferred to the White House.

3.  Any and all documents referring or relating to a practice by the Secret Service of deleting records from its computer system.

4.  Any and all documents and records referring or relating to Judicial Watch v. United

---

[1] In order to assist you in processing this request, for your convenience and to place this request in context, attached is a copy of the declaration of Kathy J. Lyerly. Paragraph 11 of that declaration refers to a request made by NARA. This FOIA request is, of course, not limited to the material described in that declaration; however, the material described certainly is a part of this request.

States Secret Service, Civ. Action No. 06-310 (United States District Court for the District of Columbia).

5.  Any and all documents and records referring or relating to Democratic National Committee v. United States Secret Service, Civ. Action No. 06-842 (United States District Court for the District of Columbia).

6.  Any and all documents and records referring or relating to Citizens for Responsibility and Ethics In Washington v. United States Department of Homeland Security, Civ. Action No. 06-883 (United States District Court for the District of Columbia).

Please search for responsive records regardless of format, medium, or physical characteristics. We seek records of any kind, including electronic records, audiotapes, videotapes, photographs, and back-up tapes. Our request includes any telephone messages, voice mail messages, daily agenda and calendars, information about scheduled meetings and/or discussions, whether in-person or over the telephone, agendas for those meetings and/or discussions, participants included in those meetings and/or discussions, minutes of any such meetings and/or discussions, the topics discussed at those meetings and/or discussions, e-mail regarding meetings and/or discussions, e-mail or facsimiles sent as a result of those meetings and/or discussions, and transcripts and notes of any such meetings and/or discussions to the extent they relate to the categories of requested documents.

If it is your position that any portion of the requested records is exempt from disclosure, CREW requests that you provide an index of those documents as required under Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1972). As you are aware, a Vaughn index must describe each document claimed as exempt with sufficient specificity "to permit a reasoned judgment as to whether the material is actually exempt under FOIA." Founding Church of Scientology v. Bell, 603 F.2d 945, 959 (D.C. Cir. 1979). Moreover, the Vaughn index must "describe each document or portion thereof withheld, and for each withholding it must discuss the consequences of supplying the sought-after-information." King v. United States Dep't of Justice, 830 F.2d 210, 223-24 (D.C. Cir. 1987) (emphasis added). Further, "the withholding agency must supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply.'" Id. at 224, citing Mead Data Central v. United States Dep't of the Air Force, 566 F.2d 242, 251 (D.C. Cir. 1977).

In the event that some portions of the requested records are properly exempt from disclosure, please disclose any reasonably segregable non-exempt portions of the requested records. See 5 U.S.C. §552(b) ("Any reasonably segregable portion of a records shall be provided to any person requesting such record after deletion of the portions which are exempt ..."); see also Schiller v. Nat'l Labor Relations Bd., 964 F.2d 1205, 1209 (D.C. Cir. 1992). If it is your position that a document contains non-exempt segments, but that those non-exempt segments are so dispersed throughout the document as to make segregation impossible,

2

please state what portion of the document is non-exempt and how the material is dispersed throughout the documents. Mead Data Central, 566 F.2d at 261. Claims of non-segregability must be made with the same degree of detail as required for claims of exemption in a Vaughn index. If a request is denied in whole, please state specifically that it is not reasonable to segregate portions of the record for release.

### Fee Waiver Request

In accordance with 5 U.S.C. §552(a)(4)(A)(iii) and agency regulations, CREW requests a waiver of fees associated with processing this request for records. The subject of this request concerns the record retention operations of the federal government and the disclosures will likely contribute to a better understanding of relevant government procedures by CREW and the general public in a significant way. Moreover, the request is primarily and fundamentally for non-commercial purposes. 5 U.S.C. §552(a)(4)(A)(iii). See, e.g., McClellan Ecological v Carlucci, 835 F.2d 1282, 1285 (9th Cir. 1987). Specifically, these records are likely to contribute to the public's understanding, and inform the public, concerning the recordkeeping practices of the Secret Service as they relate to White House visitor logs.

CREW is a non-profit corporation, organized under section 501(c)(3) of the Internal Revenue code. CREW is committed to protecting the right of citizens to be aware of the activities of government officials and to ensuring the integrity of those officials. CREW is dedicated to empowering citizens to have an influential voice in government decisions and in the government decision-making process. The release of information garnered through this request is not in CREW's financial interest. CREW will analyze the information responsive to this request, and will likely share its analysis with the public, either through memoranda, reports or press releases. CREW has an established record of carrying out these types of activities, as evidenced through its website, www.citizensforethics.org. Currently, the CREW website contains links to thousands of pages of documents acquired from FOIA requests. See http://citizensforethics.org/activities/foia.php. Visitors to CREW's website can peruse the FOIA request letters, the responses from government agencies, and a growing number of documents responding to FOIA requests. CREW's virtual reading room provides around-the-clock access to anyone willing to learn about the government activities that were the focus of CREW's FOIA requests. The CREW website also includes documents relating to CREW's FOIA litigation, Internal Revenue Service complaints, and Federal Election Commission complaints.

Under these circumstances, CREW satisfies fully the criteria for a fee waiver.

### Expedited Processing Request and Certification

CREW requests that this FOIA request be processed on an expedited basis. The subject matter of the request is of widespread and exceptional media interest, as is demonstrated in the following recent articles: Sharon Theimer, Associated Press, White House Logs Don't Show All the Visits by 2 GOP activists, September 22, 2006; John Solomon, Associated Press, Papers

3

_Show Bush Allies' Inside Access_, September 21, 2006; Michael Forsythe and Catherine Dodge, Bloomberg News, _Lobbyist Access to White House Revealed in Secret Service Logs_, September 21, 2006.

The information sought through this FOIA request involves possible questions about the government's integrity that may affect public confidence. The Secret Service, which is a component of the Department of Homeland Security, has indicated that it intentionally destroys WAVES records of visitors to the White House after it makes copies of those records for the White House. The National Archives and Records Administration is responsible for establishing policies and procedures for maintaining United States Government records, and it assists federal agencies in records management matters. According to declarations submitted in litigation, the Secret Service has stated that NARA was aware of the Secret Service practice of document destruction regarding its WAVES records. Expedited processing of this request will allow facts surrounding these important record retention policies to come to light.

By my signature affixed to this letter, I hereby certify that the foregoing statements contained in the preceding paragraph are true and correct to the best of my knowledge.

### Conclusion

Please respond to this request in writing on an expedited basis, but in any event, no later than within 20 days as requested under 5 U.S.C. §552(a)(6)(A)(I). If all of the requested documents are not available within that time period, CREW requests that you provide it with all requested documents or portions of documents that are available within that time period.

If you have any questions about this request or foresee problems in releasing fully the requested records, please call me as soon as possible. I can be reached at (202) 408-5565. Also, if CREW's request for a fee waiver is not granted in full, please contact me immediately upon making such a determination. Please send the requested documents to Sharon Y. Eubanks, Citizens for Responsibility and Ethics in Washington, 1400 Eye Street, N.W., Suite 450, Washington, D.C. 20005.

Thank you for your attention to this matter.

Sincerely,

Sharon Y. Eubanks
Senior Counsel
Citizens for Responsibility and Ethics in Washington

Enclosure: Declaration of Kathy J. Lyerly, U.S. Secret Service

4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JUDICIAL WATCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 06-310 (JGP) |
| | ) | |
| UNITED STATES SECRET SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

DECLARATION OF KATHY J. LYERLY
SPECIAL AGENT IN CHARGE, LIAISON DIVISION AND
FREEDOM OF INFORMATION AND PRIVACY ACTS OFFICER,
UNITED STATES SECRET SERVICE

I, Kathy J. Lyerly, hereby make the following declaration:

1.      I am the Special Agent in Charge of the Liaison Division and the Freedom of

Information and Privacy Acts (FOI/PA) Officer for the United States Secret Service (hereinafter

Secret Service), which is a component of the Department of Homeland Security (DHS). I have

been the Secret Service FOI/PA Officer since December 28, 2003, and have been employed with

the Secret Service as a Special Agent (GS-1811) since October 26, 1987.

2.      DHS regulations, Title 6, Code of Federal Regulations, Section 5.4, and Appendix

A, II(I)(3), vest authority in the FOI/PA Officer, Secret Service, to make initial determinations as

to whether to grant Freedom of Information Act (FOIA), 5 U.S.C. § 552, requests for Secret

Service records (68 FR 4056, 4058, and 4069).

3.      As the Secret Service's FOI/PA Officer, I am familiar with plaintiff's FOIA

request to the Secret Service. Under my direction, the Secret Service conducted a search for

documents responsive to plaintiff's request. That search produced two records, both of which

were released in full without redactions or claims of exemptions. A chronological description of

the correspondence in this matter and the processing of plaintiff's FOIA request is set forth

below.

      4.     By letter to the Secret Service dated January 20, 2006, and received January 23,

2006, plaintiff submitted a FOIA request for records "concerning, relating to, or reflecting . . .

[a]ll White House visitor logs from January 1, 2001 to present that reflect the entries and exit(s)

of lobbyist Jack Abramoff from the White House."

      5.     By letter dated February 2, 2006, I acknowledged receipt of plaintiff's FOIA

request and advised plaintiff that a search for records responsive to the request was being

conducted.

      6.     There are two interrelated systems – collectively termed the White House Access

Control System – for controlling and monitoring access to the White House Complex: the

Worker and Visitor Entrance System ("WAVES") and the Access Control Records System

("ACR").

      7.     ACR records consist of records generated when a pass holder, worker, or visitor

swipes his or her permanent or temporary pass over one of the electronic pass readers located at

entrances to and exits from the White House Complex. ACR records include information such

as the pass holder's name and badge number, the time and date of the swipe, and the post at

which the swipe was recorded.

      8.     WAVES records consist of records generated when information is submitted to

2

the Secret Service about workers and visitors whose business requires their presence at the White House Complex. WAVES records include information additional to that in the ACR records.

