UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL ARCHIVES AND RECORDS ADMINISTRATION,<br><br>Defendant. | Civ. Action No. 07-0048 (RBW) |

### DECLARATION OF GARY M. STERN

I, Gary M. Stern, hereby declare:

1. I am the General Counsel of the National Archives and Records Administration ("NARA"), a career appointment in the Senior Executive Service that I have held continuously since September 1998. In 2006, Archivist of the United States Allen Weinstein appointed me as the Chief Freedom of Information Act (FOIA) Officer for NARA, pursuant to our Agency's implementation of Executive Order 13392. Both in my capacity as General Counsel and Chief FOIA Officer, I provide oversight and guidance on matters related to the FOIA, including to NARA's designated FOIA staff. In my position as General Counsel, I am called upon on a daily basis to provide legal guidance to NARA and to the government at large on recordkeeping issues, including under the Federal Records Act and the Presidential Records Act.

2. Prior to my appointment as General Counsel, between 1995 and 1998 I served at the Department of Energy in various capacities, including as Special Assistant to the General Counsel, Assistant General Counsel for contractor litigation, and Deputy Assistant General Counsel for information law. Between 1994 and 1995, I served as a senior policy and research analyst for the U.S. Federal Advisory Committee on Human Radiation Experiments, where I provided legal advice on secrecy and classification issues. In 1994, I served as legal consultant to the National Academy of Science's Committee on Declassification of Information for the Environmental Remediation and Related Programs of the Department of Energy. Prior to my time with the federal government, I served as staff attorney for seven years at the Center of National Security Studies of the American Civil Liberties Union, where, among other matters, I worked on drafting the John F. Kennedy Assassination Records Collection Act and the Electronic Freedom of Information Act. I graduated from Yale Law School in 1987, where I was editor-in-chief of the *Yale Journal of International Law*. I am a member of the Bars of New York and the District of Columbia.

3. I am familiar with the allegations in the present lawsuit, and make this declaration on the basis of personal knowledge and on information I have received in the performance of my official duties. If called upon to do so I could testify competently as to the contents of this declaration.

### *NARA's Processing of CREW's FOIA Request*

4. On September 27, 2006, NARA received a FOIA request from counsel for plaintiff requesting documents and records in six categories of records:

(1) Any and all documents related to the request made by NARA to the United States Secret Service (USSS), that the Secret Service retain its own copies of the Worker and Visitor Entrance System (WAVES) records that it transferred to the White House;

(2) Any and all communications both internally and between NARA and any other government agency or government entity, referencing the practice of the USSS to erase copies of WAVES records that it transferred to the White House;

(3) Any and all documents referring or relating to a practice by the Secret Service of deleting records from its computer system;

(4) Any and all documents and records referring or relating to *Judicial Watch v. United States Secret Service,* Civ. Action No. 06-310 (D.D.C.);

(5) Any and all documents and records referring or relating to *Democratic National Committee v. United States Secret Service*, Civ. Action No. 06-842 (D.D.C.); and

(6) Any and all documents and records referring to *CREW v. United States Dep't of Homeland Security*, Civ. Action No. 06-883 (D.D.C.).

The request asked for expedited processing and a waiver of fees associated with the request. A copy of plaintiff's request is attached at Tab A.

5. In response to plaintiff's FOIA request, NARA's FOIA Officer carried out a search for responsive documents by contacting key staff in offices that would have worked on issues

3

relating to Secret Service WAVES records, including of myself and staff in the Office of General Counsel, in components of the Office of Records Services—Washington, D.C., located at NARA headquarters in College Park, Maryland, and in the Office of Presidential Libraries, in Washington, D.C. Individual NARA staff members were tasked with reviewing both their paper files as well as any potentially relevant records in electronic form (including electronic mail and word processing documents) that may have been stored in any account on desktop PCs or other media. The staff forwarded to NARA's FOIA Officer any and all documents identified.

6. NARA granted plaintiff's request for expedition, as well as plaintiff's separate request for fee waiver, in correspondence from Ramona Oliver, NARA's FOIA Officer in the Office of General Counsel, dated October 20, 2006. (A copy of this document is attached at Tab B.) Four days later, NARA substantively responded to plaintiff's FOIA request, in correspondence from Ms. Oliver dated October 24, 2006, stating that a search of NARA's operational records located 336 pages of records responsive to plaintiff's request, excluding publicly available court filings. (A copy of this document is attached at Tab C.) NARA determined to release 31 pages in full and 11 in part. The 11 pages withheld in part and the remaining 294 pages withheld in full were determined to be appropriate for withholding under FOIA Exemption 5, 5 U.S.C. 552(b)(5), which allows for the withholding of information covered by privileges available in civil litigation, including the deliberative process privilege and attorney work product privilege.

