### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND | : |
| ETHICS IN WASHINGTON | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :    Civil Action No. 07-0048 (RBW) |
| | : |
| NATIONAL ARCHIVES AND RECORDS | : |
| ADMINISTRATION, | : |
| | : |
| Defendant. | : |

_____:

### PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

### STATEMENT

Following its charted course of secrecy and expansion of executive power, this administration has reached into the files of the Secret Service to declare its records of White House visitors presidential records not subject to disclosure under the Freedom of Information Act ("FOIA"). Preceding this extraordinary step was considerable debate between the White House, the Secret Service and the Department of Justice on the legal status of these records, all overseen by the National Archives and Records Administration ("NARA"). NARA, under the direction of the Archivist, plays a pivotal and unique role in the implementation of federal record-keeping laws and is statutorily mandated to establish policies and procedures for maintaining and disposing of federal records.

At issue here is plaintiff's request under the Freedom of Information Act ("FOIA") for documents that disclose how NARA has exercised these statutory responsibilities with respect to

the status of White House visitor records. NARA has responded by eschewing its statutory responsibilities and asserting that it was merely an observer and co-equal participant in an ongoing "policy" discussion. NARA's effort to create a body of "secret law" by withholding documents that show how NARA has exercised its statutory responsibilities is in direct conflict with the FOIA's goal of opening up agency action to the light of public scrutiny.

To justify its refusal to release the requested documents NARA relies on three erroneous propositions. First, NARA argues that the documents concern a policy issue over which there was considerable debate. In fact, however, the documents concern a legal issue. Second, NARA describes its role as merely a participant in the ongoing discussions, ignoring completely its statutorily assigned role as the arbiter of whether or not a document is an agency record under the Federal Records Act. Third, NARA contends these discussions took place against a backdrop of anticipated litigation, even though such litigation was years away when most of these documents were created and at a time when there were no FOIA requests for White House visitor logs that raised even the possibility of litigation. NARA has not met its burden of proof in establishing that significant portions of the withheld documents are within the scope of Exemption 5 of the FOIA and therefore is not entitled to summary judgment as a matter of law.

## FACTUAL BACKGROUND

On September 27, 2006, plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") submitted a FOIA request to NARA seeking records related to the practice of the Secret Service to delete records from its computer system, including White House visitor records known as WAVES and ACR records, afer transferring copies to the White House. CREW's request also sought records related to three pending suits seeking White House visitor records

under the FOIA[1] as well as documents related to NARA's request that the Secret Service retain

the copies of WAVES records that it transferred to the White House.  See Complaint, Exhibit A.

CREW sought expedited processing of its request based on the widespread and exceptional

media interest in the visitor logs and the questions of government integrity raised by the Secret

Service's practice of intentionally destroying WAVES records once it transferred copies to the

White House.  Id.  CREW also sought a waiver of fees.  Id.

    CREW's request stemmed from filings in The Washington Post v. U.S. Dep't of

Homeland Security, Civ. Action No. 06-1737 (D.D.C.), which revealed that as of October 2004,

the Secret Service - - at the request of NARA - - was retaining its copies of WAVES and other

White House visitor records until a legal determination was made as to whether the White House

visitor records are agency or presidential records.  CREW was seeking the documentary record

that would explain more specifically how NARA had carried out its statutory responsibilities

with respect to these records.

    On October 20, 2006, NARA granted CREW's request for expedition.  Exhibit B to

Complaint.  Four days later, NARA advised CREW that it had located 336 pages of records

responsive to CREW's request, that it was disclosing 31 pages in full, disclosing 11 pages with

redactions, and withholding 118 pages in full as within the deliberative process privilege and

withholding 176 pages in full as within both the deliberative process and attorney work-product

privileges.  Exhibit C to Complaint.

    CREW appealed this partial denial of CREW's request on October 25, 2006.  Exhibit D

---

[1] The three lawsuits are Judicial Watch v. U.S. Secret Service, Civ. Action No. 06-310
(D.D.C.), Democratic National Comm. v. U.S. Secret Service, Civ. Action No. 06-842 (D.D.C.)
and CREW v. U.S. Dep't of Homeland Security, Civ. Action N. 06-883 (D.D.C.).

3

to Complaint.  CREW also challenged the scope and adequacy of NARA's search, explaining

that NARA's production appeared incomplete because it did not include any communications

with the Secret Service.  Moreover, NARA had refused in a follow-up telephone conversation

with CREW's counsel to identify whether the agency was withholding any records responsive to

this category of CREW's request.  Id.    In addition, NARA failed to produce or otherwise

account for any documents that addressed the issue of the Secret Service's document destruction.

Id.  And with respect to NARA's copies of publicly filed court documents, CREW made clear

that it was seeking only those records that contain any marginalia.  Id.

On November 28, 2006, Deputy Archivist Lewis Ballardo granted CREW's appeal in

part and denied it in part.  Specifically,  he identified an additional 50 pages of responsive

documents that NARA had located and produced 28 of those pages with redactions.  NARA

further released 11 pages in whole from the original set of documents and another 57 pages in

part.  Exhibit E to Complaint.

On January 12, 2007, CREW filed its complaint in this action.  Pursuant to a jointly

proposed briefing schedule, NARA has now moved for summary judgment.

## STATUTORY BACKGROUND

### The FOIA

The FOIA, 5 U.S.C. § 552, is a mandatory disclosure statute that requires federal

agencies to release requested records to the public upon a request made by any person, unless

one or more of nine statutory exemptions apply.  The FOIA was enacted to "pierce the veil of

administrative secrecy and to open agency action to the light of public scrutiny."  Dept of the Air

Force v. Rose, 425 U.S. 352, 361, 96 S. Ct. 1592, 1599 (1976) (quotation omitted).  The FOIA

allows citizens to know "what the government is up to, <u>U.S. Dep't of Justice v. Reporters Comm.</u> <u>for Freedom of the Press</u>, 489 U.S. 749, 773, 109 S. Ct. 1468, 1482 (1989), *reh'g denied*, No. 02-409, 2004 WL 108633 (U.S. May 17, 2004), and acts as a check against corruption by holding the government accountable to those it governs. <u>NLRB v. Robbins Tire & Rubber Co.</u>, 437 U.S. 214, 242, 98 S. Ct. 2311, 2327 (1978).

Agency records not subject to a FOIA exemption must be disclosed upon the agency's receipt of a proper request. Such request must reasonably describe the records sought, 5 U.S.C. § 552(a)(3)(A), and must be made in accordance with the agency's published FOIA regulations. 5 U.S.C. § 552(a)(3)(A)(ii).

