UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, ) ) ) ) Plaintiff, ) ) v. ) ) NATIONAL ARCHIVES AND RECORDS ) ADMINISTRATION, ) ) Defendant. ) ) | Civil Action No. 07-0048 (RBW) |

## DECLARATION OF STEVEN G. BRADBURY

I, Steven G. Bradbury, declare as follows:

1. I am the Principal Deputy Assistant Attorney General for the Office of Legal Counsel ("OLC") of the United States Department of Justice (the "Department"). No one currently holds the position of Assistant Attorney General for OLC. Consequently, in my capacity as Principal Deputy Assistant Attorney General for OLC, I am the head of OLC and supervise all OLC operations, including its response to requests under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. I submit this declaration in support of defendant's motion for summary judgment in the above-captioned case. The statements made herein are based on my personal knowledge and on information made available to me in the performance of my official duties.

2. The principal function of OLC is to assist the Attorney General in his role as legal adviser to the President and to departments and agencies in the Executive Branch. In connection with this function, OLC prepares memoranda addressing a wide range of legal questions

involving the operations of the Executive Branch. A significant portion of OLC's work can be divided into two categories. First, OLC renders opinions that resolve disputes within the Executive Branch on legal questions. Second, OLC performs a purely advisory role as legal counsel to the Attorney General, providing confidential legal advice both directly to the Attorney General and, through him or on his behalf, to the White House and other components of the Executive Branch. The nonpublic legal advice memorandum identified as part of Document 55 on the *Vaughn* Index was prepared by OLC in this advisory role, as were the draft of that memorandum identified as part of Documents 45 on the Index and the email communications identified as Documents 45, 48, and 51 on the Index.

3.    Although OLC's legal advice and analysis may inform the decisionmaking on policy matters, the legal advice is not itself dispositive as to any policy adopted by the Executive Branch. OLC itself does not purport, and in fact lacks authority, to make any policy decisions. OLC's role is to advise, not to mandate that its advice be implemented into agency policy.

4.    While the majority of OLC memoranda are treated as confidential, the Office has a limited publication project whereby after a lapse of years certain memoranda are reviewed and selected for publication. Memoranda are selected for publication only where the Department determines, in consultation with the agencies or offices with whom the memoranda were written, that disclosure is in the public interest. OLC has never made public the legal advice memorandum whose withholding is challenged by plaintiff (Document 55). To my knowledge, neither Document 55 nor the advice and analysis contained therein have been circulated or revealed outside the Executive Branch, but rather they have been shared only with government officials and staff working on these issues and closely held by them in strict confidence.

5.  Document 55 includes an eleven-page nonpublic legal advice memorandum dated May 11, 2006, and prepared by OLC. The memorandum contains legal advice regarding the status under the federal record-keeping statutes of records generated through the White House Access Control System ("WHACS").[1] This memorandum is exempt from mandatory public disclosure pursuant to Exemption Five of the Freedom of Information Act ("FOIA") because it is protected by the deliberative process privilege, the attorney-client privilege, and the attorney work-product doctrine.

(a)  The memorandum is protected by the deliberative process privilege because it is both pre-decisional and deliberative. It is pre-decisional because it was prepared as part of the governmental deliberative process leading up to the execution of the Memorandum of Understanding ("MOU") between the White House Office of Records Management ("WHORM") and the United States Secret Service ("USSS") addressing the status and handling of WHACS records. Representatives of the Executive Office of the President, the USSS, the National Archives and Records Administration ("NARA"), and the Department of Justice participated in that deliberative process. The memorandum is deliberative because it is advice submitted for use by decisionmakers at various government entities involved in the decisions to prepare and execute the MOU. Despite Plaintiff's assertions to the contrary, *see* Pls. Opp. at 21-22, this memorandum is purely advisory and retains its pre-decisional and deliberative character because, in executing the MOU, the WHORM and the USSS did not expressly adopt or incorporate

---

[1] The WHACS system includes two separate types of records: (1) records from the Workers and Visitors Entrance System ("WAVES") and (2) records from the Access Control Records System ("ACR").

by reference the OLC memorandum. Nor has it been adopted in any other way by any government entity. The memorandum is quintessentially deliberative because it is advice submitted for use by officials making governmental decisions.

