UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, <br><br> Plaintiff, <br><br> v. <br><br> NATIONAL ARCHIVES AND RECORDS ADMINISTRATION, <br><br> Defendant. | Civil Action No. 07-0048 (RBW) |

## PLAINTIFF'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT

### STATEMENT

From the outset this lawsuit has been about obtaining, through the Freedom of Information Act, information related to how NARA has exercised its statutory responsibilities with respect to the status of White House visitor records, and the subsequent creation of a secret body of law related to NARA's request to the United States Secret Service that it cease destruction of visitor records after transferring them to the White House.  One need look no further for evidence of this secret law than NARA's own Vaughn index which contains: the description of a secret Office of Legal Counsel memorandum to the Secret Service, a newly-created 2006 Memorandum of Understanding between the Secret Service and White House declaring that visitor records are presidential records and NARA's own order to the Secret Service to cease its destruction of the visitor records.  Denying CREW and the public information related to NARA's request to the Secret Service that it cease destruction of the visitor records does not prevent public confusion over this decision, as NARA suggests, but

actually creates confusion over how NARA fulfills its primary statutory responsibilities to judge the suitability of records for disposal and to provide guidance and assistance to federal agencies to ensure proper records disposition.

Further, it is clear that NARA is strangely unaware of whose burden it is to prove that a document is properly withheld and an exemption applies. NARA claims that, "CREW -- not NARA -- bears the burden of proving that NARA has explicitly adopted the reasoning . . . of those documents," for purposes of Exemption 5. This is in direct contravention of the FOIA, where the burden is always on the defendant to prove that an exemption applies either through its Vaughn index or declarations. Summers v. U.S. Dep't. Of Justice, 140 F.3d 1077, 1080 (D.C. Cir. 1998); Vaughn v. Rosen, 484 F.2d 820, 823 (D.C. Cir. 1973).

More fundamentally, NARA has eschewed completely its statutory role as the final arbiter of records disposition, and its responsibilities to make legal conclusions as to documents and their schedules for preservation, hiding behind the argument that the President alone has the duty to determine whether a record is presidential. Though NARA apparently has the authority to demand that the Secret Service cease from continuing its destruction of visitor records, incredibly, it claims no authority to determine whether these visitor records, for which schedules exist, are federal records or presidential records. Despite NARA's assertion to the contrary, the Presidential Records Act, "does not bestow on the President the power to assert sweeping authority over whatever materials he chooses to designate as presidential records without any possibility of judicial review." Armstrong v. Executive Office of the President, 1 F.3d 1274, 1290 (D.C. Cir. 1993).

Moreover, Armstrong instructs us that the Federal Records Act requires an agency to

procure the approval of the Archivist before disposing of any record, and that "the Archivist's duties are not limited to judging the suitability of records for disposal. . . the Archivist must 'provide guidance and assistance to Federal agencies with respect to ensuring adequate and proper documentation of the policies . . . and ensuring proper records disposition." Armstrong at 1279. Thus, to the extent that NARA is now attempting to narrow its authority to "issuing regulations for the guidance of agencies and authorizing disposal of federal records through 'scheduling,'" this pronouncement conflicts with the much broader role that the Federal Records Act mandates for NARA and the Archivist.

## ARGUMENT

### I. NARA FAILS TO MEET ITS BURDEN OF DEMONSTRATING THAT ALL OF THE WITHHELD DOCUMENTS FALL WITHIN EXEMPTION 5

#### A. Disposition of WAVES Records

In its Vaughn index, NARA, not CREW, describes documents 3, 5 and 7 as documents that "discuss legal and recordkeeping issues regarding WAVES records," documents "discussing what further actions should be taken by NARA staff with respect to . . . the WAVES records schedule, and documents describing the "status of a possible meeting . . . to discuss pending legal issues." See Vaughn Index, pg. 1-2. It is therefore disingenuous at best, and misleading at worst, for NARA to now try to re-characterize document 3, for example, as "an unsigned, undated, single-page cover memorandum." Obviously, NARA had to know enough information about the document to describe it in its Vaughn index as a memorandum that discusses legal and recordkeeping issues regarding waves records, including their transfer and disposition. Otherwise, how can NARA even begin to meet its burden of showing that the document is

