UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                          )
CITIZENS FOR RESPONSIBILITY AND           )
ETHICS  IN WASHINGTON                     )
                                          )
          Plaintiff,                      )
                                          )
     v.                                   )     Civil Action No.  07-48 (RBW)
                                          )
NATIONAL ARCHIVES AND                     )
RECORDS ADMINISTRATION                    )
                                          )
          Defendant.                      )
_____ )


### AMENDED MEMORANDUM OPINION


The plaintiff filed this lawsuit on January 10, 2007, against the National Archives and

Records Administration (hereafter "NARA" or "the defendant") pursuant to the Freedom of

Information Act ("FOIA"), 5 U.S.C. § 552 (2000).  Complaint ("Compl.").  The plaintiff

challenges

> the failure of the National Archives and Records Administration
> ("NARA") to fulfill the request of [the] [p]laintiff for documents
> relating to a request NARA made to the United States Secret
> Service [("Secret Service")] that it cease its destruction of visitor
> records once the Secret Service has transferred copies of the
> agency records to the White House.

Id. ¶ 1.  Specifically, the plaintiff made

> a FOIA request to NARA seeking records, regardless of format and
> including electronic records and information, relating to the request
> made by NARA to the Secret Service "that the Secret Service
> retain its own copies of the Workers and Visitors Entrance System

1

Dockets.Justia.com

("WAVES") records that it transferred to the White House."

<u>Id.</u> ¶ 19.  The plaintiff also

> sought communications between NARA and any other government
> entity regarding the practice of the Secret Service to erase copies of
> WAVES records it had transferred to the White House, documents
> referring or relating to the practice of the Secret Service to delete
> records from its computer system and documents related to three
> pending district court cases: (I) <u>Judicial Watch v. U.S. Secret
> Service</u>, [Civil Action Number] ("C.A. No.") 06-310 ([D.D.C.]),
> (ii) <u>Democratic Nat'l Comm. v. U.S. Secret Service</u>, C.A. No. 06-
> 842 ([D.D.C.]), and (iii) <u>CREW v. U.S. Dep't of Homeland
> Security</u>, C.A. No. 06-833 ([D.D.C.]).

<u>Id.</u>  Further, the plaintiff "seeks declaratory relief that NARA is in violation of the FOIA and

NARA regulations, 36 C.F.R. §1250.36, for failing to fulfill [the] [p]laintiff's request for records

and injunctive relief that NARA immediately and fully comply with [the] [p]laintiff's request

under the FOIA."  <u>Id.</u> ¶ 2.   Currently before the Court is the defendant's motion for summary

judgment and ("Def.'s Mot.") and the plaintiff's cross-motion for summary judgment ("Pl.'s

Cross-Mot."). [1]  For the reasons set forth below, both parties' motions are denied in part and

granted in part.

## I. Background

The plaintiff, Citizens for Responsibility and Ethics in Washington, "is a non-profit

---

[1] The following documents have also been filed in connection with the parties' motions: (1) the
defendant's Statement of Undisputed Material Facts; (2) Memorandum of Points and Authorities in
Support of Defendant's Motion for Summary Judgment ("Def.'s Mem."); (3) Plaintiff's Cross-Motion for
Summary Judgment; (4) Plaintiff's Response to Defendant National Archives and Record
Administration's Statement of Material Facts as to Which there is no Genuine Issue; (5) Plaintiff's
Opposition to Defendant's Motion for Summary Judgment and Memorandum in Support of Plaintiff's
Cross-motion for Summary Judgment ("Pl.'s Opp'n and Cross-Mem."); (6) Defendant's Reply in Support
of its Motion for Summary Judgment and Opposition to Plaintiff's Cross-Motion for Summary Judgment
("Def.'s Reply"); and (7) Plaintiff's Reply in Support of its Cross-Motion for Summary Judgment ("Pl.'s
Reply") .

corporation . . . committed to protecting the right of citizens to be informed about the activities of government officials and ensuring the integrity of government officials." Compl. ¶ 4. Through "research, litigation, advocacy" and the use of "government records made available to the organization under the FOIA," the plaintiff "empower[s] citizens to have an influential voice in government decisions and in the governmental decision-making process." Id. "NARA is the federal agency with possession and control of the . . . records [requested by the plaintiff]." Id. ¶ 7. On September 27, 2006, the plaintiff submitted a FOIA request to the defendant seeking:

1. Any and all documents related to the request made by NARA, to the United States Secret Service, that the Secret Service retain its own copies of the . . . WAVES[2] records that it transferred to the White House.

2. Any and all communications both internally and between the National Archives and Records Administration and any other government agency or government entity, referencing the practice of the United States Secret Service to erase copies of WAVES records that it transferred to the White House.

3. Any and all documents referring or relating to a practice by the Secret Service of deleting records from its computer system.

4. Any and all documents and records referring or relating to Judicial Watch v. United States Secret Service, Civ. Action No. 06-310 [(D.D.C.)].

5. Any and all documents and records referring or relating to Democratic National Committee v. United States Secret

---

[2] WAVES records are records "created for the purpose of controlling and monitoring access to the White House Complex." Def.'s Mem., Attachment (Declaration of Gary M. Stern) ("Stern Decl.") ¶ 14,  Tab "A" (Declaration of Kathy J. Lyerly[,] Special Agent in Charge, Liaison Division and Freedom of Information and Privacy Acts Officer, United States Secret Service) ("Lyerly Decl.") ¶ 13.  Such records are "generated when information is submitted to the Secret Service about workers and visitors whose business requires their presence at the White House Complex." Id., Tab "A" (Lyerly Decl.) ¶ 8.

Service, Civ. Action No. 06-842 [(D.D.C.)].

6.	Any and all documents and records referring or relating to <u>Citizens for Responsibility and Ethics in Washington v. United States Department of Homeland Security</u>, Civ. Action No. 06-883 [(D.D.C.)].

Def.'s Mem., Attachment ("Attach.") ((Declaration of Gary M. Stern) ("Stern Decl.")) ¶ 4, Tab "A" (Plaintiff's Original FOIA Request) at 1-2. The plaintiff also sought "expedited processing [of its FOIA request] and a waiver of all fees associated with [processing] the request." <u>Id.</u> at 3-4.