9.      In response to plaintiff's request, the FOI/PA Office conducted a search for responsive information. This search was conducted under the direction of the Secret Service's Presidential Protective Division by personnel who conduct FOIA searches as part of their regular responsibilities. The Secret Service searched both the ACR records and the WAVES records for any and all records responsive to plaintiff's FOIA request.

10.      It has been the longstanding practice of the Secret Service to transfer WAVES records on CD-ROM to the White House every 30 to 60 days. Except as noted in paragraph 11 below, once the Secret Service transferred the WAVES records, the Secret Service ensured that those records were erased from its computer system.

11.      In October 2004, at the request of the National Archives and Records Administration, the Secret Service began temporarily retaining its own copy of the WAVES records that it transferred to the White House. As such, the Secret Service has in its possession WAVES records dating back only to October 2004.

12.      ACR records are stored in a searchable database. Records are searchable by visitor name. In this case, the Secret Service searched the ACR database by searching for records generated from January 1, 2001 to the date of the search that had the name "Jack Abramoff" in the visitor field. The Secret Service does not keep ACR records anywhere other than in this searchable database.

13.      WAVES records are stored in a searchable form on CD-ROMs. Records are

3

searchable by visitor name. In this case, the Secret Service explored the WAVES CD-ROMs by searching for records generated from October 2004 to the date of the search that had the name "Abramoff" in the visitor field. As noted in paragraph 11, the Secret Service only has in its possession WAVES records dating from October 2004.

14.    The Secret Service's search of the ACR records produced two pages of records responsive to plaintiff's FOIA request. These records show that Mr. Abramoff visited the White House Complex on March 6, 2001 and January 20, 2004. The two pages of ACR records responsive to plaintiff's FOIA request have slightly different formats because the ACR system changed somewhat between 2001 and 2004.

15.    The Secret Service's search of the WAVES records maintained by the Secret Service produced no WAVES records responsive to plaintiff's FOIA request.

16.    There are a variety of reasons why ACR records are not comprehensive as to entries and exits. For example, guests who visit the complex in a prearranged group for an official function or reception may not appear on the ACR records. In some of those instances visitors are granted entry without going through the turnstiles.

17.    No other documents responsive to plaintiff's FOIA request were found in the search.

18.    No document located in response to plaintiff's request has been withheld in part or in whole.

19.    Pursuant to the terms of a joint stipulation and agreed order, on May 10, 2006, defendant produced, without redactions or claims of exemptions, all documents located in response to plaintiff's January 20, 2006 FOIA request.

4

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing

statements are true and correct to the best of my knowledge and belief.

_5/16/06_
Date

_Kathy J. Lyerly_
Kathy J. Lyerly
Special Agent in Charge, Liaison Division and
Freedom of Information and Privacy Acts Officer
United States Secret Service

5

# TAB "B"

# NARA's Response to Plaintiff's Original Request for Expedition and Fee Waiver

*8601 Adelphi Road*
*College Park, Maryland  20740-6001*

October 20, 2006

Sharon Y. Eubanks
Senior Counsel
Citizens for Responsibility and Ethics in Washington
1400 Eye Street, NW, Suite 450
Washington, DC 20005

<u>Acknowledgement:  Freedom of Information Act Request NGC06-241</u>

Dear Ms. Eubanks:

This is in acknowledgement of your Freedom of Information Act (FOIA) request of September 27, 2006, for records, regardless of format, medium or physical characteristics, and including electronic records and information, audiotapes, videotapes, and photographs, pursuant to the FOIA.  Specifically, CREW seeks any and all documents and records from any office within the National Archives and Records Administration (NARA) described in the following categories:

    1.  Any and all documents related to requests made by NARA, to the United States Secret Service, that the Secret Service retain its own copies of the Workers and Visitors Entrance System ("WAVES") records that it transferred to the White House.

    2.  Any and all communications both internally and between NARA and any other government agency or government entity, referencing the practice of the United States Secret Service to erase copies of WAVES records that it transferred to the White House.

    3.  Any and all documents referring or relating to a practice by the Secret Service of deleting records from its computer system.

    4.  Any and all documents and records referring or relating to *Judicial Watch v. United States Secret Service,* Civ. Action. No. 06-310 (United States District Court for the District of Columbia).

    5.  Any and all documents and records referring or relating to *Democratic National Committee v. Unites States Secret Service*, Civ. Action. No. 06-842 (United States District Court for the District of Columbia).

    6.  Any and all documents and records referring or relating to *Citizens for Responsibility and Ethics in Washington v. United States Department of Homeland Security*, Civ. Action. No. 06-883 (United States District Court for the District of Columbia).

In your request you ask for both expedited processing and a waiver of any fees associated with processing.



You indicate that the basis of your request for expedited processing is that the requested information is of widespread and exceptional news interest. You also indicate that the information sought through this FOIA request involves possible questions about the government's integrity that may affect public confidence. We considered your request pursuant to guidelines established in our implementing regulations and have decided to grant your request for expedited processing. As authorized in your initial request, we will complete processing your request no later than within 20 working days as required under 5 USC 5525(a)(6)(A)(I). Accordingly, anticipate providing you with a response on or before October 25, 2006.

You also asked for a waiver of any fees associated with the processing of this request. In accordance with the provisions of the FOIA and NARA's implementing regulations, 36 C.F.R. § 1250.58, fee waivers are provided "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations and activities of the government and is not primarily in the commercial interest of the requester." We have evaluated your submission and determined that your organization does qualify for a fee waiver in this instance.

Please feel free to contact me if you have any questions or concerns. I can be reached at 301-837-2024 or by e-mail at ramona.oliver@nara.gov.

Sincerely,

RAMONA BRANCH OLIVER
NARA FOIA Officer
Office of General Counsel

COPY

# TAB "C"

# NARA's Response to Plaintiff's Original FOIA Request



# National Archives and Records Administration

*8601 Adelphi Road*
*College Park, Maryland 20740-6001*

October 24, 2006

**VIA FAX and First Class Mail**
Sharon Y. Eubanks
Senior Counsel
Citizens for Responsibility and Ethics in Washington
1400 Eye Street, NW, Suite 450
Washington, DC 20005

Re:  Freedom of Information Act Request NGC06-241

Dear Ms. Eubanks:

This is in response to your Freedom of Information Act (FOIA) request of September 27, 2006, for records, regardless of format, medium or physical characteristics, and including electronic records and information, audiotapes, videotapes, and photographs, pursuant to the FOIA. Specifically, CREW seeks any and all documents and records from any office within the National Archives and Records Administration (NARA) described in the following categories:

     1. Any and all documents related to requests made by NARA, to the United States Secret Service, that the Secret Service retain its own copies of the Workers and Visitors Entrance System ("WAVES") records that it transferred to the White House.

     2. Any and all communications both internally and between NARA and any other government agency or government entity, referencing the practice of the United States Secret Service to erase copies of WAVES records that it transferred to the White House.

     3. Any and all documents referring or relating to a practice by the Secret Service of deleting records from its computer system.

     4. Any and all documents and records referring or relating to *Judicial Watch v. United States Secret Service*, Civ. Action. No. 06-310 (United States District Court for the District of Columbia).

     5. Any and all documents and records referring or relating to *Democratic National Committee v. Unites States Secret Service*, Civ. Action. No. 06-842 (United States District Court for the District of Columbia).

     6. Any and all documents and records referring or relating to *Citizens for Responsibility and Ethics in Washington v. United States Department of Homeland Security*, Civ. Action. No. 06-883 (United States District Court for the District of Columbia).

Your request was received in this office on September 27, 2006.

We searched NARA's operational records and located 336 pages of records that are responsive to your request. We have excluded from this request copies of publicly available court filings in the above referenced litigation. We have determined that 31 pages are appropriate for disclosure in full. We are also releasing 11 pages in part with redactions pursuant to 5 USC 552(b)(5), which pertains to certain inter- and intra-agency communications protected by the deliberative process privilege. We are enclosing copies of the released documents. We are withholding 118 pages in full pursuant to 5 USC 552(b)(5), for information that is protected by the deliberative process privilege. The remaining 176 are being withheld in full pursuant to 5 USC 552(b)(5), for information that is protected from disclosure by both the deliberative process privilege and the attorney-work product privilege.

You may appeal this denial by writing to the Deputy Archivist (ND), National Archives and Records Administration, College Park, MD 20740 within 35 calendar days of this letter. Your appeal should explain why you think the withheld information should be disclosed. Both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

RAMONA BRANCH OLIVER
NARA FOIA Officer
Office of General Counsel

Enclosure

# TAB "D"

# Plaintiff's FOIA Appeal

# CREW | citizens for responsibility and ethics in washington



October 25, 2006

BY FAX to (301) 837-3218 and First-Class Mail

Deputy Archivist (ND)
National Archives and Records Administration
8601 Adelphi Road
College Park, Maryland 20740

Re: <u>Freedom of Information Act Appeal</u>

Dear Deputy Archivist:

By letter dated October 24, 2006, the National Archives and Records Administration ("NARA") responded to the September 27, 2006 Freedom of Information Act ("FOIA") request of Citizens for Responsibility and Ethics in Washington ("CREW"). Pursuant to 36 C.F.R. §1250.72, CREW hereby appeals that determination insofar as CREW's request was denied. A copy of CREW's initial request and the agency denial letter are enclosed.

In its FOIA request, CREW sought, generally, documents related to a request made by NARA to the United States Secret Service. According to papers filed by the government in federal district court, NARA requested that the Secret Service cease its destruction of visitor records that it transferred to the White House. As attested to in a declaration of Secret Service Special Agent Kathy J. Lyerly, signed under penalty of perjury and submitted to the United States District Court for the District of Columbia in at least two cases, NARA requested that the Secret Service retain copies of these transferred records and that it retain copies of WAVES records that it transferred to the White House. The responsive documents provided by NARA did not appear to include any communications with the Secret Service. In a follow-up conversation with Ramona Branch Oliver, NARA's FOIA and Privacy Act Officer, NARA refused to identify whether the agency has withheld any records that are responsive to this portion of CREW's request. Moreover, NARA did not provide any documents that address the issue of document destruction.