7. By letter dated October 25, 2006, plaintiff appealed NARA's FOIA determinations "insofar as CREW's request was denied." The appeal was sent to the Deputy Archivist of the United States, consistent with NARA regulations at 36 C.F.R. 1250.72. A copy of plaintiff's

appeal letter is attached at Tab D. Plaintiff also asked for expedition of NARA's response to the FOIA appeal, which NARA separately granted in correspondence dated October 30, 2006, from Matthew Olsen, FOIA Specialist. (A copy of this document is attached at Tab E.)

8. In correspondence dated November 28, 2006, Deputy Archivist Lewis Bellardo responded to plaintiff's appeal on behalf of NARA, further granting the request in part and denying it in part. NARA informed plaintiff that an additional 50 pages of responsive records had been located, of which 28 pages were being released in part. With respect to the original set of withholdings, NARA released an additional 11 pages in whole and 57 pages in part under FOIA Exemption 5. A copy of the Deputy Archivist's response to plaintiff's appeal is attached at Tab F.

9. Each document that NARA continues to withhold, of which there are 77 in total, is listed in summary form in the *Vaughn* Index attached hereto at Tab G. The documents will be referred to in this Declaration by their corresponding number, appearing in the left-most column of the *Vaughn* Index. The 77 documents represent a total of 294 pages that continue to be withheld in whole or in part. All of these documents (and pages) were located as part of the searches conducted initially and later, as set out above (¶¶ 5-8).[1]

---

[1] The original count of 386 pages found to be responsive (336 found initially with an additional 50 found later), actually represented 422 pages due to counting errors. With the additional releases NARA is making with this filing, the number of pages currently being withheld in whole or in part, as represented in the Vaughn index, totals 294

5

### *NARA's Justification for Continued Withholding of Documents Under FOIA Exemption 5*

10. FOIA exemption 5, 5 U.S.C. 552(b)(5), protects against the disclosure of privileged documents that are not ordinarily available to a party in litigation. Principally, there are three types of privileged documents or communications protected by this exemption: attorney work product, attorney-client, and the deliberative process privilege applicable to the government. The exemption 5 privilege is intended to protect the decision-making processes of government agencies from public scrutiny in order to enhance the quality of agency decisions. In the present case, the overwhelming majority of withheld documents are exempt from disclosure on two grounds: first, because they represent pre-decisional evaluations, opinions, and recommendations on one or more matters related to the legal status of WAVES records under the records laws and procedures for the retention and disposition of such records; and second, because they represent communications either among government attorneys, or are the work product of attorneys and those in-house staff from whom attorneys were seeking information, either in connection with the current CREW litigation, or in anticipation of litigation about WAVES records. In all such instances, the documents comprise an exchange of ideas and suggestions, recommendations and opinions, which have accompanied various decisions made about WAVES records, including preliminary assessments by government attorneys and other staff both inside and out of NARA.

11. A large number of the documents at issue consist of e-mail, an especially candid medium used by attorneys and others to communicate. Disclosure of the contents of these e-mail

conversations would severely impede the efficient day to day workings of NARA attorneys and others on current issues, as staff would no longer feel free to discuss their ideas and render opinions, recommendations, or advice using this powerful communication tool. The chilling effect that public disclosure of such information at this time would have on the operations of government is significant: lack of candor will certainly have a negative impact on the ability of civil servants to have honest internal conversations essential to best practices in decision-making. Disclosure of memorialized preliminary evaluations and views would constrict NARA staff in expressing their views and recommendations regarding proposed responses. In my view, the quality of government decision-making is maintained at its highest if NARA and other agency staff are able to completely focus on expressing their views openly and honestly, without simultaneously being distracted out of a concern that those very same views might become publicly available in the near future.

12. *Segregability.* Each document that has been withheld was evaluated to determine if any information could be reasonably segregated and released. In a number of instances, NARA took additional actions to release segregable information, including, for example, the header information contained in otherwise withheld e-mail communications. The remaining documents determined to be withheld in whole or in part contained no further meaningful portions that could not be released without destroying the integrity of the document, or if release of certain facts would reveal the author's analysis and deliberations. Documents representing attorney work product are not, however, subject to the same strict segregability requirement.