Upon receipt of a FOIA complaint, the district has jurisdiction to "enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). In a FOIA action, the agency bears the burden of justifying its failure to disclose the requested documents. <u>Id.</u> The agency does so through its <u>Vaughn</u> index or declarations. <u>Summers v. U.S. Dep't of Justice</u>, 140 F.3d 1077, 1080 (D.C. Cir. 1998); <u>Vaughn v. Rosen</u>, 484 F.2d 829, 823 (D.C. Cir. 1973).

**The Federal Records Act**

The Federal Records Act ("FRA") is a series of statutes that govern the creation, management and disposal of federal records. <u>See</u> 44 U.S.C. §§ 2101-2118, 3101-3107 and 3301-3324. The FRA grants to NARA, the nation's record-keeper, the statutory authority to "provide guidance and assistance to Federal agencies with respect to ensuring adequate and proper documentation of the policies and transactions of the Federal Government and ensuring proper records disposition." 44 U.S.C. § 2904(a). NARA's archivist is responsible for promulgating

standards, procedures and guidelines concerning records management, 44 U.S.C. § 2904(c)(1),

conducting inspections of the records and practices within and between federal agencies, id. at §

2904(c)(7), and reporting to Congress any violations of the FRA.  Id. at § 2115(b).

The Archivist also plays a "key role in the disposal of records."  Armstrong v. Bush, 924

F.2d 282, 285 (D.C. Cir. 1991).  Only the Archivist is authorized to approve the disposition of

records and only where they "are no longer needed by the agency" and they "do not have

'sufficient administrative, legal, research, or other value to warrant their continued preservation

by the Government.'"  Id., quoting 44 U.S.C. § 3303(a).  Agency heads are required to notify the

Archivist of any unlawful removal or destruction of records and upon an agency head's failure to

do so, the Archivist is to request that the Attorney General initiate an action to recover the

records and notify Congress.  Id. at § 2905(a).

## ARGUMENT

### I.  STANDARD FOR SUMMARY JUDGMENT IN FOIA CASES

Summary Judgment is appropriate so long as there are no material facts at issue and no

fact "susceptible to divergent inferences bearing upon an issue critical to disposition of the case."

Alyeska Pipeline Serv. v. EPA, 856 F.2d 309, 314 (D.C. Cir. 1988).  Motions for summary

judgment in FOIA cases are governed by Rule 56 of the Federal Rules of Civil Procedure, which

provides that judgment shall be rendered if "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with affidavits, if any, show that there is no

genuine issue as to any material fact."  Fed. R. Civ. P. 56(c).

In a FOIA lawsuit, the agency has the burden of justifying nondisclosure, and it must

satisfy its burden by submitting detailed affidavits or declarations that adequately identify the

6

documents at issue and explain, beyond conclusory assertions, why they fall under the claimed

exemptions. <u>See</u> 5 U.S.C. § 552(a)(4)(B) (2000); <u>See</u> <u>also</u> <u>Summers v. Dep't. of Justice</u>, 140

F.3d 1077, 1080 (D.C. Cir. 1998).  In order for summary judgment to be available to the agency,

it must prove that it has fully discharged its obligations under the FOIA, after the underlying

facts and inferences drawn from them are construed in the light most favorable to the FOIA

requester.  <u>Miller v. United States Dep't. of State</u>, 779 F.2d 1378, 1382 (8th Cir. 1985).  Here,

NARA has failed to prove that it has fully met its statutory obligations under the FOIA, and

therefore CREW is entitled to summary judgment as a matter of law.

## II. NARA HAS NOT MET ITS BURDEN OF DEMONSTRATING THAT ALL OF THE WITHHELD DOCUMENTS FALL WITHIN EXEMPTION 5 AND CREW IS ACCORDINGLY ENTITLED TO SUMMARY JUDGMENT.

Exemption 5 of the FOIA protects from disclosure "inter-agency or intra-agency

memorandums or letters which would not be available by law to a party other than an agency in

litigation with the agency."  5 U.S.C. § 552(b)(5).  Here NARA has withheld approximately 294

pages of documents under Exemption 5, claiming that the documents are within either the

deliberative process privilege, attorney work-product doctrine, or the attorney-client privilege.

For the Court's convenience, plaintiff addresses herein the four categories of documents

as outlined in NARA's memorandum in support of its motion for summary judgment ("D's

Mem.") for which NARA has asserted Exemption 5:  (1) disposition of WAVES records, (2)

documents regarding the Judicial Watch litigation over WAVES records, (3) documents

concerning policies for retaining WAVES records and (4) communications between Department

of Justice ("DOJ") attorneys and NARA concerning draft legal briefs.  To the extent plaintiff no

longer contests any particular withholdings within these categories, plaintiff so notes below.

7

### A.  Disposition of WAVES Records[2]

As part of its record-keeping management and oversight responsibilities, NARA acts on proposed records schedules that agencies submit to NARA proposing disposition of specified records.  44 U.S.C. § 3303a.  Although the submitting agencies provide their assessments of the long-term need and usefulness of the scheduled records, it is the Archivist with whom the final decision lies to decide whether or not an agency may dispose of specific categories of records. Id.  See also Armstrong v. Bush, 924 F.2d at 285.

Here, NARA has withheld documents that reflect how NARA has exercised its statutory responsibility in acting upon agency-proposed records disposition schedules.  Specifically, NARA has withheld document numbers 3-5 and 7[3] as within the deliberative process privilege.

In order to fall within the protection of Exemption 5, NARA must demonstrate both that the communication in question is pre-decisional and that it is deliberative.  Wolfe v. HHS, 839 F.2d 768, 774 (D.C. Cir. 1988) (en banc).  To establish that the material in question is pre-decisional, NARA must demonstrate "what deliberative process is involved, and the role played by the documents in issue in the course of that process."  Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 868 (D.C. Cir. 1980).  In deciding whether a document is pre-decisional, courts will often look at the flow of the document through the decision-making chain.  Thus, a document from a subordinate to a superior official is more likely to be pre-decisional than one from a superior to a subordinate.  Id.

---

[2] Plaintiff no longer contests withholdings identified in defendant's Vaughn Index as document numbers 1, 2, 4, 6 and 8-11.

[3] References are to the document numbers on the Vaughn Index accompanying the declaration of Gary Stern.

In establishing that a withheld document is deliberative, NARA must distinguish between materials that are purely factual and therefore beyond the scope of Exemption 5 and materials that are deliberative and therefore protected from disclosure.  See, e.g., Environmental Protection Agency v. Mink, 410 U.S. 73, 91, 93 S. Ct. 827, 838 (1973) (factual material not protected from disclosure merely because it was placed with matters of law, policy, or opinion).