(b) The OLC memorandum is also protected by the attorney-client privilege because it constitutes confidential legal advice provided by OLC to Executive Branch entities, and reflects facts and information provided to OLC by those Executive Branch entities for purposes of preparing that legal advice.

(c) Finally, the OLC memorandum is also protected by the attorney work-product doctrine because litigation was foreseeable over the status of WHACS records under the federal record-keeping statutes. Indeed, at the time the memorandum was written, lawsuits had already been filed against the USSS seeking access to WHACS records under FOIA.

6. Compelled disclosure of this advisory and pre-decisional document would cause serious harm to the deliberative processes of the Department of Justice and the Executive Branch and would disrupt the attorney-client relationship between the Department and the President and other officers of the Executive Branch. Attorneys in OLC are often asked to provide advice and analysis with respect to very difficult and unsettled issues of law. Frequently, such issues arise in connection with highly complex and sensitive operations of the Executive Branch. It is essential to the mission of the Executive Branch that OLC legal advice, and the development of that advice, not be inhibited by concerns about public disclosure. Protecting the confidentiality of OLC legal advice memoranda is essential in order both to ensure that creative and even controversial legal arguments and theories may be examined candidly, effectively, and in writing

and to ensure that Executive Branch officials will continue to request legal advice from OLC on such sensitive matters.

7. Document 45 on the *Vaughn* Index includes a draft of the OLC advice memorandum contained in Document 55. The rationale supporting the application of the various privileges to the final version of the memorandum (*see* ¶¶ 5-6, *supra*) applies fully to the draft. Moreover, an additional rationale supports application of the deliberative process privilege to the draft. Creating such a draft document is an integral part of legal deliberations within OLC, the Department, and the Executive Branch. Through the writing process, OLC attorneys focus, articulate, and refine their advice and analysis. Drafts do not represent the final position or ultimate views of the Office, the Department, or the Executive Branch. To the contrary, drafts are, by their very nature, pre-decisional and deliberative. They are part of the exchange of ideas and suggestions that accompanies all decisionmaking, and they reflect the preliminary assessments and suggestions of OLC attorneys. Indeed, as a matter of Office policy, OLC attorneys exchange draft documents with one another for comments, edits, and suggestions. Inevitably, initial drafts of documents differ substantially from the final versions, as attorneys adjust their analysis in response to input from their colleagues. Comparing the final copy of a document against the prior drafts would, inevitably, reveal changes and revisions made by OLC and the Department during the deliberative process.

8. Finally, disclosure of the withheld e-mail communications concerning preparation of the OLC memorandum among OLC attorneys and White House, USSS, or NARA attorneys (Documents 45, 48, 51) would undermine the deliberative processes of OLC and the Executive Branch. OLC attorneys routinely send e-mails to other Executive Branch attorneys which convey

preliminary advice, analysis, and reactions to legal issues. OLC attorneys use e-mail to solicit comments and information from Executive Branch entities about a legal issue and to engage attorneys from other Executive Branch entities in "back and forth" discussions about an issue, just as they might in a face-to-face meeting or telephone conversation. OLC e-mails, in essence, reflect a fluid and evolving exchange of ideas.

9. The e-mails withheld in this case are characteristic of OLC e-mail use. All of the messages relate to the preparation of OLC's nonpublic legal advice memorandum regarding the status of WHACS records under the federal record-keeping statutes (Document 55), and all of the messages either seek or contain edits, comments, or suggestions on drafts of the legal advice memorandum; in addition, one of the messages (Document 45) attaches a draft of the memorandum. Requiring the production of these quintessentially deliberative and preliminary documents would impair decisionmaking by discouraging OLC attorneys from candidly and freely exchanging information and ideas with their Department of Justice colleagues and other Executive Branch attorneys while examining complicated legal issues and preparing legal advice.

I declare under penalty of perjury that the foregoing is true and correct.

Executed: June 21, 2007

_____
STEVEN G. BRADBURY