exempt from disclosure as part of the deliberative process privilege?  It is its own description of the document, not any argument CREW has made, that shows that NARA is unlawfully withholding documents that reflect the law that NARA is actually applying as it evaluates the records schedules and policy proposals submitted by agencies.  NARA simply cannot hide from its statutory responsibility to provide guidance and assistance to agencies to ensure the adequate and proper documentation of their policies and proper records disposition, and now suggest that its role was much narrower - - as a part of a "customary practice in which it only participates in inter-agency deliberations about records disposition."  NARA's reply in support of its motion for summary judgment at 3 ("D's Reply").

   The evaluator of policy proposals regarding records and the final arbiter of federal records schedules is not a role given to NARA by CREW, but the Federal Records Act ("FRA"), a series of statutes that govern the creation, management and disposal of federal records.  See 44 U.S.C. §§ 2101-2118, 3101-3107 and 3301-3324.  It is the Archivist with whom the final decision lies to decide whether or not an agency may dispose of specific categories of records.  Id.  See also Armstrong v. Bush, 924 F.2d at 285.

   As the final decisionmaker when it comes to whether or not an agency may dispose of specific categories of records, NARA's application of its legal position to a particular set of records schedule is more akin to the statements of an agency's legal position found in Tax Analysts v. IRS, 117 F.3d 607, 616-617 (D.C. Cir. 1977).  NARA has failed to distinguish these documents from documents that the Court found unlawfully withheld in Tax Analysts.  NARA's bald assertion that "CREW's analogy must fail . . . because Document 3 is nothing like those FSAs," is simply not enough for NARA to meet its burden that these documents do not contain a

statement of issues, a conclusion, a statement of facts, and a legal analysis, as the FSAs included in Tax Analysts. Contrary to NARA's contention, it is not CREW's burden to provide a basis for our assertion that the documents NARA is withholding do not contain these elements. It is NARA's burden to do so, and it has failed to meet its burden. 5 U.S.C. § 552(a)(4)(B).

Moreover, CREW does not misstate Evans v. OPM, 276 F. Supp. 2d 34, or its proposition that the direction or path that a document travels may suggest whether the deliberative process is at work. Evans at 40. The deliberative process typically involves a vertically-moving document from subordinate to superior officer - - not, as we have here, documents that clearly travel from superior to subordinates, and horizontally from NARA to other agencies. Id. at 40, 41. Once again, NARA describes these documents as documents from its General Counsel to NARA archivists and lawyers of the status and legal issues pertaining to the Secret Service's records schedules. Compare NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 153; 95 S. Ct. 1504, 1518 (1975) (finding that Advice Memoranda, communicated to the Regional Director by the General Counsel, which decide whether or not to issue a complaint and represent an explanation to the Regional Director of a legal or policy decision adopted by the General Counsel, are not exempt as intra-agency deliberative documents under Exemption 5).

Isolating documents 3, 5 and 7 from the rest of the documents NARA claims are deliberative does not undermine CREW's assertion that they are not exempt from disclosure. Using NARA's own Vaughn index as a guide to indicate who authored the documents at issue, CREW narrowly focused in on those documents that fit squarely within the Tax Analysts, Evans, and Sears, Roebuck progeny of cases and illustrate the type of documents that do not meet the deliberative process requirements. Interestingly, NARA fails to cite any authority that suggests

5

documents that are improperly withheld as exempt, but are encompassed within a group of other documents that are not being contested, should also be withheld as exempt.

Finally, CREW does not misstate the law under NLRB v. Sears, Roebuck & Co., 421 U.S. 132 (1975), that "if an agency chooses expressly to adopt or incorporate by reference an intra-agency memorandum previously covered by Exemption 5 in what would otherwise be a final opinion, that memorandum may be withheld only on the ground that it falls within the coverage of an exemption other than Exemption 5." This argument has not been specifically rejected, especially by a case that clearly is not of precedential value for the District Court of the District of Columbia.