NARA acknowledged its receipt of the plaintiff's FOIA request in a letter dated October 20, 2006, from Ramona Branch Oliver, NARA's FOIA Officer. <u>Id.</u>, Tab B (Oct. 20, 2006 Letter of Ramona Branch Oliver) at 1. Ms. Oliver also informed the plaintiff that its requests for expedited processing of its FOIA request and for a waiver of the processing fees had been granted by NARA. <u>Id.</u> at 2. On October 24, 2006, NARA responded to the plaintiff's FOIA request in a letter from Ms. Oliver. <u>Id.</u>, Tab "C" (Oct. 24, 2006 Letter of Ramona Branch Oliver). The letter informed the plaintiff that NARA had identified 336 pages of documents responsive to the plaintiff's FOIA request. <u>Id.</u> at 2. NARA released to the plaintiff thirty-one of those pages in full and partially released eleven pages. <u>Id.</u> NARA further indicated that it was withholding the redacted portions of the eleven pages and the entire content of the remaining 294 pages pursuant to Exemption 5 of the FOIA, 5 U.S.C. § 552(b)(5). <u>Id.</u> On October 25, 2006, the plaintiff administratively appealed NARA's response to its FOIA request, challenging the applicability of Exemption 5, the adequacy of the explanations provided for the non-disclosures, and the adequacy of the plaintiff's search for documents responsive to its request. Def.'s Mem.,

4

Tab "D" (Letter from Sharon Eubanks, the plaintiff's Senior Counsel, to the defendant, dated

October 25, 2006) at 2. In a letter dated November 28, 2006, Lewis Bellardo, NARA's Deputy

Archivist and Chief of Staff, responded to the plaintiff's administrative appeal informing it that

NARA had identified an additional fifty pages of responsive materials, of which it was partially

releasing twenty-eight pages. Def.'s Mem., Tab "F" (Oct. 24, 2005 Letter of Lewis Bellardo) at

2. Further, NARA informed the plaintiff that it decided to release in full an additional eleven

pages of responsive material originally withheld, and to release in part an additional fifty-seven

pages of documents originally withheld. Id. However, Mr. Bellardo affirmed NARA's initial

determination that the remaining withheld materials were protected by Exemption 5 of the FOIA.

Id. at 3. Subsequently, the plaintiff filed this action on January 10, 2007.

## II. Standard of Review

Courts will grant a motion for summary judgment if "the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that there is

no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c). When ruling on a Rule 56(c) motion, the Court must view

the evidence in the light most favorable to the non-moving party. Holcomb v. Powell, 433 F.3d

889, 895 (D.C. Cir. 2006) (citing Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150

(2000)). The Court must therefore draw "all justifiable inferences" in the non-moving party's

favor and accept the non-moving party's evidence as true. Anderson v. Liberty Lobby, 477 U.S.

242, 255 (1986). The non-moving party, however, cannot rely on "mere allegations or denials,"

Burke v. Gould, 286 F.3d 513, 517 (D.C. Cir.2002) (quoting Anderson, 477 U.S. at 248)

(quotation marks omitted), and "conclusory allegations unsupported by factual data will not

create a triable issue of fact," Pub. Citizen Health Research Group v. FDA, 185 F.3d 898, 908 (D.C. Cir. 1999) (internal quotation marks and citations omitted). If the Court concludes that "the non-moving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then the moving party is entitled to summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"[The] FOIA requires federal agencies to disclose, upon request, broad classes of agency records unless the records are covered by the statute's exemptions." Students Against Genocide v. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001) (citation omitted). The Court will grant summary judgment to the government in a FOIA case only if the agency can prove "that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." Friends of Blackwater v. Dep't of Interior, 391 F. Supp. 2d 115, 119 (D.D.C. 2005) (internal quotation marks and citations omitted). Thus, in a lawsuit brought to compel the production of documents under the FOIA, "an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates that each document that falls within the class requested either has been produced . . . or is wholly[, or partially,] exempt from [disclosure]." Students Against Genocide, 257 F.3d at 833 (internal quotation marks and citation omitted).

### III. Legal Analysis

The defendant contends that "each document withheld in full or in part by NARA is protected by one or more of these three evidentiary protections[,] [the deliberative process privilege, attorney work-product doctrine, or the attorney-client privilege]." Def.'s Mem. at 11. Further, the defendant asserts that it "is entitled to summary judgment . . . because its search was

reasonably calculated to uncover documents responsive to [the] [p]laintiff's FOIA request." Id.

at 35. In opposition, the plaintiff responds that "NARA has not met its burden of proof in

establishing that significant portions of the withheld documents are within the scope of

Exemption 5 of the FOIA and therefore is not entitled to summary judgment as a matter of law."

Pl.'s Opp'n and Cross-Mem. at 2. Further, the plaintiff contends that NARA's "argument that it

conducted a legally adequate search is without sufficient evidentiary support." Id. at 25.

## A.    Exemption 5 of the FOIA

Exemption 5 of the FOIA provides that the "inter-agency or intra-agency memorand[a] or

letters which would not be available by law to a party other than an agency in litigation with the

agency" are not subject to disclosure. 5 U.S.C. § 552(b)(5). "To qualify [for non-disclosure

under Exemption 5], a document must thus satisfy two conditions: its source must be a

Government agency, and it must fall within the ambit of a privilege against discovery under

judicial standards that would govern litigation against the agency that holds it." Dep't of Interior

& Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001).

The threshold issue that must be addressed when Exemption 5 is asserted is whether the

records in question qualify as "inter-agency or intra-agency memorand[a]." Judicial Watch, Inc.

v. Dep't of Commerce ("Judicial Watch I"), 90 F. Supp. 2d 9, 13 (D.D.C. 2000). "With respect

to the secondary consideration under Exemption 5-whether such materials would not be

'available by law in litigation with the agency,'" id., "the parameters of Exemption 5 are

determined by reference to the protections available to litigants in civil discovery . . . ." Burka v.

Dep't of Health & Human Servs., 87 F.3d 508, 516 (D.C. Cir. 1996). Thus, if a document

requested pursuant to the FOIA would normally be subject to disclosure in the civil discovery

context, it must also be disclosed under the FOIA. Id. Conversely, information that is routinely

not subject to disclosure in the civil discovery process is exempt from disclosure under

Exemption 5. Id. Moreover, "to justify non-disclosure under Exemption 5, an agency must show

that the type of material it seeks to withhold is generally protected in civil discovery for reasons

similar to those asserted by the agency in the FOIA context." Id. at 517. Thus, courts have

incorporated three traditional civil discovery privileges into Exemption 5: (1) the deliberative

process privilege; (2) the attorney-client privilege; and (3) the attorney work-product privilege.

NLRB v. Sears, Roebuck, & Co., 421 U.S. 132, 148-49 (1975); Coastal States Gas Corp. v. Dep't

of Energy, 617 F.2d 854, 862, 866 (D.C. Cir. 1980). The defendant asserts all three privileges as

grounds for not disclosing the withheld information.