NARA's denial letter states that NARA's "operational records" were searched, and that 336 pages of responsive records were located. Without consulting CREW, NARA excluded from production copies of publicly available court filings. CREW, however, seeks production of any and all of those records as well, to the extent that they contain any marginalia. There is no exemption that has been identified, and these documents should be produced.

Among the documents disclosed, NARA has redacted 11 pages pursuant to Exemption 5, 5 U.S.C. §552(b)(5). In addition, NARA is withholding 118 pages in full under the same

exemption, and 176 documents under Exemption 5 as attorney work. NARA has offered no explanation or basis for its assertion of Exemption 5, except to say that the documents contain information protected by the deliberative process privilege.

Exemption 5 protects information about an agency's decision-making process. Here, NARA has not identified any decision it was making to which these documents pertain. In addition, although advice and recommendations involving a "deliberative process" on legal and policy matters may be withheld, the segregable, factual portions of documents must be disclosed. No basis under Exemption 5 has been offered for NARA's determination to withhold, completely, 294 pages without any disclosure of factual material contained in those documents. Nor has NARA stated that there are no segregable non-exempt portions of these documents that can be disclosed. Moreover, Exemption 5 would not be available to protect from disclosure documents that reflect how NARA has exercised its statutory record keeping obligations with respect to the Secret Service – the very documents CREW seeks here. It is the agency's burden to establish what deliberative process is involved, and the role played by the documents at issue in the course of that process. *See* <u>Coastal States Gas Corp. v. DOE</u>, 617 F.2d 854 (D.C. Cir. 1980). NARA has not met that burden here.

We also challenge NARA's withholdings under the attorney work product doctrine. The attorney work product doctrine protects documents and other memoranda prepared by an attorney in contemplation of litigation, including his or her mental impressions, conclusions, opinions, or legal theories. Fed. R. Civ. P. 26(b)(3). It ordinarily does not attach until some articulable claim likely to lead to litigation has arisen. NARA has not identified such a claim here.

Given the limited disclosure made by NARA, NARA's assertion that it has searched its "operational records" raises questions regarding the adequacy of the search, and CREW appeals on that basis, as well. CREW's request was not limited to a particular class of records; rather, it was directed to all documents and records from any office within NARA. It would appear that NARA's search, although accomplished in an expedited manner, was inadequate.

Accordingly, because NARA has failed to justify its withholdings under Exemption 5, and because the search for documents that it performed was not adequate to locate the documents requested by CREW under FOIA, CREW seeks reversal of NARA's determination to redact and withhold documents. CREW also requests that the agency conduct an adequate search or demonstrate more specifically how the search it has already conducted meets the requirements of the FOIA.

Finally, in view of the fact that NARA has granted CREW's request for expedition, we request that NARA also expedite its resolution of this appeal. As the courts have recognized, expedition under the FOIA requires agencies to process FOIA requests more quickly than they would process non-expedited requests. *See, e.g.,* Electronic Privacy Information Center v. Dep't of Justice, 416 F. Supp.2d 30, 39 (D.D.C. 2006).

Sincerely,

*Sharon Y. Eubanks*

Sharon Y. Eubanks
Senior Counsel

Enclosures

# TAB "E"

# NARA's Reponse to Plaintiff's Request for Expedition of the Appeal

# National Archives and Records Administration

8601 Adelphi Road
College Park, Maryland 20740-6001

October 30, 2006

Via Fax (202-588-5020) and Regular Mail
Sharon Y. Eubanks
Senior Counsel
Citizens for Responsibility and Ethics in Washington
1400 Eye Street, NW, Suite 450
Washington, DC 20005

Re: Freedom of Information Act Appeal NGC07-001A

Dear Ms. Eubanks:

This is in partial response to your Freedom of Information Act (FOIA) appeal of October 25, 2006, received in this office on that date.

Your original FOIA request of September 27, 2006, asked for documents in six categories. The first three categories involved (i) any and all documents relating to requests made by NARA to the U.S. Secret Service regarding the retention of Workers and Visitors Entrance System ("WAVES") records, (ii) as communications both internal within NARA and between NARA and other government agencies or entities referencing the practice of the Secret Service to erase copies of WAVES records, and (iii) any documents referring or relating to the practice of the Secret Service deleting records from its computer system. The remaining three categories of documents and records requested relate to three separate named lawsuits involving WAVES records.

In response to your initial request, NARA responded in a letter from Ramona Oliver, NARA's FOIA and Privacy Act Officer, dated October 24, 2006, in which we stated that we located 336 pages of responsive records. Of these, 31 pages were provided to CREW in full, and an additional 11 were provided in part with redactions made pursuant to 5 U.S.C. 552(b)(5). An additional 294 pages in total were withheld under (b)(5), either solely under the deliberative process privilege (118 pages), or under both the deliberative process and attorney work-product privileges (176 pages). You have appealed all of these withholdings.

You also requested expedited processing, based on our previous grant of expedition with the original FOIA. This partial response is our answer to that request.

NARA regulations state that a requestor must be "primarily engaged in disseminating information" in order to qualify for expedited processing. 36 C.F.R. 1250.28(a)(3). Your organization meets this threshold. Additionally, consistent with our expedition of your original request under the relevant standard set out in section 1250.28(a)(3), we are hereby granting your request for expedition of your FOIA appeal.

The Deputy Archivist will review the material withheld under 5 U.S.C. 552(b)(5), and will respond via fax and regular mail upon completion of his review.

Should you have any general questions on this FOIA appeal and its handling, feel free to contact me at (301) 837-2025.

Sincerely,

MATTHEW J. OLSEN
FOIA Specialist
Office of General Counsel

# TAB "F"

# NARA's Reponse to Plaintiff's FOIA Appeal

# National Archives and Records Administration

*8601 Adelphi Road*
*College Park, Maryland  20740-6001*

NOV **2 8** 2006

Via Fax (202.588.5020) and Regular Mail
Sharon Y. Eubanks
Senior Counsel
Citizens for Responsibility and Ethics in Washington
1400 Eye Street, N.W. Suite 450
Washington, D.C. 20005

Re:  Freedom of Information Act Appeal NGC07-001A

Dear Ms. Eubanks:

This is in further reply to your Freedom of Information Act appeal letter dated October 25, 2006, and received in this Office on that date, on behalf of Citizens for Responsibility and Ethics in Washington (CREW).   NARA previously granted expedition of your appeal by letter dated October 31, 2006.

Your original FOIA request of September 27, 2006, asked for documents in six categories.  The first three categories involved (i) any and all documents relating to requests made by NARA to the U.S. Secret Service regarding the retention of Workers and Visitors Entrance System ("WAVES") records, (ii) as communications both internal within NARA and between NARA and other government agencies or entities referencing the practice of the Secret Service to erase copies of WAVES records, and (iii) any documents referring or relating to the practice of the Secret Service deleting records from its computer system.  The remaining three categories of documents and records requested relate to three separate named lawsuits involving WAVES records.

In response to your initial request, NARA responded in a letter from Ramona Oliver, NARA's FOIA and Privacy Act Officer, dated October 24, 2006, in which we stated that we located 336 pages of responsive records.  Of these, 31 pages were provided to CREW in full, and an additional 11 were provided in part with redactions made pursuant to 5 U.S.C. 552(b)(5).  An additional 294 pages in total were withheld under (b)(5), either solely under the deliberative process privilege, or under both the deliberative process and attorney work-product privileges.  You have appealed all of these withholdings.

Your appeal letter raises two threshold objections to the scope of NARA's production and search, which I wish to first address before responding to your objections to withholding as a matter of FOIA law.

    1.  First, I can assure you that NARA's search to date for responsive records has been both adequate and comprehensive.  The reference to NARA searching its "operational" records, as used in Ms. Oliver's initial response, was not intended as a term of limitation; rather, the term was intended

to reflect that any records created and/or maintained by NARA staff while conducting NARA business were considered to be properly within the scope of the search. (NARA's regulations distinguish "operational" records from "archival" records, the latter being the "permanently valuable records of the United States Government that have been transferred to the legal custody of the Archivist of the United States." *See* 36 C.F.R. § 1250.2.)

The 336 pages of responsive material were found after an initial search was conducted for responsive records, including in NARA's Office of General Counsel, and relevant components of the Office of Records Services, Washington, D.C. in College Park, Maryland, responsible for handling recordkeeping matters involving the U.S. Secret Service. Staff searched for any responsive records contained in official NARA files, in personal workfiles, and on NARA's electronic mail system. NARA did not search in our archival holdings for records in response to your request. See generally 36 C.F.R. 1250.22 (c) (requests for records at the Clinton Presidential Library).

Also, in the intervening period since the original FOIA was received, NARA staff in the Office of General Counsel and in the Office of Presidential Libraries, Presidential Materials Staff, have located an additional 50 pages of responsive material. We are releasing 28 pages in part. The withheld additional materials fall under the Exemption (b)(5) deliberative process and attorney work-product privileges. Our explanation for the withholding of these additional materials is explained as part of the discussion which follows.

2. Second, you have questioned NARA's exclusion of copies of publicly available court filings from our response to the request, stating that CREW seeks production of these records "to the extent that they contain any marginalia." In response to further inquiries by staff, I can represent that no such marginalia on the court filing copies are known to exist. Accordingly, NARA believes it has satisfied this further portion of your request. If you still would like us to print out and send you these publicly available records, we will do so.

Turning to the further objections to our withholding of documents stated in your appeal letter, you first say that NARA has failed to provide a basis for our determination to withhold documents under Exemption 5. You go on to note that "Exemption 5 would not be available to protect from disclosure documents that reflect how NARA has exercised its statutory record keeping obligations with respect to the Secret Service." Finally, you challenge our withholdings under the attorney work product doctrine, inasmuch as it the doctrine "does not attach until some articulable claim likely to lead to litigation has arisen."

After examining the initial decision to withhold documents under Exemption 5, I have decided to release an additional 11 pages in whole and 57 in part from the initially withheld set of documents, but to otherwise uphold the remaining portions of NARA's initial determination, as explained below.