13. In the remainder of this declaration, I explain NARA's and the government's deliberative and attorney processes with respect to the status, maintenance, and disposition of WAVES records, by grouping the documents into four logically distinct categories. Where applicable, I will also at greater length provide a separate justification regarding why most of the material is additionally covered by the attorney work product privilege.

**Category A: The Government's Deliberations on the Disposition of WAVES Records**

14. NARA has always understood WAVES records to be those records generated by the "Worker and Visitor Entrance System" created for the purpose of controlling and monitoring access to the White House Complex. The U.S. Secret Service formally submitted to NARA's records appraisal division proposed Federal Records Act schedules for WAVES records in its custody in 1990 and 1993. A revised schedule was resubmitted in 1996 and published in the *Federal Register*. Under the Federal Records Act, 44 U.S.C. § 3303a, agencies routinely submit to NARA proposed agency records schedules in draft form, which are in turn reviewed by one or more NARA archivists who make the important appraisal recommendations regarding the temporary or permanent nature of the records contained therein (i.e., how long records shall be retained, in what format, etc.). In the ordinary course of business, NARA expects that there will be many back and forth, deliberative, and pre-decisional communications among NARA archivists and an agency records officer and others at the submitting agency, and in some instances attorneys at NARA and the agency, before a schedule is in sufficiently final form to warrant a notice for public comment in the *Federal Register*, pursuant to 44 U.S.C. 3303a(a). In this case, the proposed schedules submitted in the 1990s were withdrawn.

15. With respect to the proposed WAVES records schedules, in the intervening years, and especially after 1995, from time to time NARA staff (including myself) were involved in discussions and meetings with representatives of the U.S. Secret Service, and counsel in one or more components of the Executive Office of the President and the Department of Justice, regarding the pending issues surrounding the legal status of WAVES records, including how USSS proposed to transfer possession of the records to the White House, and how USSS would proceed to manage and dispose of the records (or specific portions thereof) remaining in the custody of USSS. Documents 1 - 11 on the Vaughn index, responsive to either of plaintiff's requests (2) or (3) (*see* ¶ 4, *supra*), were all generated in connection with an ongoing, inter-agency deliberative process connected with reaching a final decision on what was a formerly pending WAVES records schedule at NARA.

16. In the case of document 2, I am informed that it consists of the handwriting of NARA archivist Richard Marcus. This document contains the contemporaneous notes of its author taken in connection with meetings held to work through issues concerning the legal status of WAVES records, and thus is both deliberative and pre-decisional in nature.

17. NARA is making a discretionary release of a segregable factual portion of Document 3, which consists of a one page, undated cover memorandum entitled "U.S. Secret Service White House Division Workers and Visitors Entrance System (WAVES), Job No. N1-87-93-03," as well as an attached records schedule previously released to plaintiff. Although undated, the document appears to have been drafted sometime shortly after receipt of the underlying revised draft records schedule in 1996. In the still-withheld portion of the cover memorandum, it goes

on to discuss various legal and recordkeeping issues concerning WAVES records. In light of the subsequent history of NARA deliberations on the issue of the status and disposition of WAVES records, the document is clearly deliberative and pre-decisional in nature.

18. Documents 12 - 14 are responsive to plaintiff's categories (2) and/or (3) (*see* ¶ 4, *supra*), but may be withheld because they are privileged as deliberative communications on matters of law and policy under the records laws. At the end of the Clinton Administration, an Associate Counsel to the President and counsel at the Secret Service together penned a Memorandum, dated January 17, 2001, to myself, as NARA General Counsel, in which recommendations were made regarding the disposition of what were termed "certain Presidential Records created by the USSS," including, WAVES records. *See Vaughn* Index, Document 13. The memorandum analyzes the status of the Clinton Administration WAVES and related records, including a discussion of how USSS was currently treating and proposed to treat specific fields of data contained within such records in terms of transfer to the White House and ultimate disposition of the records. Document 12 consists of handwritten notes that I set down in connection with a phone conversation held with Tom Dougherty of the U.S. Secret Service on December 8, 2000, which was held prior to my receipt of Document 13 (dated Jan. 17, 2001), jointly authored by Mr. Dougherty. As such, I consider my notes to have been both deliberative and pre-decisional in connection with obtaining further background on the status of WAVES records. I also consider my notes to be attorney work product, for the reasons stated *infra*, ¶ 23. Document 14 is my response, dated January 19, 2001, to the January 17 memo (Document 13), and reflected my then understanding of how these records would be treated and how NARA intended to

proceed in working further with USSS. I consider my response to have been deliberative and pre-decisional on the issues discussed, in light of all the surrounding developments.