Document number 3 is an undated one-page memorandum that Mr. Stern, NARA's General Counsel, describes as discussing "various legal and recordkeeping issues concerning WAVES records."  Declaration of Gary M. Stern ("Stern Decl."), ¶ 17.  As described, this document was not produced in the process of formulating policy or advice regarding WAVES records, but rather is a statement of the agency's legal position.

Even if this undated document preceded NARA's decision with respect to the specific proposed records schedule the Secret Service had submitted, still it is not pre-decisional. Instead, this document reflects the law that NARA actually is applying as it evaluates the records schedules submitted by agencies.  Compare Tax Analysts v. IRS, 117 F.3d 607, 616-617 (D.C. Cir. 1977) (field service advice memoranda not pre-decisional because they constitute "statements of an agency's legal position.").  Here, as in Tax Analysts, the document at issue did not precede the agency's decision regarding its overall legal position, just the application of that position to a particular case.  As such it is a non-deliberative attempt to develop a body of coherent interpretations of the records schedules of the White House visitor logs.  Id. at 617.

Document numbers 5 and 7 are email communications from Mr. Stern, acting in his position as NARA's General Counsel, to NARA staff regarding what "further actions" they should take with respect to the Secret Service WAVES records schedules.  These superior-to-

subordinate authoritative instructions to NARA staff do not reflect a deliberative process at work. See Evans v. U.S. Office of Personnel Management, 276 F.Supp.2d 34, 41 (D.D.C. 2003).[4]  Moreover, NARA has not established -- as it must -- that it has never implemented the opinions or analysis contained in these documents, has never incorporated them into final agency policy or programs, never referred to them in a precedential fashion or otherwise treated them as if they constitute agency protocol.  NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 151, 95 S. Ct. 1504, 1517 (1975); Tax Analysts, 117 F.3d at 617-618.

NARA also argues that the documents must be protected from public disclosure to prevent "public confusion."  D's Mem. at 15.  This argument is undermined by the fact that NARA released the proposed records schedules themselves, with no documentation explaining what, if any, action NARA took with respect to the schedules.  Clearly the risk of public confusion is heightened by the agency's refusal to turn over any explanatory materials.  Thus, the purpose behind the deliberative process privilege would be thwarted, not advanced, by allowing the agency to shield from public view any explanation for the exercise of its statutory responsibilities.

Indeed, given the multiple lawsuits concerning the legal status of the White House visitor records, the cryptic references in those lawsuits to NARA's role and NARA's statutory responsibility to determine a record's status as an agency record worthy of preservation, it is

---

[4] Evans involved a memorandum from the agency's Office of General Counsel ("OGC") relating to the use of multiple certificates to fill certain positions that was prepared by an OGC staff member in response to an inquiry from a program office of the agency.  Reasoning that the OGC memorandum was a statement of that office's legal position on a policy, the court concluded that the memorandum was not exempt as a deliberative or pre-decisional document. Id. at 41.

imperative that these documents be released to clear up public confusion.  By insisting on

anonymity for its role and views, NARA appears to be complicit in a government-wide effort to

prevent the public from learning the truth behind the radical shift in position on the status of

White House visitor records.  Not only is this contrary to the fundamental purposes of the FOIA,

but it risks the creation of a "body of secret law used by [the agency] in the discharge of its

regulatory duties and in its dealings with the public, but hidden behind a veil of privilege . . ."

Coastal States, 617 F.3d at 868.

        NARA's claims of public confusion also rest on a fundamental misconstruction of the

agency's role here.  According to NARA, there is a heightened risk of public confusion should

these documents be disclosed because NARA "is not the final arbiter under the Presidential

Records Act of whether a document qualifies as a presidential record," D's Mem. at 15.  NARA,

is, however, the final arbiter under the FRA of whether a document is an agency record that must

be preserved or can, instead, be destroyed.  According to NARA's own documents and its

Vaughn index, the Secret Service first sought the views of NARA under the FRA by submitting

disposition schedules for its White House visitor logs.  That NARA may have subsequently

become co-opted by the White House to the degree that it now espouses a different view cannot

negate NARA's views on the status of these records under the FRA -- something within NARA's

expertise and jurisdiction.

        NARA also claims these email communications are protected by the attorney work-

product doctrine.  D's Mem. at 15.  While NARA concedes that no litigation was yet pending on

the status of WAVES records when NARA employees composed these messages, it nevertheless

argues essentially that because these documents were written by NARA attorneys or penned for

NARA attorneys by NARA archivists in response to specific questions counsel posed related to the legal status of WAVES records, they should be afforded protection under the work-product doctrine. D's Mem. at 15-16.

The purpose of the work-product doctrine is to ensure that "a lawyer [can] work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel," and to permit attorneys to "assemble information, sift what [they] consider[] to be the relevant from the irrelevant facts, prepare [their] legal theories and plan [their] strateg[ies] without undue and needless interference." Hickman v. Taylor, 329 U.S. 495, 510-11, 67 S. Ct. 385, 393 (1947). To this end, the doctrine "provides a working attorney with a 'zone of privacy'" so long as the document at issue was "created for use at trial or because a lawyer or party reasonably anticipated that specific litigation would occur . . ." Coastal States, 617 F.2d at 864.

While it is true that for the attorney work-product doctrine to apply litigation need not be actual or imminent, it "does not attach until at least some articulable claim, likely to lead to litigation, has arisen." Id. at 865. It is not enough that some unspecified claim may conceivably be brought by some as yet unidentified party at some unknown point in the future. Id. As the courts have observed, "the policies of the FOIA would be largely defeated" if agencies were permitted to withhold attorney-created documents "simply because litigation might someday occur." Senate of P.R. v. U.S. Dep't of Justice, 823 F.2d 574, 587 (D.C. Cir. 1987), *citing* Coastal States, 617 F.2d at 865.

The documents at issue here were created in 1997 and 2000, years before there were even any FOIA requests for White House visitor logs. Yet NARA now claims that unnamed NARA employees believed that "many parties might wish to file FOIA requests" for these records and

that such requests would "likely lead to litigation over the status of WAVES records."  Stern

Decl. at ¶ 23.  NARA has not identified a single FOIA request for these records prior to January

20, 2006, when Judicial Watch filed its FOIA request with the Secret Service for WAVES

records of visits by convicted lobbyist Jack Abramoff -- a point in time nine years after the

creation of some of the disputed documents and a lawsuit that did not, in any event, raise the

issue of the legal status of WAVES records.[5]  On this record NARA's purported belief about the

likelihood of litigation is based, at most, on rank speculation, not the reasonable likelihood that

the law requires.  Moreover, while NARA now claims that unnamed employees "believed that

the determination that WAVES records are presidential records would likely become the subject

of litigation," id., it is not at all clear that this is the view expressed in the withheld documents.