NARA once again emphasizes in its brief that it is not the final arbiter of **all** record retention issues, clearly conceding that it is the final arbiter as to many record retention issues. D's Reply at 2. NARA also argues that it is not the decision-maker with respect to what constitutes a presidential record. Id. According to statute, however, NARA is the final arbiter of whether a document is an agency record that must be preserved or can, instead, be destroyed. 44 U.S.C. § 3303(a). Also according to NARA's own documents and Vaughn index, the Secret Service first sought the views of NARA under the FRA by submitting disposition schedules for its White House visitor logs. See Vaughn Index.

The Court rejected the general counsel's similar argument in Sears, Roebuck, that he did not make law, finding that the general counsel's decisions not to file complaints together with the Advice and Appeals Memoranda explaining them are "precisely the kind of agency law in which the public is so vitally interested and which Congress sought to prevent the agency from keeping secret." Sears, Roebuck at 156. Here, NARA's General Counsel similarly attempts to

argue that he possesses no authority to decide whether a document is a federal record or a presidential record, and this argument should similarly be rejected by the Court. D's Reply at 2.

    The public is vitally concerned with the reasons which supply the basis for an agency policy it has adopted, and the documents involved here are precisely the kind of agency law that Congress sought to prevent the agency from keeping secret. Id. There can be no other way for the public to gain any understanding behind NARA's decision to request that the Secret Service cease and desist its destruction of White House visitor records than the disclosure of its documents that provide the basis for its new policy.

    NARA now argues, complete with supplemental and new declarations, that these documents are protected by the attorney work-product doctrine because FOIA requests for these records had already been filed before January 2006, and therefore it had a subjective believe that litigation might occur. First, neither the declarations of NARA's Disclosure Officer Latita M. Huff nor General Counsel Gary Stern adequately inform the Court that these FOIA requests somehow created a belief that litigation might occur. NARA fails to allege that it ever refused to provide the White House visitor records that were the subject of the FOIA requests dating back to March 2000, which might have prompted a legitimate subjective belief that litigation might occur.

    Second, the fact that the Secret Service was receiving FOIA requests as early as 2000 for White House visitor records only bolsters CREW's argument here. It shows that from at least 2000, these records have been treated as subject to the FOIA. It further shows the amount of public confusion that is actually at risk unless the public is allowed to learn the truth behind the radical shift in the government's position on the status of White House visitor records.

### B.     2001 Waves Retention Memorandum[1]

Equally unpersuasive is NARA's argument that the documents that represent the 2001 WAVES Retention Memorandum (Documents 12-14, 15, 17) "represent inter-agency deliberations about a specific set of recommendations for the management, transfer, and disposition of WAVES and ACR records." Def. Reply at 11.  NARA continues to try to narrow its statutory responsibilities in order to claim that its role is limited to participating in deliberations.  The statutes do not lie, however, and they list a complete list of duties that CREW does not create and NARA cannot escape.  These responsibilities include: promulgating standards, procedures and guidelines concerning records management, 44 U.S.C. § 2904(c)(1), conducting inspections of the records and practices within and between federal agencies, id. at § 2904(c)(7), and reporting to Congress any violations of the FRA.  Id. at § 2115(b).

The Archivist also plays a "key role in the disposal of records." Armstrong v. Bush, 924 F.2d 282, 285 (D.C. Cir. 1991).  Only the Archivist is authorized to approve the disposition of records.  Id., *quoting* 44 U.S.C. § 3303(a).  Agency heads are also required to notify the Archivist of any unlawful removal or destruction of records.  Id. at § 2905(a).

As NARA's description of these documents in its Vaughn index makes clear, these documents concern NARA's exercise of its statutory responsibility to promulgate standards, procedures and guidelines concerning records management.  44 U.S.C. § 2904(c)(1).  For example, document number 13 is a memorandum from the White House and the Secret Service concerning the management, transfer and disposition of visitor logs, while document number 14 is NARA's response.  By their own description these are not documents that were created by

---

[1]Document numbers 12-14, 15 and 17.