### (1) The Deliberative Process Privilege

The deliberative process privilege protects from disclosure "documents reflecting

advisory opinions, recommendations and deliberations that are part of a process by which

[governmental] decisions and policies are formulated." Klamath, 532 U.S. at 8. The purpose of

the deliberative process privilege is "(1) to encourage open, frank discussions on matters of

policy between subordinates and superiors; (2) to protect against premature disclosure of

proposed policies before finally they are adopted; and (3) to protect against public confusion that

might result from disclosure of reasons and rationale that were not in fact ultimately the grounds

for an agency's action." Defenders of Wildlife v. Dep't of Agric., 311 F. Supp. 2d 44, 57 (D.D.C.

2004) (citing Russell v. Dep't of Air Force, 682 F.2d 1045, 1048 (D.C. Cir. 1982); Coastal States

Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980); Jordan v. Dep't of Justice, 591

F.2d 753, 772-73 (D.C. Cir. 1978) (en banc)). Thus, when a court reviews whether an agency

properly withheld documents under the deliberative process privilege, the critical question to ask is whether "disclosure of [the] materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." Formaldehyde Instit. v. Dep't of Health and Human Servs., 889 F.2d 1118, 1122 (D.C. Cir. 1989) (alteration in the original) (quoting Dudman Commc'ns Corp. v. Dep't of the Air Force, 815 F.2d 1565, 1568 (D.C. Cir. 1987); see also Sears, 421 U.S. at 151 (noting that the "ultimate purpose of [the deliberative process] privilege is to prevent injury to the quality of agency decisions").

To be exempt from disclosure under the deliberative process privilege, the agency must show that its decision is both (1) predecisional and (2) deliberative. Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 39 (D.C. Cir. 2002). "A document is predecisional if it was 'prepared in order to assist an agency decisionmaker in arriving at his decision,' rather than to support a decision already made." Petroleum Info. Corp. v. Dep't of Interior, 976 F.2d 1429, 1434 (D.C. Cir.1992) (quoting Renegotiation Bd. v. Grumman Aircraft Eng'g Corp., 421 U.S. 168, 184 (1975)). The preparation of the document therefore must be "[a]ntecedent to the adoption of an agency policy." Jordan v. Dep't of Justice, 591 F.2d 753, 774 (D.C. Cir. 1978). However, a document cannot be characterized as predecisional "if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." Coastal States, 617 F.2d at 866. Examples of predecisional documents include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." Id.

A document is deliberative if the "materials . . . bear on the formulation or exercise of

agency policy-oriented judgment." <u>Petroleum Info.</u>, 976 F.2d at 1435.  The information may be

"a direct part of the deliberative process in that it makes recommendations or expresses opinions

on legal or policy matters." <u>Vaughn v. Rosen</u>, 523 F.2d 1136, 1144 (D.C. Cir. 1975).  The

information may also concern "factual summaries that were written to assist [in] the making of a

discretionary decision." <u>Mapother v. Dep't of Justice</u>, 3 F.3d 1533, 1539 (D.C. Cir. 1993).  Most

importantly, the document must reflect the "give-and-take of the consultative process." <u>Senate of

P.R. v. Dep't of Justice</u>, 823 F.2d 574, 585 (D.C. Cir. 1987).  Other factors bear on whether a

document is sufficiently deliberative. <u>See</u> <u>Animal Legal Def. Fund, Inc. v. Dep't of the Air Force</u>,

44 F. Supp. 2d 295, 300 (D.D.C. 1999).  For example, in determining whether the deliberative

process privilege should apply to a particular document, courts often look to "the 'nature of the

decisionmaking authority vested in the officer or person issuing the disputed document,' and the

relative positions in the agency's 'chain of command' occupied by the document's author and

recipient." <u>Id.</u> (quoting <u>P.R. v.  Dep't of Justice</u>, 823 F.2d at 585). Although there are many cases

in this Circuit which discuss the deliberative process privilege, these cases "are of limited help . .

. because the deliberative process privilege is so dependent upon the individual document and the

role it plays in the administrative process." <u>Coastal States</u>, 617 F.2d at 867.

### (2)    Attorney-Client Privilege

The attorney-client "privilege has a proper role to play in exemption five cases . . . ." <u>In

re Lindsey</u>, 158 F.3d 1263, 1269 (D.C. Cir. 1998).  Aside from the protections provided by the

attorney-client privilege in the private sector, "the privilege also functions to protect

communications between government attorneys and client agencies or departments, as evidenced

by its inclusion in the FOIA, much as it operates to protect attorney-client communications in the

private sector." Id. "Thus, when the Government is dealing with its attorneys as would any private party seeking advice to protect personal interests, and needs the same assurance of confidentiality so it will not be deterred from full and frank communications with its counselors, Exemption 5 applies." Id. (quoting Coastal States, 617 F.2d at 863).

"To invoke the [attorney-client] privilege, an agency must demonstrate that the document it seeks to withhold (1) involves 'confidential communications between an attorney and his [or her] client' and (2) relates to a 'legal matter for which the client has sought professional advice.'" Judicial Watch, Inc. v. U.S. Postal Serv. ("Judicial Watch II"), 297 F. Supp. 2d 252, 267 (D.D.C. 2004) (quoting Mead Data Cent., Inc. v. Dep't of the Air Force, 566 F.2d 242, 252 (D.C. Cir. 1977)). However, the attorney-client privilege does not give the agency the ability "to withhold a document merely because it is a communication between the agency and its lawyers." Id. (citation omitted). The agency must show that the information provided to its lawyers was intended to be confidential and was not disclosed to a third party. Id. (citation omitted).

### (3)    Attorney Work-Product Doctrine

The purpose of the attorney work-product doctrine is to "protect documents prepared in contemplation of litigation" and "provides a working attorney with a 'zone of privacy' within which to think, plan, weigh facts and evidence . . . and prepare legal theories" without fear that the information will be disclosed in litigation. Coastal States, 617 F.2d at 864. The privilege provides an attorney with a "certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." Id. The purpose of the privilege is to protect the adversary trial process by "encourag[ing] effective legal representation within the framework of the adversary system[, thereby] removing counsel's fears that his thoughts and information

will be invaded by his adversary." Id. As a result of attempting to preserve the integrity of the adversary trial process, the "work-product rule does not extend to every written document generated by an attorney [or] shield from disclosure everything that a lawyer does." Id. Instead, it is only applicable to "materials 'prepared in anticipation of litigation for trial.'" Id. (quoting Jordan v. U.S. Dep't of Justice, 591 F.2d 753, 775 (1978).