*Records Covered By The Deliberative Process Privilege.* One of the key purposes of the deliberative process privilege is, as you know, to protect the free flow of advice to agency decision-makers, including expressions of candid opinions within an agency. See *Federal Open Market Comm. v. Merrill*, 443 U.S. 340 (1979). The deliberative discussions reflected in all of the pages withheld, either in full or in part, principally constitute intra- and inter-agency deliberations with respect to the legal status of WAVES records. Over a period of years, NARA staff have been called upon to

engage in candid discussions regarding the records management issues surrounding WAVES records. Moreover, the predecisional character of these discussions is not altered by any final decisions that have been made with respect to the record status of WAVES records under the records laws.

*Records Covered By Both the Deliberative Process and Attorney Work Product Privileges.*
Of the documents originally withheld under both privileges, 155 pages constitute draft briefs received over the Internet from Justice Department attorneys in Federal Programs Branch, who transmitted the briefs for the routine purpose of obtaining the views of NARA lawyers prior to filing in Court. Additionally, 16 pages of emails from the original set withheld (now partially released), and a supplemental group of 28 pages of emails, also as partially released (see above), all constitute cover emails from DOJ either accompanying those briefs, or NARA lawyers' responses to what was sent. Both the draft briefs and those portions of the emails which continue to be withheld constitute documents covered under the core attorney work product privilege recognized in *Hickman v. Taylor*, 329 U.S. 425 (1947) and its progeny. Five additional pages constitute background information on WAVES records prepared by the Secret Service for attorneys at NARA and the Department of Justice, for which there was a reasonable anticipation of litigation. Finally, in reviewing the materials originally released, I believe that there are a substantial number of additional pages (included within both the original 118 pages withheld in full under the deliberative process privilege, as well as 11 partially so withheld) that appropriately qualify as also within the scope of the attorney work product privilege, as they reflect the mental impressions and opinions of counsel or in response to counsel's inquiries on a matter for which there was a reasonable anticipation of litigation.

Consistent with your request, NARA staff have conducted a further review of the responsive Federal records and released all segregable portions in accordance with 5 U.S.C. 552(b). Pursuant to case law established in *Neufeld v. IRS*, 646 F.2d 661, 663 (D.C. Cir. 1981), agencies have the discretion to withhold records in their entirety if they determine that the non-exempt portions are so "inextricably intertwined" that disclosure would yield documents that are unintelligible. Nevertheless, with respect to the withheld documents under (b)(5) we have decided to release certain transmission and receipt information from previously withheld email records.

Accordingly, I affirm our remaining initial determinations with regard to these records.

Your administrative remedies from your October 25, 2006, appeal are now exhausted. You may seek judicial review in the United States District Court for the judicial district in which you reside, the District of Columbia, or the District of Maryland, which is where the records are located.

Sincerely,

**LEWIS** J. BELLARDO

LEWIS J. BELLARDO
Deputy Archivist/Chief of Staff


Enclosures

# TAB "G"

# Vaughn Index of Withheld Documents

**Citizens For Responsibility and Ethics In Washington v. National Archives and Records Administration**
**Civ. Action No. 07-0048 (RBW)**
***Vaughn* Index**

| Privileged Document Identifier | Document Date | Author | Addressee(s)/ Recipients | Privilege Asserted | Total Pages | Description |
|---|---|---|---|---|---|---|
| 1 | 09/29/1995 | Miriam Nisbet | 1. James Hastings | DP | 1 | E-mail re: "Job No. N1-87-93-3, US Secret Service WAVES – Forwarded – Reply," responding to an appended e-mail from J. Hastings to M. Nisbet, Special Counsel for Information Policy, NARA, dated 9/29/95.  E-mail thread from NARA lawyer to NARA senior archivist contains internal NARA staff deliberations concerning a then-pending records schedule for WAVES records.<br><br>Additional material released on 5/7/07. |
| 2 | Unknown | Richard Marcus | N/A | DP | 1 | Handwritten notes (1 page) making reference to disposition of WAVES records in possession of USSS. |
| 3 | Unknown | Unknown | N/A | DP | 1 | Memorandum (1 page) discussing legal and recordkeeping issues regarding WAVES records maintained by USSS, including their transfer and disposition (with hand annotations), with attached Request for Records Disposition Authority Job Number N1-087-93-03 (3 pages), dated May 28, 1996.<br><br>Duplicate of the Request for Records Disposition Authority Job Number N1-087-93-03 (3 pages).<br><br>Additional material released on 5/7/07. |
| 4 | 02/25/1997 | Henry Wolfinger | 1. epugh [Elizabeth Pugh]<br><br>2. cc: mmiller [Michael Miller]<br><br>3. cc: rwmarcus [Richard Marcus] | DP | 1 | E-mail re: "WAVES," providing informal advice and opinion to NARA's then-General Counsel Elizabeth Pugh on what actions should be taken with respect to the then-pending records schedule for disposition of WAVES records. |

*Citizens For Responsibility and Ethics In Washington v. National Archives and Records Administration*
Civ. Action No. 07-0048 (RBW)
<u>*Vaughn* Index</u>

| Privileged Document Identifier | Document Date | Author | Addressee(s)/ Recipients | Privilege Asserted | Total Pages | Description |
|---|---|---|---|---|---|---|
| 5 | 03/03/2000 | Gary M. Stern | 1. Stephen Cooper<br>2. cc: Larry Baume<br>3. cc: Nancy Smith | DP, WP | 1 | E-mail (1 page) re: "SF 115 for the WAVES system," responding to appended e-mails from Stephen Cooper, dated 3/2/00, with e-mail thread between NARA's General Counsel and NARA archivists discussing what further actions should be taken by NARA staff with respect to the pending Job N1-87-93-3, the WAVES records schedule. A separate e-mail properties page has been released in full.<br><br>Additional material released on 5/7/07. |
| 6 | 03/07/2000 | Stephen Cooper | 1. Gary M. Stern<br>2. cc: Larry Baume | DP, WP | 1 | E-mail re: "SF 115 for the WAVES system," responding to and appending e-mails described in document # 5. The further reply to NARA's General Counsel memorializes an inter-agency communication the author had regarding a request from the Secret Service for legal advice from NARA with respect to transfer and disposition of WAVES records. The e-mail page contains a handwritten annotation<br><br>Additional material released on 5/7/07. |
| 7 | 03/31/2000 | Gary M. Stern | 1. Stephen Cooper<br>2. Nancy Smith<br>3. cc: Marie B. Allen<br>4. cc: Sharon Fawcett<br>5. cc: Amy Krupsky<br>6. cc: Richard Marcus<br>7. cc: Michael Miller | DP, WP | 1 | E-mail (1 page) re: "Secret Service Waves Schedule," consisting of note from NARA's General Counsel informing NARA archivists and a NARA lawyer (Ms. Krupsky) of status of a possible meeting planned with White House and DOJ counsel, and Secret Service staff, to discuss pending legal issues in connection with transfer and disposition of WAVES records. A separate e-mail properties page has been released in full. |

*Citizens For Responsibility and Ethics In Washington v. National Archives and Records Administration*
**Civ. Action No. 07-0048 (RBW)**
<u>*Vaughn* Index</u>

| Privileged Document Identifier | Document Date | Author | Addressee(s)/ Recipients | Privilege Asserted | Total Pages | Description |
|---|---|---|---|---|---|---|
| 8 | Undated | Stephen Cooper | 1. cc: Amy Krupsky<br><br>2. cc: David Langbart<br><br>3. cc: Hattie Queen<br><br>4. cc: Mari[e Allen] | DP, WP | 2 | Partial text of e-mail with legend at top: "Secret Service Waves Schedule/Let's Meet," appending additional e-mail discussion thread consisting of replies to document # 7, including e-mail from Nancy Smith to "Gary et al.," dated 3/31/00; e-mail from Michael Miller to "Nancy et al.," dated 4/1/00; e-mail from Nancy Smith to "Michael" dated 4/3/00. The e-mail thread consists of a discussion of the legal issues surrounding the transfer and disposition of WAVES records, including what policy positions NARA should consider taking.<br><br>Additional material released on 5/7/07. |
| 9 | 04/14/2000 | Gary M. Stern | 1. Marie B. Allen<br><br>2. Stephen Cooper<br><br>3. Sharo[n] Fawcett<br><br>4. Kathleen Schultz | DP, WP | 1 | E-mail re: "GRS for visitor logs," responding to and including an e-mail from Kathleen Schultz, dated 4/14/00, discussing the proposed WAVES record schedule in light of existing General Records Schedules, and containing a reference to the transfer of WAVES records.<br><br>Additional material released on 5/7/07. |
| 10 | 04/17/2000 | Stephen Cooper | 1. Amy Krupsky<br><br>2. Gary M. Stern<br><br>3. Kathleen Schultz<br><br>4. M[arie B. Allen] | DP, WP | 2 | E-mail (1 page) re: "Re: GRS for visitor logs," responding to and including e-mail thread described in document # 9.  Contains an additional staffer's opinion on the proposed WAVES records schedule in light of existing General Records Schedules, and discussion of procedures for the transfer and disposition of WAVES records.<br><br>Duplicate of the e-mail (1 page).<br><br>Additional material released on 5/7/07. |
| 11 | 04/17/2000 | Michael L. Miller | 1. Amy Krupsky<br><br>2. Gary M. Stern | DP, WP | 2 | E-mail (1 page) re: "Re: GRS for visitor logs," further responding to and including the e-mail thread described in document ## 9 & 10.  Contains an additional staffer's opinion on the proposed WAVES records schedule.<br><br>Duplicate of the e-mail (1 page). |