19. Documents 15, 15a, and 16 on the *Vaughn* Index, responsive to either of plaintiff's requests (2) or (3) (*see* ¶ 4, *supra*), date from March and April 2001, and reflect deliberations on legal and recordkeeping issues concerning the transfer and disposition of WAVES records. Document 15a constitutes written notes of a NARA archivist, created in response to the sequence of documents 13, 14 and 15, in which he expresses his questions, comments, and opinions, and thus is deliberative. Document 17 is a facsimile that I transmitted to another NARA employee forwarding copies of the deliberative communications contained in Documents 13 and 16, and in which I recounted a deliberative communication between myself and an Associate Counsel to the President.

20. On or about September 30, 2004, NARA received an e-mail from an Associate Counsel to the President, attaching a draft document providing informal views on one way to address the disposition of WAVES records, jointly authored by an Associate Counsel to the President and a Special Assistant to the Director of the U.S. Secret Service, dated July 29, 2004, with the title "Disposition of Certain Presidential Records Created by the USSS." *See Vaughn* Index, Documents 18 & 18a. Receipt of the July 29, 2004 memorandum in turn document led to an internal discussion among NARA staff regarding the proposal contained in the document, as well as a more technical discussion of how the U.S. Secret Service was purporting to manage the various fields contained in WAVES records. Documents 19 - 30 primarily consist of a series of e-mail exchanges, mostly internal to NARA counsel and staff, but also involving DOJ and the

Office of Counsel to the President, on various matters related to the retention of WAVES records, that are also responsive to paragraphs (2) or (3) of plaintiff's FOIA request (*see* ¶ 4, *supra*). Document 26, from an unknown NARA author, contains a date contemporaneous with these e-mail exchanges, and similarly analyzes issues surrounding the transfer and disposition of WAVES records maintained by USSS. Document 29 is also separately responsive to plaintiff's request (1), to the extent I described in this e-mail my conversation with USSS staff regarding issues related to the retention of WAVES records by USSS, as well as the legal advice I gave at the time with respect to then-current USSS practices. All of the above-referenced documents in this paragraph are covered by the deliberative process privilege for the reasons noted above.

21. Document 31 consists of six pages representing excerpts from a powerpoint presentation dated July 2005, with the first page including the wording, "USSS Presidential Protective Division" and "Presentation to the U.S. National Archives and Records Administration." The document discusses in bullet point presentation format various issues concerning WAVES records and other access control records (ACR), including with respect to transfer and disposition. The document also contains my handwritten annotations. This document originated as part of a presentation given by the USSS to attorneys from NARA, the Department of Justice, and the Office of Counsel to the President, as well as an employee of the White House Office of Records Management, in connection with ongoing legal and policy deliberations regarding WAVES and ACR records. The presentation itself contains an "Objectives" page that summarizes and makes recommendations regarding various policy options. The document is responsive to plaintiff's requests (2) and (3) (*see* ¶ 4, *supra*). In context, and especially given its

fragmentary nature, the document is both deliberative and pre-decisional, and otherwise constitutes attorney work product.

22. Documents 32 and 33 consist of handwritten notes of two NARA archivists, both of which reference the disposition and transfer of WAVES records. I am informed by staff that document 32 represents the contemporaneous notes of NARA archivist Maggie Hawkins taken during the powerpoint presentation represented by document 31, and that document 33 represents notes of NARA archivist Stephen Cooper from an undetermined date. These documents are responsive to plaintiff's request (3) (*see* ¶ 4, *supra*). In context, these notes are also deliberative and pre-decisional on the subject of the transfer and disposition of WAVES records.