For all we know these communications express NARA's view that White House visitor records

are agency records subject to the FOIA -- a view that, had it prevailed, would not have led to

litigation as the documents would have been publicly accessible.

In short, it simply is not reasonable for an agency to claim -- as NARA does here -- that it

had an expectation of litigation based solely on the fact that years after the records in dispute

were created, litigation in fact ensued.  Accordingly, these records are not within the scope of the

attorney work-product doctrine.

**2.  2001 WAVES Record Retention Memoranda**

NARA has also withheld a number of documents related to what it describes as a

proposal "concerning the management of WAVES records and the transfer of certain Clinton

---

[5] The Secret Service actually processed Judicial Watch's FOIA request and released at
least some of the requested records, going so far as to enter into a court-ordered stipulation of
disclosure.

Administration WAVES records" from the Secret Service to the White House that was made near the close of the Clinton Administration. D's Mem. at 17.[6] According to NARA, document numbers 12-14, 15 and 17 are pre-decisional and within the scope of the deliberative process privilege and the attorney work-product doctrine.

As NARA's description of these documents makes clear, however, they concern NARA's exercise of its statutory responsibility to act on records schedules agencies submit to the Archivist; in this regard NARA has final disposition authority. For example, document number 13 is a memorandum from the White House and the Secret Service concerning the management, transfer and disposition of visitor logs, while document number 14 is NARA's response. By their own description these are not documents that were created by NARA to formulate a policy, but rather represent NARA's discharge of its statutory duty to act on agency proposals regarding the disposition of its records. As such, they do not meet the requirements of the deliberative process privilege. See, e.g., Tax Analysts v. IRS, 117 F.3d at 616-617.

This conclusion is not altered by NARA's labeling of these documents as "policy proposals," D's Mem. at 17. Agency recommendations to NARA on the disposition of agency records, even those that include the views of the White House, and NARA's response are legal issues involving NARA's exercise of its statutory authority under the FRA. Nor are these documents "deliberative" within the meaning of Exemption 5 of the FOIA. They set out NARA's technical advice and legal position on the scheduling of White Visitor logs and, like the advice and technical assistance memoranda at issue in Tax Analysts, are neither pre-decisional

---

[6] In this category, which includes document numbers 12, 13, 14, 15, 15a, 16 and 17, plaintiff is not challenging document number 15a.

nor deliberative.

Nor, as NARA claims,[7] are these documents protected by the attorney work-product doctrine, as there was no reasonable anticipation of litigation at the time of their creation. These documents concern a proposal submitted in 2001, by the Clinton White House. They cover a time period that predates by years the first lawsuit seeking White House visitor logs from the Secret Service. NARA's currently claimed belief as to the possibility of litigation over the disposition of WAVES records is simply not tied to any articulable claim that had arisen in 2001.

### 3. 2004 WAVES Record Retention Memoranda and Related Documents

NARA has also withheld documents related to another so-called "proposal" in 2004 for the disposition of White House visitor records not previously identified. See D's Mem. at 19.[8] Like the documents concerning a related proposal by the Clinton White House, these do not fall within the deliberative process privilege because they consist of the legal views of NARA's general counsel on questions regarding the transfer and disposition of WAVES records. For example, document number 26 is described as "pre-decisional" merely because it was created prior to NARA acting on the joint submission of the White House and the Secret Service. D's Mem. at 19. As in Tax Analysts, however, this does not transform a document that reflects NARA's exercise of its statutory duty to provide guidance and assistance to agencies into a deliberative, pre-decisional document.

NARA also argues that disclosing the contents of this document will risk public

---

[7] See D's Mem. at 18-19.

[8] This includes document numbers 12-33; plaintiff does not challenge withholdings in document numbers 15a, 19-23, 25, 28, 32-33.

confusion "about the agencies' views on the appropriate procedures for the maintenance and disposition of WAVES and ACR records." D's Mem. at 20. To the contrary, it is NARA's failure to reveal publicly the "secret law" reflected in these documents that risks public confusion. Indeed, it appears that what the government is really trying to cover up is not what the appropriate maintenance and disposition procedures are, but rather that there was disagreement within the executive branch over how to apply those procedures to Secret Service records of White House visitors. This is an improper use of FOIA's exemptions that should not be countenanced by this Court.

Further, NARA claims that disclosure of these documents will "chill inter-agency communication as "it will make agencies less likely to seek input from other agencies on draft policy proposals . . ." D's Mem. at 22. This concern also is misplaced. First, the documents at issue do not reflect a policy, but rather NARA's exercise of its statutory responsibilities. More fundamentally, NARA's role in this process is mandated by the FRA and is not, as NARA suggests here, dependent on the desire of any particular agency to seek NARA's views on the disposition of agency records.

In addition, NARA argues that these documents are protected by the attorney work-product doctrine because they were authored by attorneys and because someone at NARA believed they concerned a subject over which there would be future litigation. D's Mem. at 20. The complete absence of any reasonable basis to anticipate litigation that, in any case, did not occur until years later and that was clearly not reasonably foreseeable at the time of the documents' creation negates any legitimate claim of protection under Exemption 5.

NARA has also withheld a hard copy of a power point slide presentation created by the

16

Secret Service for NARA that discusses WAVES and ACR retention issues.  Stern Decl., ¶ 21.

NARA describes the document as deliberative and pre-decisional "given its fragmentary nature."

Id.  Quite apart from the fact that this description is virtually meaningless, it does not establish

that the presentation contains any deliberative information.  Purely factual material like that

contained in the power point presentation is not within the reach of Exemption 5.  Mink, 410

U.S. at 91, 93 S. Ct. at 838; Coastal States, 617 F.2d at 867.

Moreover, NARA was exercising its statutory authority to provide its input and legal

conclusions on the issues raised by the Secret Service's presentation.  Merely attending a

presentation on an issue for which the Secret Service was seeking NARA's views does not

constitute pre-decisional deliberative process that Exemption 5 was intended to protect.

Equally flawed is NARA's argument that this presentation is protected by the attorney

work-product doctrine.  The mere participation of an attorney does not, as NARA suggests,

transform the document into attorney work-product.  Rather, there must be reasonably

foreseeable litigation, which was not the case here.