NARA to formulate a policy, but rather represent NARA's discharge of its statutory duty to act on agency proposals regarding the disposition of its records. As such, they do not meet the requirements of the deliberative process privilege. See, e.g., Tax Analysts v. IRS, 117 F.3d at 616-617.

This conclusion is not altered by NARA's labeling of these documents as "policy proposals," D's Mem. at 17, or its use of the term "recommendations." Agency recommendations to NARA on the disposition of agency records, even those that include the views of the White House, and NARA's response are legal issues involving NARA's exercise of its statutory authority under the FRA. These documents are not "deliberative" within the meaning of Exemption 5 as they set out NARA's technical advice and legal position on the scheduling of White Visitor logs and, like the advice and technical assistance memoranda at issue in Tax Analysts, are neither pre-decisional nor deliberative.

Finally, these documents are not entitled to work-product protection because, again, NARA has not shown that it had a reasonable subjective belief that litigation might occur. There is no indication that NARA ever refused to provide the documents at issue in the FOIA requests it had received dating back to March 2000.

### C.    2004 WAVES Retention Memorandum[2]

---

[2] This includes document numbers 12-33; plaintiff does not challenge withholdings in document numbers 15a, 19-23, 25, 28, 32-33.

CREW's Opposition to Defendant's Motion for Summary Judgment and Cross-Motion for Summary Judgment, "2004 WAVES Retention Memorandum" subsection incorporated all of the above-referenced documents, including document numbers 18a, 24, 27, 29, and 30. Plaintiff's Memorandum in Support of its Cross-Motion for Summary Judgment pg. 15. Thus, NARA's argument that the Court should award summary judgment to NARA with regard to these documents must be rejected.

NARA's role under the Federal Records Act to promulgate standards, procedures and guidelines concerning records management is not of CREW's creation. CREW did not draft the Federal Records Act or decide what obligations NARA's Archivist would have under this statutory scheme. Understanding NARA's role, however, proves that these documents do not fall within the deliberative process privilege because they consist of the legal views of NARA's general counsel on questions regarding the transfer and disposition of WAVES records. That other Executive Branch entities - - like the Office of Counsel to the President and the United States Secret Service - - seek NARA's views on the disposition of agency records, is also based on these agencies' statutory obligation to seek the approval of NARA before they dispose of their records.

CREW does not dispute that NARA is "routinely consulted by federal agencies" to consult with and instruct them on their records management activities. D's Reply at 14. It is this consultation that represents NARA's discharge of its statutory duty to act on agency proposals regarding the disposition of agency records. As such, these documents do not meet the requirements of the deliberative process privilege. See, e.g., Tax Analysts v. IRS, 117 F.3d at 616-617.

NARA again attempts to shift its responsibilities to the President when it argues, through the general counsel's supplemental declaration, that the President, not NARA, determines whether a record is presidential. Supplemental Declaration of Gary M. Stern ("Stern Decl."), ¶ 5. This ignores the fact that the Federal Records Act requires an agency to procure the approval of the Archivist, **not the President**, before disposing of any record, and charges NARA with providing guidance and assistance to Federal agencies to ensure adequate and proper

10

documentation of the policies concerning records management.  <u>Armstrong</u> at  1279.

For the reasons stated *supra* these documents also do not meet the attorney work-product doctrine as exempt from disclosure.

### D. Secret Service Presentation to NARA and Other Officials

NARA has also withheld a hard copy of a power point slide presentation created by the Secret Service for NARA that discusses WAVES and ACR retention issues.  Stern Decl., ¶ 21.  NARA describes the document as deliberative and pre-decisional "given its fragmentary nature."  <u>Id.</u>  Quite apart from the fact that this description is virtually meaningless, it does not establish that the presentation contains any deliberative information.