### B.    The Documents Withheld by the Defendant[3]

### (1) The Defendant's Deliberations as to the Disposition of WAVES Records

The Federal Records Act, 44 U.S.C. § 3303a (2000), requires federal agencies regularly to submit to NARA draft "record schedules" concerning the proposed disposition of certain records. Def.'s Mem., Attach. (Stern Decl.) ¶ 14. NARA reviews these proposed schedules to assess the proper disposition of such records, including the format in which the records will be maintained and how long they must be retained. Id. The review process routinely involves both internal communication among NARA archivists and inter-agency communications with the entity that submitted the proposed schedule. Id. In the early 1990's, the Secret Service submitted multiple proposed record schedules for the records in its custody generated by the WAVES entry system. Id. In accordance with the plaintiff's FOIA request, the proposed schedules were released in full but the deliberations "surrounding the legal status of [its] WAVES records" that occurred following the submission of the schedules were released only in part. Id. ¶¶ 14-15. As

---

[3] The plaintiff indicated in its opposition to the defendant's summary judgment motion that it no longer contests the withholding of the information contained in the documents identified in the defendant's Vaughn Index as documents 1, 2, 4, 6, 8-11, Pl.'s Opp'n at 8 n.2; 15a, 19-23, 25, 28, 32-33, id. at 15 n.8; 38-39, 41, 43, id. at 17 n.9; and 47, 50, and 52, id. at 22 n.10. In addition, the plaintiff represents that it is not contesting the withholding of document numbers 61-75, which the defendant described as "Communication Between Department of Justice Federal Programs Branch and NARA Counsel Concerning Draft District Court Filings in Related Crew Litigation." Id. at 23 n.11.

12

to this partial disclosure, the plaintiff challenges the defendant's withholding of documents 3, 5, and 7. Specifically, the plaintiff challenges the defendant's withholding of document 3 on the grounds that it "was not produced in the process of formulating policy or advice regarding WAVES records, but rather is a statement of the agency's legal position." Pl.'s Opp'n and Cross-Mem. at 9. The plaintiff also challenges the withholding of documents 5 and 7 on the basis that such "superior-to-subordinate authoritative instructions to NARA staff do not reflect a deliberative process at work." Id. at 9-10. In opposition, the defendant responds that "[t]hese documents are validly withheld pursuant to both the deliberative process privilege and the attorney work-product doctrine." Def.'s Reply at 6. Upon review of the current record, the Court cannot determine whether document 3 is properly withheld pursuant to Exemption 5 of the FOIA. On the other hand, the Court finds that documents 5 and 7 were properly withheld pursuant to Exemption 5 of the FOIA. The District of Columbia Circuit has held that

> a district court should not undertake in camera review of withheld documents as a substitute for requiring an agency's explanation of its claimed exemptions in accordance with Vaughn. The district court should first offer the agency the opportunity to demonstrate, through detailed affidavits and oral testimony, that the withheld information is clearly exempt and contains no segregable, nonexempt portions. The agency must provide a Vaughn affidavit explaining its reasons for withholding the documents so as to alert the FOIA requester to the nature of the documents and the claimed exemptions and allow the requester to challenge the agency's assertions.

Spirko v. U.S. Postal Serv., 147 F.3d 992, 997 (D.C. Cir. 1998) (citations and internal quotation marks omitted). The Court's review of the defendant's Vaughn Index causes it to conclude that the defendant must provide a supplemental submission with a more detailed explanation of why document 3 has been properly withheld under Exemption 5 of the FOIA. The explanation

provided by the defendant for withholding this document pursuant to the deliberative process privilege is deficient because the document is silent on whether it relates to discussions between subordinates and superiors or was prepared in order to assist an agency decision-maker in arriving at his decision, rather than to support a decision already rendered. As previously noted, in determining whether the deliberative process privilege applies to a particular document, courts often look to "the 'nature of the decisionmaking authority vested in the officer or person issuing the disputed document,' and the relative positions in the agency's 'chain of command' occupied by the document's author and recipient." Animal Legal Def. Fund, Inc., 44 F. Supp. 2d at 300 (quoting Puerto Rico v. Dep't of Justice, 823 F.2d at 586).

As to documents 5 and 7, the Court finds that these documents have been properly withheld pursuant to the attorney work-product doctrine. "While litigation need not be imminent or certain in order to satisfy the anticipation-of-litigation prong of the [attorney work-product] test, . . . 'at the very least some articulable claim, likely to lead to litigation, must have arisin,' such that litigation was 'fairly foreseeable at the time' the materials were prepared." Hertzberg v. Veneman, 273 F. Supp. 2d 67 (D.D.C. 2003) (quoting Coastal States, 617 F.2d at 865). Here, the defendant could reasonably have anticipated litigation over the question of whether WAVES and related records were presidential or federal, considering that FOIA requests for these records had already been submitted. Def.'s Reply, Attach. (Supplemental Declaration of Gary M. Stern) ("Stern Supp. Decl.") ¶ 9; Attach. (Declaration of Latita M. Huff, Disclosure Officer, Freedom of Information and Privacy Acts Program Liaison Division, United States Secret Service) ¶ 3. Further, the documents were written by one of the defendant's attorneys or sent to him as the defendant's General Counsel in response to specific questions counsel posed related to the legal

status of WAVES records.  Def.'s Mem., Attach. (Stern Decl.) ¶ 23, & Tab "G" (Vaughn Index)

documents ("doc(s)") 5, 7.   Specifically, documents 5 and 7 are properly withheld  pursuant to

the attorney  work product doctrine because they concern written communications  between Mr.

Stern and NARA archivists or Amy Krupsky, a NARA attorney, (1) regarding what further

actions should be taken by NARA staff with respect to WAVES records schedule and (2)  the

status of a possible meeting planned with White House, DOJ counsel, and Secret Service staff to

discuss pending legal issues related to the transfer and disposition of WAVES records.  Def.'s

Mem., Tab "G" (Vaughn Index) (docs) 5, 7 at 2.  Disclosure of such written communications

would clearly disclose the mental impressions of NARA's General Council, including his plan

and legal theories concerning the transfer and disposition of WAVE records.  Accordingly, the

Court finds that document 5 and 7 were properly withheld under Exemption 5 of the FOIA.

### (2)      The Defendant's 2001 & 2004 Memoranda Concerning the Retention of WAVE Records

The plaintiff challenges the defendant's withholding of its Vaughn Index documents 12-

14, 15, and 17 on the grounds that they are not pre-decisional and therefore not exempt from

disclosure.[4]  Pl.'s Opp'n and Cross-Mem. at 14.  Specifically, the plaintiff argues that these

---

[4] The memorandum entitled "Disposition of Certain Presidential Records created by the USSS [United States Secret Service]" and dated January 17, 2001 ("2001 Memorandum"), was drafted by an Associate Counsel to the President and a legal representative at the Secret Service, and made policy proposals concerning the management, transfer of possession, and disposition of WAVES and ACR records.  Def.'s Mem., Attach. (Stern Decl.) ¶ 18 & Tab G (Vaughn Index) doc. 13 at 4.  The submission of the 2001 Memorandum to NARA's General Counsel resulted in numerous documents, including, but not limited to, a response letter from NARA's General Counsel commenting on the proposal , a set of handwritten notes transcribed by NARA's General Counsel during a conversation with a Secret Service official, and two emails sent by NARA's General Counsel to NARA personnel after receiving the proposal.  Id., Attach. (Stern Decl.) ¶¶ 19,18, & Tab G (Vaughn Index) docs. 12, 14-16 at 4-5.  The unsigned draft document entitled "Disposition of Certain Presidential Records Created by the USSS" and dated July 29, 2004 ("2004 Memorandum"), was sent to NARA after being prepared by an Associate