**Citizens For Responsibility and Ethics In Washington v. National Archives and Records Administration**
**Civ. Action No. 07-0048 (RBW)**
*Vaughn* **Index**

| Privileged Document Identifier | Document Date | Author | Addressee(s)/ Recipients | Privilege Asserted | Total Pages | Description |
|---|---|---|---|---|---|---|
| | | | 3. Kathleen Schultz<br><br>4. M[arie B. Allen] | | | Additional material released on 5/7/07. |
| 12 | 12/8/2000 | Gary M. Stern | N/A | DP, WP | 2 | Handwritten notes of NARA's General Counsel referencing his 12/8/00 and 12/11/00 conversations with USSS official and USSS counsel regarding legal issues involving transfer and disposition of WAVES records maintained by USSS. |
| 13 | 01/17/2001 | 1. Tom Dougherty<br><br>2. Ann Bushmiller | Gary Stern | DP, WP | 4 | Memorandum (2 pages) re: "Disposition of certain Presidential Records created by the USSS" [United States Secret Service]. The signed memorandum consists of a set of recommendations to NARA from the Office of Counsel to the President and the USSS on how the USSS proposed to manage, transfer, and dispose of WAVES and ACR records.<br><br>Duplicate of the memorandum with some fax transmission data cut off (2 pages). |
| 14 | 01/19/2001 | Gary M. Stern | 1. Tom Dougherty<br><br>2. Ann Bushmiller | DP, WP | 1 | Memorandum re: "Disposition of Certain Presidential Records Created by the USSS." The memorandum consists of NARA General Counsel's response to proposal contained in document # 13. |
| 15 | 03/05/2001 | Gary M. Stern | 1. Stephen Cooper<br><br>2. Larry Baume<br><br>3. Sharon Fawcett<br><br>4. Amy Krupsky<br><br>5. Marty McGann<br><br>6. Nancy Smith | DP, WP | 2 | E-mail (1 page) re: "Re: WAVES," responding to and including e-mail from Stephen Cooper discussing the legal issues involved in the transfer and disposition of WAVES records, in connection with NARA formulating its policy in response to documents ## 13 and 14.<br><br>Duplicate of the e-mail (1 page).<br><br>Additional material released on 5/7/07. |

*Citizens For Responsibility and Ethics In Washington v. National Archives and Records Administration*
**Civ. Action No. 07-0048 (RBW)**
<u>*Vaughn* Index</u>

| Privileged Document Identifier | Document Date | Author | Addressee(s)/ Recipients | Privilege Asserted | Total Pages | Description |
|---|---|---|---|---|---|---|
| | | | | | | |
| 15a | 03/20/2001 (hand annotated) | Stephen Cooper | N/A | DP | 2 | Notes of NARA staff archivist written in response to documents ## 13-15, comprising questions and comments on legal and recordkeeping issues surrounding disposition and transfer of USSS records as set out in the above-referenced documents. |
| 16 | 04/05/2001 | 1. Gary M. Stern | 1. Lewis Bellardo  2. Sharon Fawcett  3. Michael Miller  4. cc: Marie Allen  5. cc: Jason Baron  6. cc: Larry Baume  7. cc: Stephen Cooper  8. cc: Amy Krupsky  9. cc: Nancy Smith | DP, WP | 1 | E-mail re: "Report on WAVES Meeting," consisting of NARA General Counsel's report on inter-agency meeting to discuss legal issues affecting the disposition of WAVES records. |
| 17 | 03/31/2004 | 1. Gary M. Stern | 1. Nancy Smith | DP, WP | 5 | Facsimile transmittal (1 page), discussing conversation between NARA's General Counsel and an Associate Counsel to the President on the subject of WAVES records, and attaching document # 16; and document # 13 (with handwritten annotations). |
| 18 | 07/29/2004 | 1. Tom Dougherty  2. Jennifer | 1. Gary M. Stern | DP, WP | 6 | Unsigned draft memorandum re: "Disposition of Certain Presidential Records Created by the USSS [United States Secret Service]" (3 pages) (with 3-page attachment), consisting of a set of recommendations to NARA from the Office of Counsel to the President and the |

**Citizens For Responsibility and Ethics In Washington v. National Archives and Records Administration**
**Civ. Action No. 07-0048 (RBW)**
*Vaughn* **Index**

| Privileged Document Identifier | Document Date | Author | Addressee(s)/ Recipients | Privilege Asserted | Total Pages | Description |
|---|---|---|---|---|---|---|
| | | Brosnahan | | | | USSS on how the USSS proposed to manage, transfer, and dispose of WAVES and ACR records. |
| 18a | 09/30/2004 | Jennifer Brosnahan | 1. Gary M. Stern  2. Jennifer Brosnahan | DP, WP | 7 | E-mail (1 page) re: "WAVES records," consisting of a request from Associate Counsel to the President for NARA General Counsel to review attached memorandum described in document # 18. |
| 19 | 10/27/2004 | Gary M. Stern | 1. Larry Baume  2. Stephen Cooper  3. Sharon Fawcett  4. Nancy Smith  5. Gary M. Stern | DP, WP | 8 | E-mail (1 page) re: "Fwd: WAVES records," from NARA General Counsel forwarding to NARA staff an e-mail (1 page) from Associate Counsel to the President dated 9/30/04 regarding the draft materials described in document # 18, and soliciting comments on a copy of those draft materials (6 pages). |
| 20 | 10/28/2004 | Nancy Smith | 1. Larry Baume  2. Stephen Cooper  3. Sharon Fawcett  4. Gary M. Stern | DP, WP | 3 | E-mail (1 page) re: "Re: Fwd: WAVES records,"  providing a NARA staffer's comments and opinions on various legal and recordkeeping issues raised in connection with the transfer and disposition  of WAVES records, and appending  the 1 page cover e-mail from NARA's General Counsel described at document # 19.  Two duplicates of the e-mail (1 page each).  Additional material released on 5/7/07. |
| 21 | 10/28/2004 | Stephen Cooper | 1. Paul Wester  2. Larry Baume  3. Margaret Hawkins | DP, WP | 1 | E-mail re: "WAVES," consisting of a NARA staffer's outline of issues for further discussion regarding legal issues surrounding the transfer and disposition of WAVES records in light of documents ## 18 & 19. |

**Citizens For Responsibility and Ethics In Washington v. National Archives and Records Administration**
**Civ. Action No. 07-0048 (RBW)**
*Vaughn* **Index**

| Privileged Document Identifier | Document Date | Author | Addressee(s)/ Recipients | Privilege Asserted | Total Pages | Description |
|---|---|---|---|---|---|---|
| | | | 4. cc Stephen Cooper | | | |
| 22 | 10/29/2004 | Larry Baume | 1. Paul Wester  2. Stephen Cooper  3. Margaret Hawkins  4. Gary M. Stern  5. Nancy Smith  6. Larry Baume | DP, WP | 4 | E-mail (2 pages) re: "WAVES questions for discussion," consisting of further discussion and questions posed by a NARA staffer regarding legal issues surrounding the transfer and disposition of WAVES records in light of documents ## 18 & 19.  Duplicate of the e-mail (2 pages). |
| 23 | 10/29/2004 | Stephen Cooper | 1. Larry Baume  2. Nancy Smith  3. Gary M. Stern  4. cc: Sharon Fawcett  5. cc: Margaret Hawkins | DP, WP | 1 | E-mail re: "WAVES issues to discuss," copy of contents of document # 17 and appending one sentence e-mail from Gary Stern dated 10/28/04; and one sentence e-mail from Larry Baume to "Gary," each concerning setting up of a meeting to discuss legal issues regarding the transfer and disposition of WAVES records.  Additional material released on 5/7/07. |
| 24 | 10/29/2004 | 1. Gary M. Stern | 1. Larry Baume  2. Stephen Cooper  3. Nancy Smith | DP, WP | 2 | E-mail re: "Re: WAVES issues to discuss," consisting of a further response from NARA's General Counsel setting out his legal views on assorted questions raised in the e-mail thread surrounding document # 23 (and appending document # 23), including on the transfer and disposition of WAVES records.  Additional material released on 5/7/07. |

*Citizens For Responsibility and Ethics In Washington v. National Archives and Records Administration*
**Civ. Action No. 07-0048 (RBW)**
*Vaughn* Index

| Privileged Document Identifier | Document Date | Author | Addressee(s)/ Recipients | Privilege Asserted | Total Pages | Description |
|---|---|---|---|---|---|---|
| | | | 4. Jason Baron 5. Lewis Bellardo 6. Sharon Fawcett 7. Margaret Hawkins | | | |
| 25 | 10/29/2004 | 1. Stephen Cooper | 1. Larry Baume 2. Nancy Smith 3. Gary M. Stern 4. cc: Jason Baron 5. cc: Lewis Bellardo 6. cc: Sharon Fawcett 7. cc: Margaret Hawkins 8. cc: Paul Wester | DP, WP | 5 | E-mail (2 pages) re: "Re: WAVES issues to discuss," consisting of a further reply on one issue involving the scope of a General Records Schedule, and appending e-mail thread corresponding to document # 24. Duplicate of the e-mail (2 pages). Partial duplicate of the e-mail (1 page). Additional material released on 5/7/07. |
| 26 | 10/29/2004 | Unknown | N/A | DP | 4 | Internal NARA draft document (2 pages) analyzing legal issues surrounding the transfer and disposition of WAVES records maintained by USSS. Duplicate of the document (2 pages). |

**Citizens For Responsibility and Ethics In Washington v. National Archives and Records Administration**
**Civ. Action No. 07-0048 (RBW)**
<u>*Vaughn* Index</u>

| Privileged Document Identifier | Document Date | Author | Addressee(s)/ Recipients | Privilege Asserted | Total Pages | Description |
|---|---|---|---|---|---|---|
| 27 | 10/29/2004 | Gary M. Stern | 1. Jennifer Brosnahan<br>2. Paul Colborn<br>3. Tom Dougherty<br>4. cc: Larry Baume<br>5. cc: Stephen Cooper<br>6. cc: Nancy Smith | DP, WP | 1 | E-mail (1 page) re: "WAVES Records," consisting of NARA General Counsel's comments to Office of Counsel to the President, USSS, and DOJ on the issues raised by document # 18,  including questions about the disposition of WAVES records in the possession of USSS. |
| 28 | 11/19/2004 | Gary M. Stern | 1. Lewis Bellardo<br>2.  Gary M. Stern | DP, WP | 1 | E-mail re: "Re: WAVES Records,"  e-mail thread follow-up to document # 22, referencing upcoming conference call to discuss pending records issues, appending an e-mail comprising a one sentence question from Lewis Bellardo dated November 17, 2004, and document # 27.<br>Additional material released on 5/7/07. |
| 29 | 11/23/2004 | Gary M. Stern | 1. Larry Baume<br>2. Stephen Cooper<br>3. Thomas Cotter<br>4. Sharon Fawcett<br>5. Nancy Smith<br>6. Paul Wester | DP, WP | 2 | E-mail (1 page) re: "WAVES Records," consisting of NARA's General Counsel reporting on conversation with USSS staff regarding issues related to the retention of WAVES records by USSS, in which NARA provided legal advice with respect to USSS' then-current practices; and referencing subsequent inter-agency deliberations on related WAVES retention issues.<br>Duplicate of the e-mail (1 page). |