23. ***Attorney Work Product Doctrine.*** Documents 5 - 25 and document 27 - 31 are separately covered by the attorney work product doctrine, which protects materials prepared by an attorney, or by a non-attorney at an attorney's direction, in reasonable anticipation of litigation or in connection with litigation counseling. Documents 5 - 30, with only the exception of Document 21, all were either authored by me or sent to me in my capacity as NARA General Counsel. (Although I was not cc'd on Document 21, the e-mail comprising the document was penned in direct response to my request – embodied in Document 19 – for views of NARA staff on the initial joint memorandum submitted by the White House and USSS on WAVES records.) At all times since the original submission of the WAVES records schedule for clearance, I believe NARA staff have fairly considered the likelihood of litigation over the record status of WAVES records to be high. This substantial likelihood of litigation over WAVES records arose

from the fact that many parties might wish to file FOIA requests seeking to obtain records containing information on individuals who visited the White House. Because such FOIA requests would involve the question of whether these records were "federal" or "presidential," and therefore possibly not subject to FOIA during the incumbent Administration, NARA employees believed that the determination that WAVES records are presidential records would likely become the subject of litigation. The reasonableness of the belief was confirmed by the subsequent litigation filed by CREW and other parties, including in connection with the present lawsuit. Finally, the attorney work product doctrine separately applies to the powerpoint presentation described *supra*, ¶ 21, for the reasons there described.

### Category B: Comments Made on Pending *Judicial Watch* Litigation

24. On or about February 28, 2006, the public interest group Judicial Watch filed a FOIA lawsuit against the U.S. Secret Service for access to, *inter alia*, WAVES records. As part of its separate FOIA lawsuit here, plaintiff CREW has requested all records relating to the lawsuit captioned *Judicial Watch v. U.S. Secret Service,* No. 06-310 (D.D.C.) (*see* category (4), *supra* ¶ 4). Documents 34 - 44, and 53, on the *Vaughn* Index were found to be responsive to plaintiff's request, but have been withheld in part. The withheld portions of each of these documents consist of candid discussions between myself and Justice Department attorneys regarding the effect, if any, of the *Judicial Watch* lawsuit on the legal status of WAVES records for purposes of the recordkeeping laws, as well as discussions among NARA staff regarding same. These types of communications are of the type that would normally occur within an agency and

between agencies on subjects that relate to issues filed in litigation, and are deliberative in context.

25. With the exception of documents 38 and 39, the remaining documents in Category B (documents 34-37, 40-44, and 53) also consist of attorney work product, either as direct communications between DOJ and NARA on a matter in litigation, or as communications responding to questions I directed to NARA staff again on matters related to the litigation.

**Category C: Deliberations On WAVES Records Contemporaneous With Ongoing Litigation**

26. On May 9, 2006, Associate Counsel to the President Jennifer Brosnahan sent an e-mail addressed to me and others, requesting NARA's review of a draft nonpublic legal advice memorandum from the Department of Justice's Office of Legal Counsel ("OLC") on WAVES records, along with a draft Memorandum of Understanding ("MOU") between the White House Office of Records Management and the U.S. Secret Service on the status and handling of WAVES and ACR records. *See Vaughn* Index, Document 45. Given the sensitivity of the draft documents in question and at least one pending FOIA lawsuit for WAVES records, it was important that the documents be fully vetted by NARA as well as other agencies. Documents 46 - 52 consist of the e-mail communications that transpired, comprising a series of candid comments by lawyers and other staff representing NARA, the Secret Service, the Office of Counsel to the President, and the Department of Justice on specific matters raised in the draft documents, many of which were shared on an inter-agency basis. The kinds of deliberations involved in these documents on matters of both substance and particular wording are typical of

15

what takes place every day at the highest levels of the government. They constitute pre-decisional opinions of attorneys and others. They also consist of exchanges of views on legal issues within the scope of the attorney work product privilege, especially given that the *Judicial Watch* lawsuit already was a matter of public record. All of the documents described in this paragraph are responsive to either of plaintiff's requests (2) and/or (3) (*see* ¶ 4, *supra*),

27. Document 54 is an e-mail that I sent to NARA staff forwarding a FOIA request for WAVES schedules that NARA received from the Washington Post while litigation relating to WAVES records was ongoing. The document is responsive to plaintiff's category (2) and/or (3) (*see* ¶ 4, *supra*). The portions withheld discuss NARA's proposed response to the FOIA request, and also include an e-mail thread between myself and NARA staff commenting on recordkeeping issues surrounding USSS WAVES records as they related to the draft legal opinion and MOU. The FOIA request portion of the document has been disclosed.