### 4.  Documents Related to the Pending Judicial Watch Litigation

NARA has also withheld a group of documents related to a pending lawsuit, Judicial

Watch v. U.S. Secret Service, Civ. Action No. 06-310 (D.D.C.).[9]  Judicial Watch's suit is based

on its FOIA request for records of White House visits by Jack Abramoff.

While NARA attempts to cloak many of these documents with the protection of the

deliberative process privilege, it has failed to identify exactly what decision it was participating

---

[9] These documents include document numbers 34-44 and 53.  CREW does not contest the
withholding of document numbers 38, 39, 41 and 43.

in.  Nor can any such decision reasonably be gleaned from the litigation itself given that NARA

is not a party to the <u>Judicial Watch</u> lawsuit.  Moreover, while NARA has described at least some

of the documents as "candid" discussions of the legal status of WAVES records, D's Mem. at

24., the <u>Judicial Watch</u> suit does not involve the issue of whether the requested visitor records

are presidential or agency records.  Instead, the Secret Service processed Judicial Watch's FOIA

request, agreed to be bound by a court-ordered stipulation committing the agency to produce the

requested documents by a date certain and pursuant to that stipulation, produced responsive

documents to Judicial Watch.  The only remaining dispute is whether the Secret Service

produced all responsive documents, or only a narrower subset as Judicial Watch has claimed.

     The fact that NARA lawyers and other NARA staff exchanged emails regarding the

litigation, D's Mem. at 24, does not by itself establish that the emails reflect internal

deliberations regarding a decision that NARA was making.  Nor has NARA shown that these

documents are protected by the attorney work-product doctrine.  NARA is not a party to the

<u>Judicial Watch</u> litigation and it has not established that the documents in question were prepared

for the Secret Service, the sole defendant in the lawsuit.

     In sum, that NARA may have had an interest in litigation to which it was not a party, that

individuals within NARA may have expressed views on issues potentially related to the

litigation and that they may have been candid in their views are insufficient to establish that

these documents are protected by Exemption 5.  Neither the deliberative process privilege nor

the attorney work-product doctrine sweeps so broadly as to encompass the views and analysis of

attorneys and individuals who are not themselves parties to litigation.

5.  **Deliberations on Status and Disposition of WAVES Records Contemporaneous With Ongoing Litigation.**

NARA has identified four additional categories of documents that it describes generically as consisting of deliberations on the status and disposition of WAVES records and that occurred "against the backdrop of pending litigation seeking access to WAVES records . . ."  D's Mem. at 27.  NARA has withheld these documents as within the deliberative process and attorney-client privileges and the attorney work-product doctrine.  As discussed below, most of these documents do not meet the Exemption 5 requirements.

a.  <u>Draft Memorandum of Understanding</u>

NARA has withheld document number 45, which is a draft memorandum of understanding ("MOU") between the Secret Service and the White House Office of Records Management ("WHORM").  According to NARA, the MOU documents "past practices regarding WAVES and ACR records and formalize[s] the legal status of those records and WHORM's management and custody of the WAVES and ACR records."  D's Mem. at 27.  NARA justifies the non-disclosure of the MOU as "necessarily pre-decisional" because it is an unexecuted draft.  <u>Id.</u>

The label assigned to this document by the agency -- formal, binding, precedential, final or adopted as opposed to draft or deliberative -- is not dispositive and conclusory or general assertions in an agency's declaration are not sufficient to establish that the document is exempt.  <u>Coastal States</u>, 617 F.2d at 867-68.  In order for the document to be deliberative the agency must establish that it has never implemented the proposal or analysis contained in the document, incorporated them into final agency policies or programs, referred to them in a precedential fashion, or otherwise treated them as if they constitute agency protocol.  <u>NLRB v. Sears,</u>

Roebuck & Co., 421 U.S. at 161, 95 S. Ct. at 1521.  Here, because NARA has not established

that the opinions or analysis contained in the draft MOU were not incorporated into the final

MOU that was made public, this document is not protected from disclosure by Exemption 5.

Moreover, based on NARA's description of this document, the MOU also appears to be

purely factual.  Purely factual material, however, is not exempt as deliberative under the FOIA.

Mink, 410 U.S. at 91, 93 S. Ct. at 838; Coastal States, 617 F.2d at 867.

b.  OLC Advice Memorandum

NARA has also withheld under Exemption 5 a Department of Justice Office of Legal

Counsel advice memorandum ("OLC advice memo") issued in May 2006 (document number

55).  According to NARA, the OLC advice memo contains a legal discussion regarding WAVES

records that was "issued in connection with OLC's advisory function of providing legal advice to

the Executive Branch."  D's Mem. at 28.

NARA relies in part on the attorney-client privilege to justify the document's non-

disclosure.  The attorney-client privilege protects confidential communications made between

clients and their attorneys when the communications are for the purpose of securing legal advice

or services.  Coastal States, 617 F.2d at 863; Mead Data Central, Inc. v. U.S. Dep't of the Air

Force, 566 F.2d 242, 252 (D.C. Cir. 1977).  To be protected under the privilege, the information

must have been confidential at the time of the communication and that confidentiality must have

been preserved since the communication.  Coastal States, supra.  Information later shared with

third parties is not within the privilege.  Mead Data Central, supra.  Moreover, information that

is obtained from third parties and communicated to agency lawyers by agency employees is not

protected "if no new or confidential information concerning the Agency is imparted in the

process."  Coastal States, supra.

Here, NARA's reliance on the attorney-client privilege to justify withholding the OLC

advice memo is completely misplaced.  NARA has no attorney-client relationship with the

Secret Service, the White House or, most importantly, the OLC.  Instead, NARA is simply the

third-party recipient of a document prepared by another agency component, the OLC, not in its

role as attorney to a client, but in its broader "advisory function of providing legal advice to the

Executive Branch."  D's Mem. at 28.  In fulfilling that function OLC did not rely on the kind of

confidential communications or "private information concerning the agency" that the attorney-

client privilege was designed to protect.  Coastal States, 617 F.2d at 863.  Rather, it was offering

the kind of  "neutral, objective analyses" that the D.C. Circuit has recognized are not within the

privilege.  Id.

Just as unavailing is NARA's reliance on the deliberative process privilege to protect this

document from disclosure under the FOIA.  NARA has not carried its legal burden of

demonstrating that the document in question is non-final.  As the D.C. Circuit has explained,

"[t]he rationale underlying the 'final opinion' exception to the deliberative process rule is to

prevent agencies from developing a body of 'secret law' veiled by the privilege of Exemption 5."

Brinton v. Dep't of State, 636 F.2d 600, 605 (D.C. Cir. 1980) (citation omitted).  All that NARA

has offered, however, is its understanding as an agency not involved directly in the OLC advice

memo that the memo "has been closely held and not circulated outside the Executive Branch."