Moreover, NARA was again exercising its statutory authority to provide its input and legal conclusions on the issues raised by the Secret Service's presentation.  Merely attending a presentation on an issue for which the Secret Service was seeking NARA's views does not constitute pre-decisional deliberative process that Exemption 5 was intended to protect.

This document is also not protected by the attorney work-product doctrine.  Mere participation of an attorney does not, as NARA suggests, transform the document into attorney work-product.  Documents that relate only generally to a broad agency program that is investigatory or adversarial in nature are not properly considered to have been "prepared in anticipation of litigation."  <u>See</u> <u>Costal States</u>, 617 F.2d at 865. Rather, there must be reasonably foreseeable litigation, which was not the case here.

### E. Documents Related to the Pending Judicial Watch Litigation

NARA has also withheld a group of documents related to a pending lawsuit, <u>Judicial

11

Watch v. U.S. Secret Service, Civ. Action No. 06-310 (D.D.C.).[3]  Judicial Watch's suit is based on its FOIA request for records of White House visits by Jack Abramoff.

While NARA attempts to cloak many of these documents with the protection of the deliberative process privilege, it has failed to identify exactly what decision it was participating in.  Nor can any such decision reasonably be gleaned from the litigation itself given that NARA is not a party to the Judicial Watch lawsuit.  Moreover, while NARA has described at least some of the documents as "candid" discussions of the legal status of WAVES records, D's Mem. at 24., the Judicial Watch suit does not involve the issue of whether the requested visitor records are presidential or agency records.  Instead, the Secret Service processed Judicial Watch's FOIA request, agreed to be bound by a court-ordered stipulation committing the agency to produce the requested documents by a date certain and pursuant to that stipulation, produced responsive documents to Judicial Watch.  The only remaining dispute is whether the Secret Service produced all responsive documents, or only a narrower subset as Judicial Watch has claimed.

The fact that NARA lawyers and other NARA staff exchanged emails regarding the litigation, D's Mem. at 24, does not by itself establish that the emails reflect internal deliberations regarding a decision that NARA was making.  Nor has NARA shown that these documents are protected by the attorney work-product doctrine.  NARA is not a party to the Judicial Watch litigation and it has not established that the documents in question were prepared for the Secret Service, the sole defendant in the lawsuit.

### F.   Status and Disposition of WAVES Records Contemporaneous with Ongoing Litigation

---

[3] These documents include document numbers 34-44 and 53.  CREW does not contest the withholding of document numbers 38, 39, 41 and 43.

The four categories of documents created contemporaneously with then-ongoing litigation concerning the status and disposition of WAVES records do not meet the Exemption 5 requirements for the deliberative process and attorney-client privileges and the attorney work-product doctrine.  These four categories of documents include : 1) a draft of a MOU between the Secret Service and the White House Office of Records Management ("WHORM"), 2) a nonpublic legal advice memorandum issued by the Department of Justice's Office of Legal Counsel ("OLC"), along with a draft of that memorandum, and 3) email communications regarding the drafting of the MOU and the nonpublic advice memorandum.

Despite NARA's arguments to the contrary,[4] a document will lose its protection under the deliberative process privilege if the agency has chosen "expressly to adopt or incorporate by reference [a] . . . memorandum previously covered by Exemption 5 in what would otherwise be a final opinion." Sears, Roebuck at 161, *as cited in* Nat'l Counsel of La Raza v. Dep't. of Justice, 411 F.3d 350 (2d. Cir. 2005).

For example, in Nat'l Counsel of La Raza, after a change in policy instituted by the Department of Justice regarding state and local immigration law enforcement authority, and a memorandum written by the Department's Office of Legal Counsel concerning its new position, plaintiffs sought the disclosure of the memorandum. Id. at 355.  The Court found that the repeated references to the OLC Memorandum made by the Attorney General and his advisors showed that the Department had incorporated the memorandum into its new policy and that the Department regarded the memorandum as the authority and justification for its new policy.  Id. at 358-59.

---

[4] D's Reply at 8.