(continued...)

documents are not exempt because "these are not documents that were created by NARA to formulate policy, but rather represent NARA's discharge of its statutory duty to act on agency proposals regarding the disposition of its records." Id. The plaintiff also challenges NARA's withholding of documents 12-18, 24, 26-27, and 29-30, which relate to a 2004 WAVES retention memorandum. Id. at 15. The plaintiff contends that these documents "do not fall within the deliberative process privilege because they consist of the legal views of NARA's general counsel on questions regarding the transfer and disposition of WAVES records." Id. In opposition, the defendant responds that it has withheld these documents pursuant to the deliberative process privilege and attorney work-product doctrine. Def.'s Reply at 11-14.

If an agency fails to meet its burden through the submission of affidavits or a Vaughn Index, the Court may hold an in camera review of the withheld materials to determine whether the agency complied with its obligations under FOIA. Reliant Energy Power Generation, Inc. v. F.E.R.C. 520 F. Supp. 2d 194, 200 -201 (D.D.C. 2007); see, e.g., Ray v. Turner, 587 F.2d 1187, 1195 (D.C. Cir. 1978) (stating that district judge has discretion to conduct in camera inspection when something leads the judge to believe "that [i]n camera inspection is needed in order to make a responsible de novo determination on the claims of exemption"); Taylor v. Dep't of

---

[4](...continued)
Counsel to the President and a Special Assistant to the Director to the Secret Service, and it informally advanced a proposal for the disposition of WAVES and ACR records. Id., Attach. (Stern Decl.) ¶ 20, & Tab G (Vaughn Index) docs. 18, 18a at 5-6. The 2004 Memorandum resulted in the exchange of three separate emails, including, but not limited to: (1) emails concerning discussion among NARA staff in response to the NARA General Counsel's request for comments on the proposals, Def.'s Mem., Tab G (Vaughn Index) docs.19-25 at 6-8; (2) email from NARA's General Counsel to attorneys at the Department of Justice and the Office of the Counsel to the President, and officials at the Secret Service, which commented on the informal proposal and identifying issues to be addressed at subsequent inter-agency meetings, id., doc. 27 at 9; and (3) emails from NARA General Counsel to other NARA staff discussing issues raised by the proposal and summarizing inter-agency deliberations, id., docs. 28-29.

Justice, 257 F. Supp. 2d 101, 114 (D.D.C. 2003) (in camera review unnecessary when agency's declaration and Vaughn Index provided court with information about nature of the withheld documents). Upon review of the Vaughn Index submitted by the defendant to support its withholdings of challenged documents 12-15, 16-18, 18a, 24, 26-27, and 29-30, the Court finds that it is necessary to conduct an in camera review of the withheld materials to determine whether the agency complied with its obligations under Exemption 5 of the FOIA. This review is required because it is not clear from the Vaughn Index whether the documents were drafted by NARA in formulating policy or in discharging its statutory duty to act on agency proposals regarding the disposition of its records. Thus, it is not clear from the Vaughn Index what role the documents played in the administrative process. In addition, it is not clear from the filings whether the documents were prepared in contemplation of litigation. As previously noted, the "work-product rule does not extend to every written document generated by an attorney [or] shield from disclosure everything that a lawyer does." Coastal States, 617 F.2d at 864. Instead, it is only applicable to "materials 'prepared in anticipation of litigation or for trial.'" Id. (quoting Jordan v. U.S. Dep't of Justice, 591 F.2d 753, 775 (1978). Further, "[w]hile litigation need not be imminent or certain in order to satisfy the anticipation-of-litigation prong of the [attorney work-product] test, . . . 'at the very least some articulable claim, likely to lead to litigation, must have arisin,' such that litigation was 'fairly foreseeable at the time' the materials were prepared." Hertzberg, 273 F. Supp. 2d at 75 (quoting Coastal States, 617 F.2d at 865). Having failed to satisfy its burden of showing that these documents are exempt from disclosure under Exemption 5, the defendant must submit the document to the Court for in camera review.

**(3)  Secret Service Presentation to NARA Counsel and Other Officials[5]**

The plaintiff also challenges the defendant's withholding of document 31, a powerpoint presentation presented by Secret Service officials to attorneys and staff at NARA, on the basis that information conveyed in the presentation is not covered by the deliberative process privilege. Pl.'s Opp'n and Cross-Mem. at 16-17.  In opposition, the defendant responds that the "document contained specific policy proposals concerning WAVES and related records management." Def.'s Reply at 16.

The Court finds that document thirty-one was properly withheld pursuant to Exemption 5 of the FOIA.  As to this document, the defendant has indicated in its <u>Vaughn</u> Index and an affidavit of Gary Stern that the "document discusses in bullet point presentation format various issues concerning WAVES records and other access control records (ACR), including with respect to transfer and disposition."  Def.'s Mem., Attach. (Stern Decl.) ¶ 21; <u>see also</u> id., Tab "G" (Vaughn Index) doc. 31 at 10.  Further, Mr. Stern attests that the

> document originated as part of a presentation given by the [Secret Service] to attorneys from NARA, the Department of Justice [("DOJ")], and the Office of Counsel to the President, as well as an employee of the White House Office of Records Management, in connection with ongoing legal and policy deliberations regarding WAVES and ACR records.

<u>Id.</u>, (Stern Decl.) ¶ 21.  The presentation contains inter-agency recommendations and policy options regarding the retention of WAVES and ARC documents.  Def.'s Mem., Attach. (Stern Decl.) ¶ 21; <u>see also</u> <u>id.</u>, Tab "G" (Vaughn Index) doc. 31 at 10.

---

[5] This category of documents includes a copy of six pages of a presentation given in July 2005 by the Secret Service to NARA attorneys and staff, attorneys from the Department of Justice and the Office of Counsel to the President, and an employee from the White House Office of Records Management. Def.'s Mem. Attach. (Stern Decl.) ¶ 21; <u>see also</u> <u>id.</u>, Tab "G" (Vaughn Index) doc. 31 at 10.