**Citizens For Responsibility and Ethics In Washington v. National Archives and Records Administration**
**Civ. Action No. 07-0048 (RBW)**
<u>*Vaughn* Index</u>

| Privileged Document Identifier | Document Date | Author | Addressee(s)/ Recipients | Privilege Asserted | Total Pages | Description |
|---|---|---|---|---|---|---|
| | | | 7. cc: Lewis Bellardo  8. cc: Michael Kurtz  9. cc: Howard Lowell | | | |
| 30 | 02/01/2005 | Jennifer Brosnahan | Gary M. Stern | DP, WP | 2 | E-mail (2 pages) re: "FW: Another RM Question," e-mail from Associate Counsel to the President to NARA General Counsel, appending e-mail thread consisting of four e-mails between the Associate Counsel and an employee of the White House Office of Records Management, all dated 2/1/05, discussing WAVES retention issues. |
| 31 | 07/05 | Unknown | N/A | DP, WP | 6 | Hard copy of powerpoint slides (6 pages) created by USSS Presidential Protective Division staff re "Presentation to the U.S. National Archives and Records Administration," discussing WAVES and ACR document retention issues; includes handwritten notes of NARA's General Counsel. |
| 32 | Unknown | Maggie Hawkins | N/A | DP | 1 | Handwritten notes regarding WAVES records, appearing to have been taken by NARA staff archivist in connection with powerpoint slides, document # 31, referencing disposition and transfer of WAVES records maintained by USSS. |
| 33 | Unknown | Stephen Cooper | N/A | DP | 15 | Handwritten notes (15 pages) regarding status of WAVES records in handwriting of NARA archivist referencing disposition and transfer of WAVES records maintained by USSS. |
| 34 | 03/01/2006 | Gary M. Stern | 1. Elizabeth Shapiro  2. cc: Jason Baron  3. cc: Jennifer Brosnahan  4. cc: Paul Colborn  5. cc: Tom Dougherty | DP, WP | 1 | E-mail re: "FOIA Lawsuit on WAVES Records," withheld portion of the document sent by NARA General Counsel to DOJ counsel, with cc's to other attorneys at NARA, DOJ, USSS, and the Office of Counsel to the President, briefly characterizes pending issues with respect to legal status of WAVES records, in light of appended Associated Press article entitled "Group Sues to Get White House Visitor Logs." The AP article has been disclosed. |

**Citizens For Responsibility and Ethics In Washington v. National Archives and Records Administration**
**Civ. Action No. 07-0048 (RBW)**
*Vaughn* <u>Index</u>

| Privileged Document Identifier | Document Date | Author | Addressee(s)/ Recipients | Privilege Asserted | Total Pages | Description |
|---|---|---|---|---|---|---|
| 35 | 03/01/2006 | Elizabeth Shapiro | 1. Gary M. Stern<br><br>2. cc: Paul Colborn<br><br>3. cc: Jason Baron<br><br>4. cc: Tom Dougherty<br><br>5. cc: Jennifer Brosnahan<br><br>6. cc: Jody Hunt | DP, WP | 1 | E-mail re: "RE: FOIA Lawsuit on WAVES Records," consisting of brief reply by DOJ counsel to document # 34 referencing filing in new FOIA lawsuit. The second page of the e-mail consisting of the AP article and transmission information has been disclosed.<br><br>Additional material released on 5/7/07. |
| 36 | 03/01/2006 | Gary M. Stern | 1. Elizabeth Shapiro<br><br>2. cc: Jason Baron<br><br>3. cc: Jennifer Brosnahan<br><br>4. cc: Paul Colborn<br><br>5. cc: Tom Dougherty<br><br>6. cc: Jody Hunt<br><br>7. cc: Richard Klingler | DP, WP | 1 | E-mail re: "RE: FOIA Lawsuit on WAVES Records," response by NARA General Counsel to DOJ counsel, discussing legal positions taken in prior litigation, in further reply to e-mail thread as described in document ## 34 & 35, forwarding additional remarks by DOJ counsel on subject of WAVES records contained in an e-mail dated 3/1/06. The second page of the e-mail consisting of the AP article and transmission information has been disclosed.<br><br>Additional material released on 5/7/07. |
| 37 | 03/01/2006 | Elizabeth Shapiro | 1. Gary M. Stern<br><br>2. cc: Paul | DP, WP | 1 | E-mail re: "RE: FOIA Lawsuit on WAVES Records," response by DOJ counsel to NARA's General Counsel, discussing legal positions taken in prior litigation, in further reply to e-mail thread as described in documents ## 34-36. The second page of the e-mail |

*Citizens For Responsibility and Ethics In Washington v. National Archives and Records Administration*
**Civ. Action No. 07-0048 (RBW)**
<u>*Vaughn* Index</u>

| Privileged Document Identifier | Document Date | Author | Addressee(s)/ Recipients | Privilege Asserted | Total Pages | Description |
|---|---|---|---|---|---|---|
| | | | Colborn<br><br>3. cc: Jody Hunt<br><br>4. cc: Jason Baron<br><br>5. cc: Tom Dougherty<br><br>6. cc: Jennifer Brosnahan<br><br>7. cc: Richard Klingler | | | consisting of the AP article and transmission information has been disclosed.<br><br>Additional material released on 5/7/07. |
| 38 | 05/02/2006 | Stephen Cooper | 1. Gary M. Stern<br><br>2. Larry Baume<br><br>3. Laurence Brewer<br><br>4. Margaret Hawkins<br><br>5. Paul Wester<br><br>6. Sharon Fawcett<br><br>7. Nancy Smith<br><br>8. Thomas Cotter | DP | 1 | E-mail re: "WAVES in the press," the withheld portion of the document constitutes a NARA staffer's comments on legal issues involving WAVES records in light of the appended Associated Press article entitled "Secret Service to Release Logs on Abramoff Visits." The AP article has been disclosed. |
| 39 | 05/02/2006 | Paul Wester | 1. Stephen Cooper | DP | 1 | E-mail re: "WAVES in the press," the withheld portion of the document is a comment made in response by a NARA supervisory official to the e-mail described as document # 38. The AP article has been disclosed. |

*Citizens For Responsibility and Ethics In Washington v. National Archives and Records Administration*
**Civ. Action No. 07-0048 (RBW)**
*Vaughn* **Index**

| Privileged Document Identifier | Document Date | Author | Addressee(s)/ Recipients | Privilege Asserted | Total Pages | Description |
|---|---|---|---|---|---|---|
| | | | | | | Additional material released on 5/7/07. |
| 40 | 05/02/2006 | Gary M. Stern | 1. Larry Baume<br>2. Laurence Brewer<br>3. Stephen Cooper<br>4. Thomas Cotter<br>5. Sharon Fawcett<br>6. Margaret Hawkins<br>7. Nancy Smith<br>8. Paul Wester | DP, WP | 1 | E-mail re: "Re: WAVES in the press," the withheld portion of the document consists of a comment by NARA General Counsel Gary Stern in response to the withheld e-mail described as document # 38, referencing an external communication of his on the subject The appended AP article has been disclosed.<br><br>Additional material released on 5/7/07. |
| 41 | 05/02/2006 | Nancy Smith | 1. Gary M. Stern<br>2. Larry Baume<br>3. Laurence Brewer<br>4. Margaret Hawkins<br>5. Paul Wester<br>6. Sharon Fawcett | DP, WP | 1 | E-mail re: "Re: WAVES in the press," the withheld portion of the document is an additional NARA staffer's response to the withheld e-mail thread described as documents ## 38 & 40.  The attached AP article has been disclosed.<br><br>Additional material released on 5/7/07 |

*Citizens For Responsibility and Ethics In Washington v. National Archives and Records Administration*
**Civ. Action No. 07-0048 (RBW)**
<u>*Vaughn* Index</u>

| Privileged Document Identifier | Document Date | Author | Addressee(s)/ Recipients | Privilege Asserted | Total Pages | Description |
|---|---|---|---|---|---|---|
| | | | 7. Stephen Cooper<br><br>8. Thomas Cotter | | | |
| 42 | 05/02/2006 | Gary M. Stern | 1. Larry Baume<br><br>2. Laurence Brewer<br><br>3. Stephen Cooper<br><br>4. Thomas Cotter<br><br>5. Sharon Fawcett<br><br>6. Margaret Hawkins<br><br>7. Nancy Smith<br><br>8. Paul Wester | DP, WP | 2 | E-mail re: "Re: WAVES in the press," the withheld portion of the document is a response by NARA's General Counsel to the withheld e-mail thread described as documents ## 38, 40 & 41. The attached AP article has been disclosed.<br><br>Duplicate of the e-mail (1 page).<br><br>Additional material released on 5/7/07 |
| 43 | 05/03/2006 | 1. Stephen Cooper | 1. Larry Baume<br><br>2. Laurence Brewer<br><br>3. Thomas Cotter<br><br>4. Sharon Fawcett<br><br>5. Margaret Hawkins | DP, WP | 2 | E-mail re: "Re: WAVES in the press," the withheld portion of the document consists of a further response by a NARA staffer on WAVES related issues, and an additional opinion offered by NARA staffer contained in an e-mail dated 5/3/06, as well as the withheld portion of the appended e-mail thread described as documents ## 38, 40-42. The attached AP article has been disclosed.<br><br>Additional material released 5/7/07. |