28. Document 55 is a copy of a nonpublic legal advice memorandum from the Department of Justice's Office of Legal Counsel, dated May 11, 2006, containing legal discussion regarding WAVES records. That document was issued in connection with OLC's advisory function of providing legal advice to the Executive Branch. Neither this document nor the advice and analysis contained therein have been circulated or revealed outside the Executive Branch. To the contrary, it has been shared only with government officials and staff working on these issues and closely held by them in strict confidence. In order to ensure that legal arguments and theories may be explored candidly, effectively and in writing, it is essential that legal advice of this sort

not be inhibited by concerns about public disclosure. Because this document and its drafts (*see Vaughn* Index, documents 45, 50), contain legal analysis authored by Department of Justice attorneys in their capacity as advisers to the Executive Branch, these documents are protected under the deliberative process and attorney-client privileges, as well as by the work product doctrine. Moreover, documents 51 and 52, because they constitute communications between a DOJ attorney and myself concerning this legal advice, are also shielded by the attorney-client privilege.

29. Document 56 consists of a further request for agency recommendations and opinions from an Associate Counsel to the President, in an e-mail dated June 13, 2006, regarding matters related to the logistics of transferring WAVES records from USSS to the White House Complex and to NARA. Document 56 and responses to it embodied in documents 57 - 60 consist of a set of policy options, set out with opinions and recommendations of NARA and USSS staff. These documents, responsive to plaintiff's categories (2) and/or (3) (*see* ¶ 4, *supra*), all consist of pre-decisional deliberations on the logistics of handling WAVES records, especially in light of pending litigation regarding access issues to such records. The authors of the documents were also very much aware of their obligations to preserve records that are subject to pending litigation, and to that extent the documents represent attorney work product in that they purport to discuss the government's evidentiary obligations to one or more courts.

**Category D: Communications between DOJ Federal Programs Branch and NARA counsel on the substance of Court filings in related CREW litigation**

30. Documents 61 - 75 are litigation-related documents responsive to category 6 of plaintiff's FOIA request (*see* ¶ 4, *supra*). With the exception of document 63, this category of documents solely consists of e-mail communications authored either by Justice Department counsel representing the Department of Homeland Security in a related lawsuit filed by plaintiff CREW, or by NARA counsel responding to Justice Department requests. Many of these e-mails also attach draft briefs for NARA to review and comment upon. Document 63 is a related e-mail drafted by a NARA archivist responding to NARA counsel's request for comments on one or more positions taken by the Justice Department in litigation. This category of material represents core attorney work product, containing the opinions and recommendations of counsel at the Justice Department and at NARA on the drafting of filings with the Court in a related lawsuit involving issues related to WAVES records. The matters discussed in these documents are also covered by the deliberative process privilege, which protects candid exchanges of opinion – here, regarding what legal arguments the government should make before the Court – in a context that is clearly pre-decisional. Release of documents of this type would severely harm the ability of NARA counsel to work with the Justice Department in being able to provide their candid views on matters in litigation involving records issues generally.

*Summary*

31. NARA has been consulted throughout the process that resulted in the determination that WAVES records are covered under the Presidential Records Act. It should be stated, however,

that, while NARA has authority to determine how federal records are disposed of through the records schedule and disposition process set out in Chapter 33 of Title 44, and while NARA has considerable expertise in administering to presidential records pursuant to Chapter 22 of Title 44 once presidential records come into the legal custody of this agency, NARA has no formal records management authority under the Presidential Records Act over the presidential records of the incumbent President, and is therefore not the final decision-maker regarding whether any particular set of records is covered within the scope of the Presidential Records Act. *See* 44 U.S.C. 2203(a); *Armstrong v. Bush*, 924 F.2d 282, 290 (D.C. Cir.1991). This legal determination is a matter for the incumbent President to make, in consultation with the Department of Justice and NARA, as deemed appropriate, just as the process played out in this instance. It is my belief that whatever candid discussions took place within and by NARA concerning related issues of management and disposition of WAVES records are properly considered deliberative and pre-decisional. I also believe that institutional harm to NARA and the government would ensue if the staff of this agency acted on the belief that every such conversation memorialized in an e-mail communication or written memorandum would presumptively and contemporaneously be open and available for public scrutiny. This is especially true with respect to complicated matters, such as is the case of the presidential record status of WAVES records.

    I declare under penalty of perjury that the foregoing is true and correct.

GARY M. STERN

Date: May 7, 2007