D's Mem. at 29.  This alone, however, does not establish that the OLC advice memo is a non-

final document.

Moreover, the Secret Service in other litigation has already disclosed the contents of an

MOU executed in May 2006 and a letter from the Office of the Vice President sent in September 2006 that purport to memorialize the legal status of White House visitor logs under the FRA and the Presidential Records Act.  Given OLC's advisory role, it is difficult to imagine that either of these documents reflects a legal position inconsistent with that contained in the OLC advisory memo.  As the Second Circuit reasoned under similar circumstances, once an agency adopts a document as its policy "the principal rationale behind the deliberative process privilege evaporates; for once an agency adopts or incorporates document, frank communication will not be inhibited." Nat'l Council of LaRaza v. Dep't of Justice, 411 F.3d 350, 360 (2d Cir. 2005).

Finally, NARA claims this document is exempt under the attorney work-product doctrine, but does not even attempt to explain how there is an articulable claim NARA was involved in that would likely lead to litigation involving NARA.  Accordingly, it has not met its burden of proof.  Coastal States, 617 F.2d at 865.

c. Inter- and Intra-Agency Communications about Drafts of the MOU
and OLC Advice Memo

For the reasons cited above, NARA has also failed to establish that the inter- and intra-agency communications about the drafts of the MOU and OLC advice memo are properly withheld as deliberative process or attorney work-product documents.[10]  NARA's participation in any discussions it had with the Associate Counsel to the President, DOJ attorneys and Secret Service representatives would have been in its role as the authority on decisions concerning agency records schedules and disposition.  Thus, because NARA was merely articulating its legal position on record-keeping issues here, as in Tax Analysts, 117 F.3d at 617, documents that

_____

[10] Plaintiff does not contest the withholding of document numbers 47, 50 and 52.

22

reflect that role are not exempt.

NARA has also withheld documents that it describes as communications between White House Counsel, NARA, the DOJ and the Secret Service that were triggered by "an inquiry by an Associate Counsel to the President into the logistics of maintaining and transferring WAVES and ACR records in light of pending litigation." D's Mem. at 33. Factual communications about the "logistics" of maintaining and transferring records are hardly the kind of pre-decisional internal deliberations protected by Exemption 5.

While NARA's lawyers suggest the documents also contain "opinions of lawyers on the need to maintain WAVES and ACR records during the pendency of ongoing litigation," D's Mem. at 33, that description does not match the description found in NARA's <u>Vaughn</u> index or in Mr. Stern's declaration. Mr. Stern merely observes that the authors of these communications were "aware of their obligations to preserve records that are subject to pending litigation," Stern Decl. at ¶ 29, and that the documents "purport to discuss the government's evidentiary obligations . . ." This is no substitute for the affirmative evidence needed that the documents in fact contain legal discussions about legal obligations conducted by lawyers involved in the litigation.[11]

### III.  NARA FAILED TO CONDUCT AN ADEQUATE SEARCH FOR RESPONSIVE DOCUMENTS

Upon receipt of a properly submitted FOIA request, an agency must conduct a search that is "reasonably calculated to uncover all relevant documents." <u>Weisberg v. U.S. Dep't of Justice</u>,

---

[11] CREW is not contesting document numbers 61-75 that NARA describes as "Communications Between DOJ's Federal Programs Branch and NARA Counsel Concerning Draft District Court Filings in Related CREW Litigation," D's Mem. at 34.

705 F.2d 1344, 1351 (D.C. Cir. 1983); See also Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C.

Cir. 1990). The reasonableness of an agency's search depends, in part, on the scope of the FOIA

request and the requester's description of the records sought. See e.g., 5 U.S.C. § 552(a)(3)(A)

(requiring that a FOIA request "reasonably describe[]" the records sought). Moreover, as the

Department of Justice's Office of Information and Privacy has counseled government agencies,

FOIA requests should be interpreted "'liberally' when determining which records are

responsive." FOIA Update, Vol. XVI, No. 2 at 3, quoting Nation Magazine v. U.S. Customs

Serv., 71 F.3d 885, 890 (D.C. Cir. 1995).

    The responding agency bears the burden of proving the adequacy of its search. See, e.g.,

Patterson v. IRS, 56 F.3d 832, 840 (7th Cir. 1995); Maynard v. CIA, 986 F.2d 547, 560 (1st Cir.

1993). The agency carries this burden through the submission of "detailed, nonconclusory

affidavits." Weisberg, 745 F.2d at 1485; see also Oglesby v. Dep't of the Army, 920 F.2d 57, 68

(D.C. Cir. 1990). Toward that end, agency declarations will be deemed inadequate if they do not

identify what files were searched, what search terms were used, and do not show that the search

method was "reasonably calculated to uncover all relevant documents." Id. It is also necessary

that the agency declaration "aver[] that all files likely to contain responsive materials . . . were

searched" in order to "afford a FOIA requester an opportunity to challenge the adequacy of the

search and to allow the district court to determine if the search was adequate in order to grant

summary judgment." Id. See also Iturralde v. Comptroller of Currency, 315 F.3d 311, 313-14

(D.C. Cir. 2003). If the agency declarations do not meet this standard, summary judgment must

be denied. Landmark Legal Foundation v. EPA, 272 F.Supp.2d 59, 66 (D.D.C. 2003) ("'agency

affidavits that do not denote which files were searched, or by whom, do not reflect any

24

systematic approach to document location . . . are insufficient to support summary judgment.'") (*citing* Weisberg, 627 F.2d at 371); See also Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 326 (D.C. Cir. 1990); Founding Church of Scientology v. Nat'l Sec. Agency, 610 F.2d 824, 837 (D.C. Cir. 1979).

When judged against these standards, NARA's declaration submitted to document the reasonableness of its search falls decidedly short. All that the declaration of Mr. Stern explains is that he "contacted staff in various component offices that would have worked on issues related to WAVES records, including the Office of the General Counsel, the Office of Records Services, and the Office of Presidential Libraries." Stern Decl., ¶ 5. What NARA has failed to identify, however, is which specific files were searched using which specific search terms. At bottom, there is simply insufficient evidence from which the Court can determine whether the search NARA conducted was "reasonably calculated to uncover all relevant documents." Oglesby, 920 F.2d at 68. This conclusion is underscored by the agency's failure to affirmatively aver that "all files likely to contain responsive materials . . . were searched." Id.

Accordingly, on the basis of the record that NARA has put before this Court, its motion for summary judgment must be denied because its conclusory argument that it conducted a legally adequate search is without sufficient evidentiary support.