Here, NARA has not established that the opinions or analysis contained in the draft MOU or the OLC advice memorandum were not incorporated into the final MOU that was made public. Thus, NARA has failed to establish that this document is protected from disclosure by Exemption 5. In the alternative, CREW would ask that the Court review these documents *in camera* to determine whether they have been incorporated into the final MOU and should therefore be disclosed.

Moreover, information that is obtained from third parties and communicated to agency lawyers by agency employees is not protected by the attorney-client privilege "if no new or confidential information concerning the Agency is imparted in the process." Coastal States, 617 F.2d at 863; Mead Data Central, Inc. v. U.S. Dep't of the Air Force, 566 F.2d 242, 252 (D.C. Cir. 1977). To be protected under the privilege, the information must have been confidential at the time of the communication and that confidentiality must have been preserved since the communication. Coastal States, supra. The agency bears the burden "to demonstrate that confidentiality was expected in the handling of the communications, and that it was reasonably careful to keep this confidential information protected from general disclosure." Id.

Here, NARA has no attorney-client relationship with the Secret Service, the White House or, most importantly, the OLC. Even if the OLC has an attorney-client relationship with the Secret Service or the White House, it certainly does not have an attorney-client relationship with NARA. Instead, NARA is simply the third-party recipient of a document prepared by another agency component, the OLC, not in its role as attorney to a client, but in its broader "advisory function of providing legal advice to the Executive Branch." D's Mem. at 28. Indeed, NARA's own receipt of the OLC memorandum waives any attorney-client privilege that may have existed

between the OLC and the Secret Service or the White House because it is not the OLC's client, but a third-party recipient. Finally, it is NARA's burden to demonstrate that it has an attorney-client relationship with OLC and that it carefully kept this confidential information protected, a burden it has failed to carry.

Moreover, NARA's participation in any discussions it had with the Associate Counsel to the President, DOJ attorneys and Secret Service representatives would have been in its role as the authority on decisions concerning agency records schedules and disposition. Thus, because NARA was merely articulating its legal position on record-keeping issues here, as in Tax Analysts, 117 F.3d at 617, documents that reflect that role are not exempt. Moreover, factual communications about the "logistics" of maintaining and transferring records contained within documents that it describes as communications between White House Counsel, NARA, the DOJ and the Secret Service, are hardly the kind of pre-decisional internal deliberations protected by Exemption 5.

## II.   Request for *In Camera* Inspection

NARA has failed to meet its burden of showing that the documents it has withheld as exempt under the deliberative process, attorney work-product and attorney-client privileges meet the requirements under FOIA Exemption 5. In the alternative, if the Court is unclear whether NARA's burden has been met with respect to any of the documents CREW seeks disclosure of, CREW requests that the Court review the disputed documents *in camera*. *In camera* review may be appropriate where the agency affidavits are conclusory, insufficiently detailed to permit review of its exemption claims, where there is evidence of bad faith on the part of the agency, or where the judge wishes to resolve an uneasiness about the government's inherent tendency to

15

resist disclosure. Ray v. Turner, 587 F.2d 1187, 1195; Quinon v. FBI, 86 F.3d 1222, 1228 (D.C. Cir. 1996); Cole v. U.S. Dep't. of Justice, 2006 U.S. Dist. LEXIS 69418 (D.D.C. 2006).

Here, because of the shifting reasons NARA has given for its claimed exemptions, the conclusory nature of its declarations and the relatively small number of documents at issue, CREW requests that the Court review the documents at issue *in camera*.

## CONCLUSION

For the foregoing reasons, CREW respectfully requests that the Court deny defendant's motion for summary judgment, and grant CREW's cross-motion for summary judgment. Oral argument is requested.

Respectfully submitted,

/s/
Anne L. Weismann
(D.C. Bar No. 298190)
Kimberly D. Perkins
(D.C. Bar No. 481460)
Citizens for Responsibility and Ethics
 in Washington
1400 Eye Street, N.W., Suite 450
Washington, D.C.  20005
Phone:  202-408-5565
Fax:  202-588-5020

Attorneys for Plaintiff

Dated:  July 5, 2007