A communication is predecisional if "it was generated before the adoption of an agency policy" and it is deliberative if "it reflects the give-and-take of the consultative process." Coastal States, 617 F.2d at 866. "While the deliberative process privilege serves a number of related purposes, its 'ultimate aim' is to 'prevent injury to the quality of agency decisions.'" Petroleum Info., 976 F.2d at 1433-1434 (quoting Sears, 421 U.S. at 151); see also Skull Valley Band of Goshute Indians v. Kempthorne, Civ. No. 04-339 (CKK), 2007 WL 915211, at *12 (D.D.C. Mar. 26, 2007) ("Because Exemption 5's goal is to 'prevent injury to the quality of agency decisions,' the deliberative process privilege can only apply to deliberative processes the results of which are or will be[, or may be,] agency policy") (quoting Petroleum Info., 976 F.2d at 1434). Accordingly, the Court finds that document 31 was properly withheld pursuant to Exemption 5 of the FOIA.

**(4)      Documents Related to the Pending Judicial Watch Litigation**

The plaintiff challenges the withholding of documents 34-44 and 53, which relate to a pending lawsuit in Judicial Watch v. U.S. Secret Service, Civ. Action No. 06-310 (D.D.C.), on the grounds that "[n]either the deliberative process privilege nor the attorney work-product doctrine sweeps so broadly as to encompass the views and analysis of attorneys and individuals who are not themselves parties to litigation." Pl.'s Opp'n and Cross-Mem. at 17-18. In opposition, the defendant responds that these withheld documents are protected by both the deliberative process privilege and attorney-work product because "[t]hese emails contain candid discussions of 'pending issues with respect to the legal status of WAVES records,' in light of the filing of the Judicial Watch lawsuit, . . . and, in some instances, the legal positions taken in

litigation."  Def.'s Reply at 17.

Upon review of the <u>Vaughn</u> Index and the affidavits provided by the defendant, the Court finds the documents were properly withheld pursuant to the attorney work product doctrine.  The challenged documents consist of either direct communications between DOJ and NARA attorneys on pending litigation or responses by NARA staff to NARA's General Counsel concerning questions about matters related to the Judicial Watch litigation.  Def.'s Mem., Attach. (Stern Decl.) ¶¶ 24-25; <u>see</u> <u>also</u> <u>id.</u>, Tab "G" (Vaughn Index) docs. 34-44, 53 at 10-15, 18. Specifically, the challenged documents consist of emails between NARA's General Counsel and DOJ attorneys that address the legal status of WAVES records in light of pending litigation and legal positions taken in prior litigation.  <u>Id.</u>  As previously noted, the purpose of the attorney work-product doctrine is to "protect documents prepared in contemplation of litigation" and "provides a working attorney with a 'zone of privacy' within which to think, plan, weigh facts and evidence . . . and prepare legal theories" without fear that the information will be disclosed in litigation.  <u>Coastal States</u>, 617 F.2d at 864.  Accordingly, the Court finds that the defendant has properly withheld documents 34-44 and 53.

    **(5)**    **Document Prepared During Deliberations Concerning the Status and Disposition of WAVES Records Created Contemporaneous with Ongoing Litigation**

        **(a)**    **Draft Memorandum of Understanding and Nonpublic Advice Memorandum Prepared by DOJ's Office of Legal Counsel**

The plaintiff challenges the defendant's Exemption 5 withholding of document 45, a draft memorandum of understanding between the Secret Service and White House Office of Records

and Management, on the ground that

> [i]n order for the document to be deliberative the agency must
> establish that it has never implemented the proposal or analysis
> contained in the document, incorporated them into final agency
> policies or programs, referred to them in a precedential fashion, or
> otherwise treated them as if they constitute agency protocol,

Pl.'s Opp'n and Cross-Mem. at 19, which the defendant has not established in this case, id. at 20.

The plaintiff challenges the withholding of documents 46, 49 and 54 on the basis that "[f]actual

communications about the 'logistics' of maintaining and transferring records are hardly the kind

of pre-decisional internal deliberations protected by Exemption 5," and the defendant needs to

provide "affirmative evidence . . . that the documents in fact contain legal discussions about legal

obligations conducted by lawyers involved in the litigation." Id. at 23. The plaintiff also

challenges the withholding of document 55, a May 2006 memorandum prepared by the DOJ's

Office of Legal Counsel that provided advice to the "Executive Branch" concerning WAVES

records, on the grounds that the document is not protected by the attorney-client privilege

because the defendant does not have an attorney-client relationship with Office of Legal Counsel

and is merely a "third-party recipient of the document . . ." that amounted to nothing more than

"the kind of 'neutral, objective analyses' that the D.C. Circuit has recognized are not within the

privilege." Id. at 20-21. Moreover, the plaintiff argues that the document is not covered by the

deliberative process privilege because the defendant "has not carried its legal burden of

demonstrating that the document in question is non-final," id. at 21, and that the attorney work-

product doctrine is to no avail to the defendant because it "does not even attempt to explain how

there is an articulable claim [that it] was involved in [w]hat would likely lead to litigation

involving [the defendant]," id. at 22.  In opposition to the plaintiff's challenge of document 45, the defendant responds that it "need not establish that nothing in the draft [memorandum of understanding] was incorporated into the final [memorandum of understanding] to invoke the deliberative process privilege."  Def.'s Reply at 19.  As to documents 46 and 49, the defendant states that the documents are protected from disclosure because they contain "candid[]" communications surrounding "legal issues regarding WAVES records that were relevant to the draft documents." Id. at 31. Similarly, the defendant states that portions of document 54 are protected from disclosure because they contain an internal agency discussion on "issues surrounding WAVES recordkeeping that related to the draft MOU and DOJ memorandum." Id. at 32.  And as to document 55, the defendant contends that it is protected by the deliberative process privilege because (1) "it was 'prepared as part of the governmental deliberative process leading up to the execution of the [memorandum of understanding]," id. at 20, and (2) "'it is advice submitted for use by decisionmakers at various government entities involved in the decisions to prepare and execute the [memorandum of understanding],'" id.

As already noted, to be exempt from disclosure under the deliberative process privilege, the agency must show that its decision is both (1) "predecisional" and (2) "deliberative." Nat'l Ass'n of Home Builders, 309 F.3d at 39.  And again, "[a] document is predecisional if it was 'prepared in order to assist an agency decisionmaker in arriving at his decision,' rather than to support a decision already made." Petroleum Info., 976 F.2d at 1434 (quoting Grumman Aircraft, 421 U.S. at 184). Thus, the preparation of the document must be "[a]ntecedent to the adoption of an agency policy."  Jordan, 591 F.2d at 774. However, a document cannot be characterized as predecisional "if it is adopted, formally or informally, as the agency position on an issue or is

used by the agency in its dealings with the public." Coastal States, 617 F.2d at 866. Examples of predecisional documents include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." Id. As with all exemptions under the FOIA, it is the agency's burden to establish the exemption's applicability. Petroleum Info., 976 F.2d at 1433. However, once an agency adopts a policy, "formally or informally," the contents of some documents, including draft documents, would destroy any predecisional aspect of drafts. See Defenders of Wildlife, 311 F. Supp. 2d at 59 (citing Coastal States, 617 F.2d at 866). When identifying a document as a draft, the defendant must indicate whether the draft was "(1) 'adopted formally or informally, as the agency position on an issue;' or (2) 'used by the agency in its dealings with the public.'" Judicial Watch II, 297 F. Supp. 2d at 261.