*Citizens For Responsibility and Ethics In Washington v. National Archives and Records Administration*
## Civ. Action No. 07-0048 (RBW)
*Vaughn* Index

| Privileged Document Identifier | Document Date | Author | Addressee(s)/ Recipients | Privilege Asserted | Total Pages | Description |
|---|---|---|---|---|---|---|
| | | | 6. Nancy Smith<br><br>7. Gary M. Stern<br><br>8. Paul Wester | | | |
| 44 | 05/03/2006 | 1. Gary M. Stern | 1. Larry Baume<br><br>2. Laurence Brewer<br><br>3. Stephen Cooper<br><br>4. Thomas Cotter<br><br>5. Sharon Fawcett<br><br>6. Margaret Hawkins<br><br>7. Nancy Smith<br><br>8. Paul Wester | DP, WP | 1 | E-mail re: "Re: WAVES in the press," the withheld portion of the document consists of NARA General Counsel's response to the e-mail thread described as documents ## 38, 40-43, as well as the withheld e-mail thread itself.  The attached AP article has been disclosed.<br><br>Additional material released on 5/7/07. |
| 45 | 05/09/2006 | Jennifer Brosnahan | 1. John Kelleher<br><br>2. Thomas Dougherty<br><br>3. Mark Robertson<br><br>4. Gary M. Stern<br><br>5. cc: Steve | DP, WP, AC | 15 | E-mail (1 page) re: "WAVES/ACS records issue," from Associate Counsel to the President soliciting comments on an attached draft nonpublic legal advice memorandum from the Department of Justice's Office of Legal Counsel containing legal advice regarding the status and handling of WAVES records (10 pages), and an attached draft Memorandum of Understanding Between the White House Office and USSS Governing Records Generated By the White House Access Control System (4 pages).  The cover e-mail has been released in part. |

**Citizens For Responsibility and Ethics In Washington v. National Archives and Records Administration**
**Civ. Action No. 07-0048 (RBW)**
*Vaughn* **Index**

| Privileged Document Identifier | Document Date | Author | Addressee(s)/ Recipients | Privilege Asserted | Total Pages | Description |
|---|---|---|---|---|---|---|
| | | | Bradbury  6. cc: Paul Colborn  7. cc: William Kelley  8. cc: Richard Klinger | | | |
| 46 | 05/09/2006 | Gary M. Stern | 1. Jennifer Brosnahan  2. Thomas Dougherty  3. John Kelleher  4. Mark Robertson  5. William Kelley  6. Richard Klingler  7. Paul Colborn  8 Steve Bradbury | DP, WP | 2 | E-mail re: "RE: WAVES/ACS records issue," consisting of preliminary comments from NARA General Counsel on draft MOU described *supra,* document # 45, and appending the cover e-mail to document # 45. With additional e-mail from an Associate Counsel to the President dated 5/9/06, requesting comments and discussing future action items. |
| 47 | 05/09/2006 | Jennifer Brosnahan | Gary M. Stern | DP, WP | 2 | E-mail re: "RE: WAVES/ACS records issue," consisting of brief reply by Associate Counsel to the President to a response by NARA General Counsel, in an e-mail dated 5/9/07, addressed to all recipients of document # 46.  Additional material released on 5/7/07. |

**Citizens For Responsibility and Ethics In Washington v. National Archives and Records Administration**
**Civ. Action No. 07-0048 (RBW)**
*Vaughn* **Index**

| Privileged Document Identifier | Document Date | Author | Addressee(s)/ Recipients | Privilege Asserted | Total Pages | Description |
|---|---|---|---|---|---|---|
| 48 | 05/10/2006 | Gary M. Stern | 1. Jennifer Brosnahan<br><br>2. Thomas Dougherty<br><br>3. John Kelleher<br><br>4. Mark Robertson<br><br>5. William Kelley<br><br>6. Richard Klingler<br><br>7. Paul Colborn<br><br>8. Steve Bradbury | DP, WP | 2 | E-mail re: "RE: WAVES/ACS records issue," consisting of additional comments from NARA's General Counsel on issues in draft MOU described *supra,* document # 45, and appending e-mail thread from document # 46. |
| 49 | 05/10/2006 | Gary M. Stern | Thomas Dougherty | DP, WP | 2 | E-mail re: "RE: WAVES/ACS records issue," further exchange of e-mails between NARA General Counsel and USSS relating to e-mail thread represented by document # 46, with appended document # 46.<br><br>Additional material released on 5/7/07 |
| 50 | 05/10/2006 | Paul Colborn | Gary M. Stern | DP, WP, AC | 14 | E-mail (3 pages) re: "RE: WAVES/ACS records issue," including three further brief e-mail exchanges between NARA General Counsel and DOJ counsel, all dated 5/10/06, regarding the draft nonpublic legal advice memorandum, and appending e-mail thread consisting of document # 48, as well as draft nonpublic legal advice memorandum from the Department of Justice's Office of Legal Counsel containing legal advice regarding the status and handling of WAVES records (11 pages). |
| 51 | 05/10/2006 | Gary M. Stern | Paul Colborn | DP, WP, AC | 3 | E-mail (3 pages) re: "RE: WAVES/ACS records issue," consisting of a further reply from NARA's General Counsel concerning the draft nonpublic legal advice memorandum from OLC, and appending the e-mail thread represented by document # 50. |

**Citizens For Responsibility and Ethics In Washington v. National Archives and Records Administration**
**Civ. Action No. 07-0048 (RBW)**
<u>*Vaughn* Index</u>

| Privileged Document Identifier | Document Date | Author | Addressee(s)/ Recipients | Privilege Asserted | Total Pages | Description |
|---|---|---|---|---|---|---|
| 52 | 05/10/2006 | Paul Colborn | Gary M. Stern | DP, WP, AC | 3 | E-mail (3 pages) re: "RE: WAVES/ACS records issue," further response by DOJ counsel, to e-mail thread represented by document # 51, concerning the draft nonpublic legal advice memorandum from OLC. |
| 53 | 05/18/2006 | Gary M. Stern | 1. Stephen Cooper  2. cc: Jason Baron  3. cc: Lewis Bellardo  4. cc: Sharon Fawcett  5. cc: Michael Kurtz  6. cc: Nancy Smith  7. cc: Paul Wester | DP, WP | 1 | E-mail re: "Re: WAVES," the information withheld consists of a characterization by NARA's General Counsel of the government's filing of legal documents in a related WAVES lawsuit.  The remainder of the document has been released. |
| 54 | 05/31/2006 | Gary M. Stern | 1. Larry Baume  2. Laurence Brewer  3. Stephen Cooper  4. Sharon Fawcett  5. Nancy Smith  6. Paul Wester  7. cc: Jason | DP, WP | 1 | E-mail (2 pages) re: "FOIA for WAVES Schedules;" the portions withheld discuss NARA's proposed response to a FOIA request (2 pages) attached to the e-mail, from Jo Becker, Washington Post, for Federal Records Act disposal schedules for WAVES records, and also include e-mail thread from NARA staff consisting of comments on recordkeeping issues surrounding USSS WAVES records.  The FOIA request portion of the document has been disclosed.  Additional material released 5/7/07 |

**Citizens For Responsibility and Ethics In Washington v. National Archives and Records Administration**
**Civ. Action No. 07-0048 (RBW)**
*Vaughn* **Index**

| Privileged Document Identifier | Document Date | Author | Addressee(s)/ Recipients | Privilege Asserted | Total Pages | Description |
|---|---|---|---|---|---|---|
| | | | Baron 8. cc: Lewis Bellardo 9. cc: John Constance 10. cc: Susan Cooper 11. cc: Michael Kurtz 12. cc: Ramona Oliver 13. cc: Allen Weinstein | | | |
| 55 | 06/05/2006 | Jennifer Brosnahan | Gary M. Stern | DP, WP, AC | 17 | Facsimile transmittal of a cover page (1 page), attaching a nonpublic legal advice memorandum (11 pages) from the Department of Justice's Office of Legal Counsel, dated May 11, 2006, containing legal advice regarding the status and handling of WAVES records, and attaching a draft Memorandum of Understanding Between White House Office of Records Management and the U.S. Secret Service Records Management Program Governing Records Generated by the White House Access Control System (5 pages). |
| 56 | 06/13/2006 | Jennifer Brosnahan | 1. Carl Nichols 2. Gary M. Stern 3. Molly Weber 4. John Kelleher 5. cc: William Kelley 6. cc: Richard Klinger | DP, WP | 1 | E-mail re: "WHACS records/MOU," consisting of internal deliberations initiated by Associate Counsel to the President on matters related to the preservation of WAVES and ACR records in light of one or more pending lawsuits. |

*Citizens For Responsibility and Ethics In Washington v. National Archives and Records Administration*
**Civ. Action No. 07-0048 (RBW)**
*Vaughn* **Index**

| Privileged Document Identifier | Document Date | Author | Addressee(s)/ Recipients | Privilege Asserted | Total Pages | Description |
|---|---|---|---|---|---|---|
| 57 | 06/14/2006 | Gary M. Stern | 1. Jennifer Brosnahan 2. Carl Nichols 3. John Kelleher 4. Molly Weber 5. cc: William Kelley 6. cc: Richard Klinger | DP, WP | 2 | E-mail re: "WHACS records / MOU," response by NARA's General Counsel to document # 56, with NARA's views on various matters related to the preservation of WAVES and ACR records, with document # 56 appended. |
| 58 | 06/15/2006 | Gary M. Stern | 1. Jennifer Brosnahan 2. Carl Nichols 3. John Kelleher 4. Molly Weber 5. cc: William Kelley 6. cc: Richard Klinger 7. cc: Mark Robertson 8. cc: Nancy Smith | DP, WP | 4 | E-mail re: "WHACS records / MOU," primarily consisting of an e-mail thread of NARA, DOJ, and USSS responses to the e-mail described as document # 49, on issues regarding preservation of WAVES and ACR records, including four e-mail exchanges between USSS attorney and an Associate Counsel to the President,(with cc's to recipients ## 1-7 listed at left), all dated June 14 or 15, 2006, one brief e-mail from DOJ counsel Carl Nichols, dated June 14, 2006, and appending the additional e-mails in document # 57. |