## CONCLUSION

For the foregoing reasons, CREW respectfully requests that the Court deny defendant's motion for summary judgment, and grant CREW's cross-motion for summary judgment. Oral argument is requested.

Respectfully submitted,


_____/s/_____
Anne L. Weismann
(D.C. Bar No. 298190)
Kimberly D. Perkins
(D.C. Bar No. 481460)
Citizens for Responsibility and Ethics
 in Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C.  20005
Phone:  202-408-5565
Fax:  202-588-5020

Attorneys for Plaintiff

Dated:  June 6, 2007

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

CITIZENS FOR RESPONSIBILITY AND   :
ETHICS IN WASHINGTON   :
   :
      Plaintiff,   :
   :
      v.   :    Civil Action No. 07-0048 (RBW)
   :
NATIONAL ARCHIVES AND RECORDS :
ADMINISTRATION,   :
   :
      Defendant.   :
_____:

## PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, plaintiff Citizens for

Responsibility and Ethics in Washington ("CREW"), respectfully cross-moves for summary

judgement in this case.  There are no material issues of fact in dispute and CREW is entitled to

judgment as a matter of law.  The points and authorities supporting this motion and in opposition

to defendant's motion are set forth in Plaintiff's Opposition to Defendant's Motion for Summary

Judgment and Memorandum in Support of Plaintiff's Cross-Motion for Summary Judgment.


Respectfully submitted,


_____/s/_____


Anne L. Weismann
(D.C. Bar No. 434584)
Kimberly D. Perkins
(D.C. Bar No. 481460)
Citizens for Responsibility and
    Ethics in Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C. 20005
Phone: (202) 408-5565

Fax: (202) 588-5020

Attorneys for Plaintiff

Dated: June 6, 2007

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
CITIZENS FOR RESPONSIBILITY AND    :
ETHICS IN WASHINGTON               :
                                   :
            Plaintiff,             :
                                   :
    v.                             :        Civil Action No. 07-0048 (RBW)
                                   :
NATIONAL ARCHIVES AND              :
RECORDS ADMINISTRATION             :
                                   :
            Defendant.             :
_____:

**PLAINTIFF'S RESPONSE TO DEFENDANT NATIONAL ARCHIVES AND RECORD
ADMINISTRATION'S STATEMENT OF MATERIAL FACTS AS TO
WHICH THERE IS NO GENUINE ISSUE**

Pursuant to LCvR 7(h), Plaintiff Citizens for Responsibility and Ethics in Washington

("CREW") hereby responds to National Archives and Records Administration's ("NARA")

statement of material facts as to which it contends there is no genuine issue and sets forth

Plaintiff's Response to Defendant's Statement of Material Facts as follows:

1. Plaintiff neither admits nor denies. This paragraph is a characterization of the

declaration of a United States Secret Service official and the declaration of NARA General

Counsel Gary M. Stern.

2. Plaintiff neither admits nor denies. This paragraph is a characterization of the

declaration of a United States Secret Service official.

3. Admitted.

4. Admitted.

5. Denied, except to admit that in its October 24, 2006 response to CREW's FOIA

request, NARA represented that it had searched its "operational records" and located 336 pages

of records.  Defendant did not assert in its response what "operational records"are or what electronic or paper files were searched for potentially responsive records.

6.  Admitted.

7.  CREW admits that by letter dated October 24, 2006, NARA identified 336 pages of documents responsive to CREW's request, disclosed 31 of those pages in full and 11 in part, and withheld in full an additional 294 pages.  The remainder of this paragraph is a characterization of the arguments made by NARA, the contents of which speak for themselves.

8.  Admitted.

9.  CREW admits that it received a letter dated November 28, 2006, from NARA Deputy Archivist Lewis Bellardo that purported to respond to CREW's appeal by identifying an additional 50 pages of responsive materials, of which it released 28 pages in part, and releasing in full an additional 11 pages of material it originally withheld while releasing in part an additional 57 pages of documents originally withheld.  The remainder of this paragraph is a characterization of the arguments made by the administrative respondent, the contents of which speak for themselves.

10.  CREW admits the first sentence.  The second sentence is a characterization of NARA's declaration and <u>Vaughn</u> index, the contents of which speak for themselves.

Respectfully submitted,


_____/s/_____
Anne L. Weismann
D.C. Bar No. 298190
Kimberly D. Perkins
D.C. Bar No. 481460
Citizens for Responsibility and
Ethics in Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C.  20005
(202) 408-5565

Attorneys for Plaintiff

Dated: June 6, 2007

3

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND | : |
| ETHICS IN WASHINGTON | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | :     Civil Action No. 07-0048 (RBW) |
| | : |
| NATIONAL ARCHIVES AND RECORDS | : |
| ADMINISTRATION, | : |
| | : |
| Defendant. | : |

_____:

## PLAINTIFF'S RULE 7(H) STATEMENT OF MATERIAL FACTS

Pursuant to LCvR 7(h), plaintiff, Citizens for Responsibility and Ethics in Washington ("CREW"), submits this statement of material facts for which there is no genuine issue.

1. CREW is a nonprofit corporation dedicated to protecting the right of citizens to be informed about the activities of government officials and to ensuring the integrity of government officials. Complaint ¶ 4.

2. CREW is committed to empowering citizens to have an influential voice in government decisions and in the government decision-making process. To accomplish this, CREW relies, in part, on the Freedom of Information Act ("FOIA") for information to assist it in providing the public with full, accurate and current information. Complaint ¶¶ 4-6.

3. On or before October 2004, NARA requested that the Secret Service retain copies of all Workers and Visitors Entrance System ("WAVES") records that the Secret Service had transferred to the White House Office of Records Management. Complaint ¶ 16.

4. The Secret Service, at the direction of the Office of the Vice President and/or the White House Office of Records Management, has communicated to NARA the view that

WAVES records are presidential records and are therefore not subject to the Federal Records

Act.  The Secret Service has agreed to maintain its copies of the WAVES records until a legal

determination is made as to whether those records are agency records or presidential records.

Complaint ¶ 17.

     5.  Both the Secret Service and the Office of the Vice President, in filings made in <u>The

Washington Post v. U.S. Dep't of Homeland Security</u>, C.A. No. 1737 (D.D.C.), have admitted

that NARA requested that the Secret Service retains its copies of WAVES records and that the

Secret Service agreed to do so pending a legal determination as to whether records created under

the White House Access Control System, which includes WAVES records and the Access

Control Records System, are presidential records.  Complaint ¶ 18.