Here, although the defendant has not indicated whether documents 45-46, 49 and 54-55 have been informally or formally  adopted or used in the agency's interactions with the public, the defendant properly withheld these documents pursuant to the attorney-client privilege and the attorney work product doctrine.  The Vaughn Index and the affidavit provided by the defendant indicate that document 45 is an email from the "Associate Counsel to the President soliciting comments on an attached draft nonpublic legal advice memorandum from the [DOJ's] Office of Legal Counsel containing legal advice regarding the status and handling of WAVES records . . . , and [a] . . . draft [m]emorandum of [u]nderstanding [b]etween the White House Office of Records Management and [the Secret Service] . . ." concerning "the status and handling of WAVES and ACR records." Def.'s Mem., Attach. (Stern Decl.) ¶ 26; see also id., Tab "G" (Vaughn Index) doc. 45 at 15.  Further, he states that "[d]ocuments 46 - 52 consist of the e-mail

communications that transpired, comprising a series of candid comments by lawyers and other staff representing NARA, the Secret Service, the Office of Counsel to the President, and the Department of Justice on specific matters raised in the draft documents, many of which are shared on an inter-agency basis," id. ¶ 26, and the withheld portions of document 54 contain internal agency discussion "on recordkeeping issues surrounding USSS WAVES records as they relate to the draft legal opinion and MOU," id. ¶ 27. And "Document 55 is a copy of a nonpublic legal advice memorandum from the [DOJ's] Legal Counsel . . . containing legal discussions regarding WAVES records," id. ¶ 28; see also id., Tab "G" (Vaughn Index) doc. 55 at 19, and prepared solely for internal "Executive Branch" use, id. ¶ 28.

The attorney-client "privilege has a proper role to play in exemption five cases . . . ." In re Lindsey, 158 F.3d at1269. Aside from the protections provided by the attorney-client privilege in the private sector, "the privilege also functions to protect communications between government attorneys and client agencies or departments, as evidenced by its inclusion in the FOIA, much as it operates to protect attorney-client communications in the private sector." Id. "Thus, 'when the Government is dealing with its attorneys as would any private party seeking advice to protect personal interests, and needs the same assurance of confidentiality so it will not be deterred from full and frank communications with its counselors,' exemption five applies." Id. (quoting Coastal States, 617 F.2d at 863). To invoke the attorney-client privilege, an agency must show that the document "(1) involves 'confidential communications between an attorney and his [or her] client' and (2) relates to a 'legal matter for which the client has sought professional advice.'" Judicial Watch II, 297 F.Supp.2d at 267 (quoting Mead Data Cent., 566 F.2d at 252). However, the attorney-client privilege does not permit an agency "to withhold a document merely because

it is a communication between the agency and its lawyers." Id.  Rather, the agency must show

that the information provided to its lawyers was intended to be confidential "and was not known

by or disclosed to any third party." Id.  (quoting Mead Data Cent., 566 F.2d at 254).  Based on

this standard, the Court finds on the record in this case that the defendant has satisfied its burden

of showing that documents 45-46, 49 and 54-55 are exempt from disclosure under Exemption 5

of the FOIA.

**(b) Inter and Intra-Agency Communications About Drafts of the Memorandum of Understanding and the Office of Legal Counsel's Advice Memorandum**

The plaintiff challenges the defendant's withholding of documents 48, 51, and 56-60,

which constitute inter- and intra-agency communications relating to the drafting of the

memorandum of understanding and the DOJ's Office of Legal Counsel  non-public legal advice

memorandum, arguing that these documents have been improperly withheld pursuant to the

deliberative process privilege or attorney work-product doctrine.[6]  Pl.'s Opp'n and Cross-Mem.

at 22-23.   In opposition, the defendant argues that "[t]hese types of back-and-forth emails are

typical of, and essential to, the deliberative process by which draft documents such as the [DOJ's

Office of Legal Counsel]  memorandum and the [memorandum of understanding] are

considered."  Def.'s Reply at 23.

---

[6] The challenged documents contain additional comments from NARA's General Counsel about issues identified in the draft  memorandum of understanding between the White House and the Secret Service, and are emails concerning internal deliberations initiated by an Associate Counsel to the President on matters related to the preservation of WAVES and ACR records in light of one or more pending lawsuits.  Def.'s Mem., Attach. Tab "G" (Vaughn Index) docs. 48, 51, 56-60 at 17, 19-22.

As to documents 48 and 51, the Court agrees that the defendant has provided sufficient support in its <u>Vaughn</u> Index for its position that these documents are protected from disclosure under the deliberative process privilege. Def.'s Reply at 23. The explanations provided by the defendant indicate that the two documents consist of comments from the plaintiff's General Counsel concerning the draft non-public legal advice memorandum from the DOJ's Office of Legal Counsel. <u>Id.</u>, Attach. (Declaration of Steven G. Bradbury) ("Bradbury Decl.") ¶ 8. Specifically, the documents consist of emails wherein the DOJ's Office of Legal Counsel solicited comments and information from NARA and other government attorneys about a legal issue and "reflect a fluid and evolving exchange of ideas." <u>Id.</u> As previously noted, examples of predecisional documents include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." <u>Coastal States</u>, 617 F.2d at 866. Accordingly, the Court finds that documents 48 and 51 were properly withheld pursuant to the deliberative process privilege component of Exemption 5 of FOIA.

As to documents 56-60, the defendant has also presented sufficient evidence to support their withholdings pursuant to both the deliberative process privilege and the attorney work-product doctrine. As to these documents, the <u>Vaughn</u> Index indicates that they consist of opinions and recommendations of NARA's staff, including Mr. Stern, NARA's General Counsel, and Secret Service staff pertaining to the preservation of WAVES and ACR records. Def.'s Mem., Attach. (Stern Decl.) ¶ 29, Tab "G" (<u>Vaughn</u> Index) docs. 56-60 at 19-22. Specifically, the documents pertain to a "request for agency recommendations and opinions . . . regarding matters related to the logistics of transferring WAVES records from [the Secret Service] to the

White House Complex and to NARA . . . [,] in light of pending litigation regarding access issues to such records." Id., Attach. (Stern Decl.) ¶ 29.  Information in a document may be "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." Vaughn, 523 F.2d at 1144.  Thus, such communications are covered by the deliberative process privilege just like other communications because it "'protect[s] the decisionmaking processes of government agencies' and 'encourage[s] the frank discussion of legal and policy issues' by ensuring that agencies are not 'forced to operate in a fishbowl.'" Mapother, 3 F.3d at 1537 (quoting Wolfe v. Dep't of Health and Human Servs., 839 F.2d 768, 773 (D.C. Cir. 1988) (en banc)).