*Citizens For Responsibility and Ethics In Washington v. National Archives and Records Administration*
**Civ. Action No. 07-0048 (RBW)**
<u>*Vaughn* Index</u>

| Privileged Document Identifier | Document Date | Author | Addressee(s)/ Recipients | Privilege Asserted | Total Pages | Description |
|---|---|---|---|---|---|---|
| 59 | 06/22/2006 | Gary M. Stern | 1. Jennifer Brosnahan<br><br>2. Carl Nichols<br><br>3. John Kelleher<br><br>4. Molly Weber<br><br>5. cc: Kate Dillon-McClure<br><br>6. cc: Richard Klinger<br><br>7. cc: Mark Robertson<br><br>8. cc: Nancy Smith<br><br>9. cc: William Kelley | DP, WP | 5 | E-mail re: "RE: WHACS records/MOU," consisting of the further response of NARA's General Counsel to an e-mail from USSS attorney, dated June 22, 2006, on the further preservation of WAVES and ACR records, including during the pendency of one or more lawsuits, and appending the e-mail thread constituting document ## 56-58. |
| 60 | 06/22/2006 | Molly Weber | 1. Gary M. Stern<br><br>2. Carl Nichols<br><br>3. John Kelleher<br><br>4. Jennifer Brosnahan<br><br>5. cc: Mark Robertson<br><br>6. cc: Nancy Smith | DP, WP | 5 | E-mail re: "RE: WHACS records/MOU," consisting of a further statement by USSS counsel on its recent litigation-related actions, in response to the e-mail thread including e-mails contained in document # 59. |

*Citizens For Responsibility and Ethics In Washington v. National Archives and Records Administration*
**Civ. Action No. 07-0048 (RBW)**
*Vaughn* Index

| Privileged Document Identifier | Document Date | Author | Addressee(s)/ Recipients | Privilege Asserted | Total Pages | Description |
|---|---|---|---|---|---|---|
| | | | 7. cc: Richard Klinger  8. cc: William Kelley | | | |
| 61 | 07/27/2006 | Sara Clash-Drexler | 1. Gary M. Stern  2. Jason Baron | DP, WP | 1 | E-mail from DOJ attorney re: "CREW Amended Complaint – FRA claim," forwarding an amended CREW complaint for NARA counsel's review and comment. |
| 62 | 08/31/2006 | Gary M. Stern | 1. Jason Baron  2. Larry Baume  3. Lewis Bellardo  4. Laurence Brewer  5. Stephen Cooper  6. Sharon Fawcett  7. Nancy Smith | DP, WP | 1 | E-mail re: "Fwd: CREW amended complaint," transmitting and discussing legal issues raised by the amended complaint filed by CREW. |
| 63 | 09/01/2006 | Stephen Cooper | 1. Gary M. Stern  2. Lewis Bellardo  3. Nancy Smith  4. Jason Baron  5. Larry Baume | DP, WP | 1 | E-mail re: "Fwd: CREW motion to dismiss"; e-mail thread consisting of exchange between NARA staff and NARA's General Counsel discussing positions taken by the government in the CREW litigation , and related comments, including three appended e-mails between Gary M. Stern and Stephen Cooper dated 9/1/06.  Additional material released on 5/7/07. |

**Citizens For Responsibility and Ethics In Washington v. National Archives and Records Administration**
**Civ. Action No. 07-0048 (RBW)**
*Vaughn* Index

| Privileged Document Identifier | Document Date | Author | Addressee(s)/ Recipients | Privilege Asserted | Total Pages | Description |
|---|---|---|---|---|---|---|
| | | | 6. Laurence Brewer  7. Sharon Fawcett  8. Stephen Cooper  9. cc: Paul Wester | | | |
| 64 | 09/03/2006 | Jason Baron | 1. Sarah Clash-Drexler  2. Gary M. Stern  3. cc: Justin Sandberg | DP, WP | 1 | E-mail re: "Re: CREW motion to dismiss," consisting of a NARA lawyer's comments to DOJ counsel on the government's motion to dismiss in the CREW case, with e-mail from DOJ counsel dated 8/31/06, regarding recent court filing, appended. |
| 65 | 09/06/2006 | Sara Clash-Drexler | 1. Gary M. Stern  2. Jason Baron  3. cc: Justin Sandberg | DP, WP | 2 | E-mail re: "RE: CREW motion to dismiss —p.s.,"  DOJ response to NARA lawyer's comments on document # 64,  appending document # 64 and a second e-mail from a NARA attorney dated 9/3/06. |
| 66 | 09/14/2006 | Sara Clash-Drexler | 1. Gary M. Stern  2. Jason Baron  3. Justin Sandberg | DP, WP | 1 | E-mail re: "CREW's opposition," DOJ counsel forwarding CREW's opposition to the motion to dismiss discussed in document # 56 and providing brief comments. |
| 67 | 09/22/2006 | Gary M. Stern | 1. Gary M. Stern  2. cc: Jason Baron | DP, WP | 1 | E-mail re: "WAVES Litigation," note for the record by NARA's General Counsel regarding conversation with DOJ counsel discussing proposed preservation actions by USSS regarding WAVES and ACR records relevant to pending litigation. |

*Citizens For Responsibility and Ethics In Washington v. National Archives and Records Administration*
**Civ. Action No. 07-0048 (RBW)**
*Vaughn* Index

| Privileged Document Identifier | Document Date | Author | Addressee(s)/ Recipients | Privilege Asserted | Total Pages | Description |
|---|---|---|---|---|---|---|
| 68 | 09/22/2006 | Justin Sandberg | 1. Gary M. Stern<br><br>2. Jason Baron | DP, WP | 49 | E-mail (1 page) re: "CREW: Draft of reply in support of motion to dismiss CREW's APA claim," consisting of cover e-mail transmitting and including drafts of attached Motion to Dismiss (2 pages), Memorandum in Support of Motion to Dismiss (17 pages), Reply in Support of Motion to Dismiss (14 pages), Motion to Dismiss FOIA Claims (2 pages), and Memorandum in Support of Motion to Dismiss FOIA Claims (13 pages). |
| 69 | 09/22/2006 | Jason Baron | 1. Justin Sandberg<br><br>2. Gary M. Stern | DP, WP | 1 | E-mail re: "CREW: Draft reply in support of motion to dismiss CREW's APA claim," response by NARA counsel to the e-mail described in document # 68, in the form of a question regarding timing of future filing. |
| 70 | 09/22/2006 | Justin Sandberg | 1. Jason Baron<br><br>2. Gary M. Stern | DP, WP | 1 | E-mail re: "CREW: Draft reply in support of motion to dismiss CREW's APA claim," further reply of DOJ counsel to NARA counsel timing question in document # 69. |
| 71 | 09/25/2006 | Justin Sandberg | 1. Molly Weber<br><br>2. Robert Hoyt<br><br>3. cc: Carl Nichols<br><br>4. cc: Jody Hunt<br><br>5. cc: Elizabeth Shapiro<br><br>4. cc: Sara Clash-Drexler<br><br>5. cc: Gary M. Stern<br><br>6. cc: Jason Baron | DP, WP | 17 | E-mail (1 page) re: "CREW: Revised Reply," transmitting and including an attached draft reply brief of the government (16 pages). |
| 72 | 09/25/2006 | Jason Baron | 1. Justin | DP, WP | 1 | E-mail re: "RE: CREW: Revised reply," consisting of comments by NARA counsel on |

**Citizens For Responsibility and Ethics In Washington v. National Archives and Records Administration**
**Civ. Action No. 07-0048 (RBW)**
*Vaughn* **Index**

| Privileged Document Identifier | Document Date | Author | Addressee(s)/ Recipients | Privilege Asserted | Total Pages | Description |
|---|---|---|---|---|---|---|
| | | | Sandberg | | | document # 71. |
| | | | 2. cc: Gary M. Stern | | | |
| 73 | 09/25/2006 | Justin Sandberg | 1. Jason Baron | DP, WP | 1 | E-mail re: "RE: CREW: Revised Reply," DOJ counsel responding to comments of NARA counsel in document # 72. |
| | | | 2. cc: Gary M. Stern | | | |
| | | | 3. cc: Sara Clash-Drexler | | | |
| 74 | 09/26/2006 | Justin Sandberg | 1. Molly Weber | DP, WP | 1 | E-mail re: "RE: CREW: Revised Reply," DOJ counsel providing litigation scheduling update and transmitting copy of government's reply brief. |
| | | | 2. Robert Hoyt | | | |
| | | | 3. cc: Carl Nichols | | | |
| | | | 4. cc: Jody Hunt | | | Additional material released on 5/7/07. |
| | | | 5. cc: Elizabeth Shapiro | | | |
| | | | 6. cc: Sara Clash-Drexler | | | |
| | | | 7. cc: Gary M. Stern | | | |
| | | | 8. cc: Jason Baron | | | |
| 75 | 10/04/2006 | Justin Sandberg | 1. Gary M. Stern | DP, WP | 23 | E-mail (1 page) re: "FW: CREW: Reply in support of motion to dismiss FOIA claims," forwarding a cover e-mail attaching the government's draft reply brief (22 pages). |
| | | | 2. Jason Baron | | | |
| | | | | | | Additional material released on 5/7/07. |

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | Civil Action No. 07-0048 (RBW) |
| NATIONAL ARCHIVES AND RECORDS ADMINISTRATION ) ) ) | |
| Defendant. ) ) | |

### ORDER

The Court, having fully considered Defendant's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56, finds Defendant's Motion to be well-taken, and it is hereby GRANTED.

IT IS SO ORDERED, this _____ day of _____, 2007.

Dated: _____

_____
HON. REGGIE B. WALTON
UNITED STATES DISTRICT JUDGE