     6.  On September 27, 2006, Plaintiff sent a FOIA request to NARA seeking records

relating to the request made by NARA to the U.S. Secret Service "that the Secret Service retain

its own copies of the Workers and Visitors Entrance System ("WAVES") records that it

transferred to the White House." Complaint  ¶ 19; Complaint Exhibit A.  CREW also sought

communications between NARA and any other governmental entity regarding the practice of the

Secret Service to erase copies of WAVES records it had transferred to the White House,

documents referring or relating to the practice of the Secret Service to delete records from its

computer system and documents related to three pending district court cases:  (I) <u>Judicial Watch

v. U.S. Secret Service</u>, C.A. No. 06-310 ( (D.D.C.), (ii) <u>Democratic Nat'l Comm. v. U.S. Secret

Service</u>, C.A. No. 06-842 (D.D.C.) and (iii) <u>CREW v. U.S. Dep't of Homeland Security</u>, C.A.

No. 06-883 (D.D.C.).  <u>Id</u>.

     7.  By letter dated October 24, 2006, NARA advised CREW that the agency had located

336 pages of documents responsive to CREW's FOIA request. Complaint ¶ 23; Complaint

Exhibit C. NARA explained that it had excluded from the request copies of publicly available

court filings. <u>Id</u>. Of the 336 pages of responsive documents, NARA disclosed 31 pages in full

and 11 pages in part with redactions pursuant to Exemption 5 of the FOIA, 5 U.S.C. §552(b)(5),

as inter- and intra-agency communications protected by the deliberative process privilege. <u>Id</u>. In

addition, NARA withheld 118 pages in full as within the deliberative process privilege and

protected by Exemption 5, and 176 pages in full as deliberative and attorney-work product also

protected by Exemption 5. <u>Id</u>.

      8. On October 25, 2006, CREW appealed the partial denial of CREW's FOIA request.

Complaint ¶ 24; Complaint Exhibit D. On the scope and adequacy of NARA's search, CREW

explained that NARA's production did not appear to be complete because it did not include any

communications with the Secret Service, as CREW had expressly requested, and NARA had

refused, in a follow-up telephone conversation with CREW, to identify whether the agency had

withheld any records responsive to CREW's request for these communications. <u>Id</u>. NARA also

failed to provide any documents that addressed the issue of the Secret Service's document

destruction. <u>Id</u>. Moreover, to the extent NARA had excluded publicly available court filings,

CREW explained that it was seeking production of those records that contain any marginalia. <u>Id</u>.

      9. As to the exemption claims, CREW challenged NARA's failure to explain the basis

for its assertion of Exemption 5 and its failure to state whether there are segregable, factual

portions of documents that could be disclosed. <u>Id</u>. CREW also explained that Exemption 5 is

not available to withhold documents that reflect how NARA has exercised its statutory record-

keeping obligations with respect to the Secret Service. <u>Id</u>. As to NARA's reliance on the

attorney-work product to withhold documents under Exemption 5, CREW challenged NARA's

failure to identify "some articulable claim likely to lead to litigation." <u>Id</u>.

      10. By letter dated November 28, 2006, NARA responded to CREW's appeal. Complaint

¶ 26; Complaint Exhibit E.  NARA defended its search as "adequate and comprehensive."  <u>Id</u>.

NARA also advised CREW that subsequent to its initial search, the agency had located an

additional 336 pages of responsive material in NARA's Office of General Counsel and

components of the Office of Records Services and an additional 50 pages of material found by

staff in the Office of General Counsel and the Office of Presidential Libraries in an unidentified

location.  <u>Id</u>.  Of those 50 pages, NARA released 28 pages with redactions under Exemption 5,

and withheld 22 pages in full also pursuant to Exemption 5.  <u>Id</u>.  NARA's letter of November 28,

2006, also advised CREW that with respect to the publicly available court filings, they contained

no marginalia.  <u>Id</u>.

      11.  With respect to CREW's appeal of NARA's exemption claims, NARA released an

additional 11 pages in whole and 57 pages in part and otherwise upheld NARA's initial

determination to withhold the remaining portions under Exemption 5.  Complaint ¶ 27.

According to NARA, the deliberative discussions reflected in the withheld documents

"constitute intra- and inter-agency deliberations with respect to the legal status of WAVES

records."  <u>Id</u>.  NARA claimed that their predecisional character was not altered "by any final

decisions that have been made with respect to the record status of WAVES records under the

records laws."  <u>Id</u>.  NARA justified its initial claim of attorney-work product privilege by its

claim that the withheld material consists of draft briefs sent to NARA from Department of

Justice attorneys prior to their filing along with emails related to those drafts, five pages of

background information on WAVES records prepared by the Secret Service in anticipation of

litigation, and documents that "reflect the mental impressions of counsel" or respond to

counsel's inquiries.  <u>Id</u>.

      12.  CREW initiated this action with the filing of its complaint on January 10, 2007.

                     Respectfully submitted,

                     _____/s/_____

                     Anne L. Weismann
                     (D.C. Bar No. 298190)
                     Kimberly D. Perkins
                     (D.C. Bar No. 481460)
                     Citizens for Responsibility and Ethics
                      in Washington
                     1400 Eye Street, N.W., Suite 450
                     Washington, D.C.  20005
                     Phone: (20) 408-5565
                     Fax: (202) 588-5020

                     Attorneys for Plaintiff

Dated: June 6, 2007

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND | : |
| ETHICS IN WASHINGTON | : |
| | : |
|        Plaintiff, | : |
| | : |
|    v. | :    Civil Action No. 07-0048 (RBW) |
| | : |
| NATIONAL ARCHIVES AND RECORDS | : |
| ADMINISTRATION, | : |
| | : |
|       Defendant. | : |

_____:

**[PROPOSED] ORDER**

Upon consideration of Defendant's Motion for Summary Judgment, Plaintiff's

Opposition thereto and Plaintiff's Cross-Motion for Summary Judgment, and the entire record

herein, and for the reasons explained in the Memorandum Opinion issued on this date, it is

hereby

**ORDERED** that Plaintiff's cross-motion for summary judgment is granted and

Defendant's motion for summary judgment be, and hereby is, **DENIED**, and it is further

**ORDERED** that within three days defendant shall produce full unredacted versions of

document numbers 3, 5, 7, 12, 13, 14, 15, 16, 17, 18, 18a, 24, 26, 27, 29, 30, 31, 34, 35, 36, 37,

40, 42, 44, 45, 46, 48, 49, 51, 53, 54, 55, 56, 57, 58, 59 and 60.

Dated: _____

                                    _____

                                      REGGIE B. WALTON
                                      United States District Court Judge