     In addition, the documents consist of discussions of the government's evidentiary obligations to one or more courts, given the obligation of NARA's staff to preserve records that are subject to pending litigation.  Def.'s Mem., Attach. (Stern Decl.) ¶ 29.

> While litigation need not be imminent or certain in order to satisfy the anticipation-of-litigation prong of the test [for attorney work product], . . . "at the very least some articulable claim, likely to lead to litigation, must have arise in," such that litigation was 'fairly foreseeable at the time' the materials were prepared.

Hertzberg, 273 F. Supp. 2d at 75 (quoting Coastal States, 617 F.2d at 865).  Accordingly, based on the record before it, the Court finds that documents 56-60 were properly withheld pursuant to Exemption 5 of the FOIA.

**C.    The Adequacy of the Defendant's Search**

     The plaintiff challenges the adequacy of the search conducted by the defendants on the grounds that "NARA. . . .  failed to identify, . . . which specific files were searched using which

specific search terms."  Pl.'s Opp'n and Cross-Mem. at 25.  In opposition, the defendant

responds that the declaration submitted by the plaintiff's General Counsel demonstrates that it

"conducted a search 'reasonably calculated to uncover all relevant documents."  Def.'s Reply at

24.

To prevail on a motion for summary judgment in a FOIA case, an agency must show

"beyond material doubt . . . that it has conducted a search reasonably calculated to uncover all

relevant documents."  Weisberg v. U.S. Dep't of Justice ("Weisberg II"), 705 F.2d 1344, 1351

(D.C. Cir. 1983); see also Oglesby v. U.S. Dept. of Army, 920 F.2d 57, 68 (D.C. Cir. 1990).

With regard to the adequacy of an agency's search, "[t]he issue is not whether any further

documents might conceivably exist but rather whether the government's search for responsive

documents was adequate." Weisberg II, 705 F.2d at 1351 (citations, emphasis, and quotations

omitted). The adequacy of an agency's search is measured by a "standard of reasonableness," and

is "dependent upon the circumstances of the case."  Id.  An agency may rely upon affidavits and

declarations to establish the adequacy of its search, however, the affidavits and declarations must

be "'relatively detailed' and nonconclusory and ... submitted in good faith."  Id.

The District of Columbia Circuit has noted that generally an agency need not "set forth

with meticulous documentation the details of an epic search for the requested records."  Perry v.

Block, 684 F.2d 121, 127 (D.C. Cir. 1982) (holding that although descriptions of searches could

have been more detailed, the district court did not err in granting summary judgment to the

agency because arguable inadequacy of description was no more than marginal).  Accordingly,

"[a]ffidavits that include search methods, locations of specific files searched, descriptions of

searches of all files likely to contain responsive documents, and names of agency personnel

conducting the search are considered sufficient." Ferranti v. ATF, 177 F. Supp. 2d 41, 47 (D.D.C.2001) (citing Weisberg II, 705 F.2d at 1348). On the other hand, affidavits that "do not denote which files were searched or by whom, do not reflect any systematic approach to document location, and do not provide information specific enough to enable [the plaintiff] to challenge the procedures utilized," have been found to be inadequate and too conclusory to justify a grant of summary judgment. Santos v. Drug Enforcement Agency, 357 F. Supp. 2d 33, 37 (D.D.C. 2004) (quoting Weisberg v. U.S. Dep't of Justice, 627 F.2d 365, 370 (D.C. Cir. 1980)). In determining the adequacy of an affidavit with regard to an agency search, federal courts have placed emphasis on whether an agency provides information about the search terms used and the specific files searched for each request. See Nation Magazine v. U.S. Customs Serv., 71 F.3d 885, 890 (D.C. Cir. 1995) (noting agency affidavits submitted in support of an adequate search "must be reasonably detailed . . . , setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials ... were searched") (citations and quotations omitted); see also Maydak v. U.S. Dep't of Justice, 362 F. Supp. 2d 316, 326 (D.D.C.2005) (holding agency search inadequate because agency declaration provided no information about search terms used or files that were searched).

Here, the defendant has demonstrated "beyond material doubt . . . it has conducted a search reasonably calculated to uncover all relevant documents." Weisberg II, 705 F.2d at 1351. The defendant has provided declarations from its General Counsel indicating the search methods employed by the agency, locations of specific files searched, descriptions of the search of all files likely to contain responsive documents, and names of agency personnel who conducted the search. Def.'s Mem., Attach. (Stern Decl.) ¶ 5.; Def.'s Reply. Attach. (Stern Suppl. Decl.) ¶ 10.

Specifically, the defendant has identified Ms. Oliver, NARA's FOIA Officer, as the employee who organized the search. Id., (Stern Suppl. Decl.) ¶ 10. She "contacted the key agency offices and officials that were believed to have responsive records and provided them with a copy of the request." Id. After staff members in the three offices where responsive documents were most likely be located were identified, specific individuals were tasked by Ms. Oliver

> to review their paper and electronic files for any and all responsive records related to the . . . [plaintiff's] . . . FOIA request. The search included records located in the official job files associated with Secret Service records retention schedules . . . [and] . . . staff members' working papers found in each of the [three] offices . . . [, including] their own electronic mail accounts, as well as look[ing] for email that had been printed out and saved in files in accordance with NARA official policy.

Id. On this record, the Court finds that the defendant's search for records responsive to the plaintiff's FOIA request was adequate.

## IV. CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment is denied in part and granted in part and the plaintiff's cross-motion for summary judgment is denied as to documents 5, 7, 31, 34-46, 48-49, 51, 53-60. Specifically, the Court finds that the defendant properly withheld documents 5, 7, 31, 34-46, 48-49, 51, 53-60 pursuant to Exemption 5 of the FOIA. Accordingly, the defendant is entitled to summary judgment as to these documents and the plaintiff's cross-motion for summary judgment as to these documents must be denied. In addition, the defendant is entitled to summary judgment on the issue of the adequacy of the defendant's search for responsive documents. However, the defendant must provide a supplemental submission with a more detailed explanation in support of its withholding of

document 3 under Exemption 5 of the FOIA and it must submit documents 12-15, 16-18, 18a, 24, 26-27, and 29-30 to the Court for its in camera review. Accordingly, as to these documents, the defendant's motion for summary judgment is denied without prejudice.[7]

      **SO ORDERED** this 28th day of October, 2008.

                                 _____/s/_____

                                 REGGIE B. WALTON
                                 United States District Judge

---

[7] An amended order consistent with this Memorandum Opinion is being issued contemporaneously with this opinion.